## No. 26-1444

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

————————►►◄◄————————

AMAZON.COM SERVICES LLC
*Plaintiff–Appellee,*

v.

PERPLEXITY AI, INC.
*Defendant–Appellant.*

_____

*On Appeal From The United States District Court For The Northern District Of California, Hon. Maxine M. Chesney, Case No. 3:25-cv-09514-MMC*

## EMERGENCY MOTION UNDER CIRCUIT RULE 27-3 FOR A STAY PENDING APPEAL AND FOR AN IMMEDIATE ADMINISTRATIVE STAY [RELIEF REQUESTED BY MARCH 16, 2026]

John B. Quinn
Daniel C. Posner
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

Andrew Schapiro
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
(312) 705-7400

Christopher G. Michel
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
(202) 538-8000

Renita N. Sharma
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000

*Attorneys for Defendant–Appellant*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Perplexity AI, Inc. states that it has no parent corporation, and no publicly held corporation owns more than 10% of its stock.

DATED:  March 12, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Daniel C. Posner*

Daniel C. Posner
Attorney for Defendant–Appellant

i

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ....................................................... i

TABLE OF AUTHORITIES ...........................................................................iv

INTRODUCTION ........................................................................................1

BACKGROUND .........................................................................................3

ARGUMENT...............................................................................................7

I.     THE COURT SHOULD ENTER AN ADMINISTRATIVE STAY..............7

II.    THE COURT SHOULD STAY THE PRELIMINARY INJUNCTION PENDING APPEAL..................................................................................7

    A.     Perplexity Is Likely To Succeed On The Merits Of This Appeal ........8

        1.     Perplexity Will Likely Succeed In Showing District Court Error On Amazon's CFAA Claim..............................................8

            (a)     Perplexity has not "intentionally accessed" an Amazon computer............................................................9

            (b)     Even if Perplexity accessed an Amazon computer, such access was authorized. .........................................11

            (c)     Perplexity has not "obtained information" from an Amazon computer........................................................14

            (d)     Amazon has not shown cognizable loss under the CFAA. .........................................................................15

        2.     The District Court Erroneously Collapsed The Remaining Preliminary Injunction Elements Into One Inquiry..................16

    B.     Absent A Stay, Perplexity Will Suffer Irreparable Harm...................18

    C.     A Stay Pending Appeal Will Cause No Harm To Amazon................20

    D.     The Public Interest Favors A Stay.........................................................22

CONCLUSION ..................................................................................................24

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION
............................................................................................................25

CERTIFICATE OF SERVICE.........................................................................26

iii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*adidas Am., Inc. v. Skechers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018)..................................................................18

*Am. Fed'n of Gov't Emps. v. Trump*,
148 F.4th 648 (9th Cir. 2025)..................................................................8

*Benisek v. Lamone*,
585 U.S. 155 (2018) (per curiam) .............................................................17

*Caribbean Marine Servs. Co. v. Baldrige*,
844 F.2d 668 (9th Cir. 1988)..................................................................18

*Developmental Servs. Network v. Douglas*,
666 F.3d 540 (9th Cir. 2011)..................................................................17

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016)............................................................12, 13

*hiQ Labs v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022)..........................................................*passim*

*Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*,
725 F.3d 940 (9th Cir. 2013)..................................................................21

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993)..................................................................22

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)........................................................8, 14, 15

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022)................................................9, 10, 13

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) (Alito, J., concurring).....................................................23

*Nat'l Urb. League v. Ross*,
977 F.3d 698 (9th Cir. 2020).................................................................7

iv

*Nken v. Holder*,
   556 U.S. 418 (2009).................................................................8

*Oregon v. Trump*,
   154 F.4th 1161 (9th Cir. 2025)..............................................7

*Regents of Univ. of Cal. v. Am. Broad. Cos.*,
   747 F.2d 511 (9th Cir. 1984)................................................22

*Sampson v. Murray*,
   415 U.S. 61 (1974)...............................................................22

*TikTok Inc. v. Garland*,
   604 U.S. 56 (2025)...............................................................23

*United States v. Flores*,
   729 F.3d 910 (9th Cir. 2013)................................................10

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) (en banc) ............................9, 11

*United States v. Texas*,
   144 S. Ct. 797 (2024) (Barrett, J., concurring) .....................7

*Van Buren v. United States*,
   593 U.S. 374 (2021)..............................................................15

*W.R. Grace & Co. v. Local Union 759*,
   461 U.S. 757 (1983)..............................................................19

*Winter v. Natural Resources Defense Council (NRDC)*,
   555 U.S. 7 (2008)............................................................8, 18

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
   724 F. Supp. 3d 948 (N.D. Cal. 2024)...................................15

## Statutes

18 U.S.C. § 1030.............................................................*passim*

18 U.S.C. § 1030(a)(2)..............................................8, 9, 11

18 U.S.C. § 1030(a)(2)(C)...............................................15

v

18 U.S.C. § 1030(a)(4)..............................................................................................9

18 U.S.C. § 1030(c)(4)(A)(i)(I)...............................................................................15

18 U.S.C. § 1030(e)(11).............................................................................................15

18 U.S.C. § 1030(g) ..................................................................................................15

Cal. Penal Code § 502.............................................................................................5, 9

## Other Authorities

9th Cir. R. 3-3 ............................................................................................................3

9th Cir. R. 27-1 ........................................................................................................25

9th Cir. R. 27-2 ..........................................................................................................6

9th Cir. R. 32-3 ........................................................................................................25

9th Cir. Rule 27-1(d) ...............................................................................................25

Fed. R. App. P. 8........................................................................................................6

Fed. R. App. P. 27.....................................................................................................25

Fed. R. App. P. 32(a) ...............................................................................................25

Appellant Perplexity AI, Inc. ("Perplexity") respectfully requests a stay pending appeal of the preliminary injunction the district court entered on March 9, 2026. Perplexity further requests an immediate administrative stay while the Court considers this motion. Perplexity consents to any expedited schedule for briefing this motion and/or the underlying appeal.

## INTRODUCTION

This appeal arises from a novel preliminary injunction based on the implausible theory that Perplexity likely violated the Computer Fraud and Abuse Act ("CFAA") and its California counterpart—thereby committing federal and state crimes—when users of its "Comet" browser employed an AI "Assistant" feature to access Amazon's website through their own accounts and from their own devices. The district court issued the injunction through a cursory order just one business day after a hearing during which it repeatedly recognized this as a case of first impression involving nascent technology. Given the significant stakes and closely contested issues, the court stayed its order for seven days to provide this Court an opportunity to stay the injunction pending appeal. This Court should do so—first through an administrative stay effective immediately and then through a stay pending appeal.

All relevant factors favor a stay. First, and most important, Perplexity is overwhelmingly likely to prevail in its appeal. Defending the preliminary injunction requires Amazon to establish likely success on five elements of its claim. As

1

elaborated below, Amazon is unlikely to do so for any of those elements, much less all. At bottom, the only relevant access to Amazon's servers was by *users* of the Comet browser—not by Perplexity. Those users did not share with Perplexity any private information other than their own. And Amazon has not suffered any cognizable loss—if anything, it *benefited*—from Perplexity assisting customer purchases from Amazon at the customers' express direction. No CFAA case has ever found liability under any circumstances approaching these. Even if Amazon could show likely success, moreover, it cannot establish irreparable harm or the other equitable factors necessary for a preliminary injunction. Indeed, the district court did not conduct any meaningful analysis of those required factors, instead collapsing everything into its flawed merits prediction.

Properly understood, the equities heavily support a stay. Enjoining the use of Perplexity's signature product on one of the Internet's most important websites would cause devastating harm to the company and consumers alike. Allowing the product to remain in use during the appeal, by contrast, would inflict no meaningful harm on Amazon, which failed to identify any cognizable injury during the roughly eight months that Perplexity's product has been on the market. The public interest strongly favors a stay as well, particularly given the massive benefits of continuing competition and technological advancement during this critical stage in AI's

2

development. The Court should accordingly grant this motion and stay the injunction immediately and throughout this expedited appeal. *See* 9th Cir. R. 3-3.

## BACKGROUND

1. One of Perplexity's core products is an AI-enabled web browser called Comet. Ex. 11 (Shevelenko Decl.) ¶ 6; Ex. 12 (Yarats Decl.) ¶ 5.[1] Comet, like Google Chrome and Mozilla Firefox, is software that is installed locally on a user's computer and displays websites. Yarats Decl. ¶ 5. After months of intensive development and innovation, Perplexity launched Comet with limited release on July 9, 2025, and made it widely available on October 2, 2025. Shevelenko Decl. ¶ 13.

Comet includes an optional AI "Assistant" feature—sometimes referred to as "agentic AI"—that operates within the browser. Yarats Decl. ¶ 6. If (and only if) the user activates the Assistant, it can perform tasks at the user's direction, such as browsing websites like Amazon.com to shop for requested goods. *Id*. ¶¶ 6, 17-18; Shevelenko Decl. ¶¶ 6-7. Even when the Assistant is activated, the user must manually authorize it to take significant actions like finalizing a purchase. Yarats Decl. ¶¶ 12-13.

---

[1] All cited exhibits are attached to the declaration of Daniel C. Posner in support of this motion, filed concurrently herewith.

It is undisputed that Comet runs locally on the user's device and the Assistant simply executes instructions a user gives to it. *Id.* ¶¶ 10-11, 17; Shevelenko Decl. ¶¶ 7-8; Ex. 6 (Evans Decl.) ¶ 4 (stating the Assistant "is directly incorporated into the web browser itself"). If a user instructs the Assistant to find an item on Amazon.com, the Assistant may send an encrypted screenshot or HTML snapshot from the user's computer to Perplexity's servers, and Perplexity's servers will then respond to the user's computer with instructions for how to proceed. Yarats Decl. ¶¶ 15, 17, 19; Ex. 2 (Tr.) at 67:17-23. Perplexity uses the screenshots and snapshots solely to accomplish the user's task and automatically deletes them within 30 days. Yarats Decl. ¶ 15; Tr. at 96:8. The Assistant never sends more information to Perplexity than what the user can see in the browser window; Perplexity's view is akin to what a person would see from looking over the user's shoulder at the browser window. Yarats Decl. ¶¶ 16-17. The Assistant never transmits to Perplexity a user's password or payment information unless that information—which Amazon masks— is visible for some reason in the browser window. *Id.* ¶ 20. It also is undisputed that, in the course of a user's use of the Assistant on Amazon.com, no Perplexity server ever has direct access to an Amazon server. *Id.* ¶¶ 17, 19.

2.      Amazon contacted Perplexity in August 2025 to allege that Perplexity was violating Amazon's "Conditions of Use" when the Assistant operates on Amazon.com. Ex. 10 (Chen Decl.) ¶ 3. Amazon made this complaint despite later

4

acknowledging that Perplexity is not a party to the Conditions of Use—which bind only Amazon users. Ex. 4 (Mot. for Prelim. Inj.) at 6.

On October 31, 2025, Amazon sent Perplexity a letter accusing it of violating two criminal statutes: the CFAA, 18 U.S.C. § 1030, and California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502. Ex. 9 (cease and desist letter). Days later, Amazon filed this lawsuit and moved for a preliminary injunction. Ex. 3 (Compl.); Mot. for Prelim. Inj.

3.    During oral argument on March 6, 2026, the district court indicated that its decision was a close call but that it was inclined to rule for Amazon, albeit reluctantly. Tr. at 130:12-16 ("In a way, it's almost as if what [Perplexity is] doing shouldn't be covered [by the CFAA] . . . . [P]eople ought to be allowed to bring these kinds of shopping assistants in and have them talk."); *id.* at 131:11-14 ("[I]t's not initially a strong tip in favor of the Plaintiff . . . but I do think it does tip in their favor."); *id.* at 133:4-6 ("[T]he statute is so broad and covers people who may be performing a beneficial act that I'm kind of stuck with it.").

In a brief order entered March 9, 2026, the court granted the preliminary injunction. Ex. 1 (Order). Equating an Amazon customer's use of the Comet browser to access Amazon.com with direct access by Perplexity itself, the court said there was "strong evidence that Perplexity, through its Comet browser," accesses Amazon.com without Amazon's authorization. *Id.* at 3. The court then found that

5

Perplexity "obtain[s] information as to the user's private Amazon account information," *id*., but did not explain what that information is or how it is Amazon's rather than the user's. The court also acknowledged that Amazon had not suffered technological harm of the kind the Supreme Court and this Court have indicated is required to support a CFAA claim, but dismissed those statements as dicta. *Id.* at 3-4 & n.2. Finally, the court collapsed the remaining requirements for injunctive relief, including irreparable harm, into its finding of a likely violation of the CFAA. *Id.* at 4-6 (*e.g.*, "Amazon is likely to suffer irreparable harm in the absence of a preliminary injunction, in that Perplexity . . . will continue to engage in the above-referenced challenged conduct."); Tr. at 130:20-23.

The injunction bars Perplexity from accessing or providing a means for others to access "Amazon's protected computer systems using AI agents," which the court defined as "any software or computer program deployed through Perplexity's Comet web browser that can autonomously or semi-autonomously perform actions and interact with third-party websites on behalf of, or at the instruction of, any user." Order at 7 n.4.

The court denied Perplexity's motion for a stay pending appeal but granted a seven-day stay, which will expire on March 16, 2026. Order at 6-7; *see* Fed. R. App. P. 8(a)(1); 9th Cir. R. 27-2. Perplexity filed a notice of appeal on March 10, 2026.

# ARGUMENT

## I.  THE COURT SHOULD ENTER AN ADMINISTRATIVE STAY

As a threshold matter, this Court should enter an administrative stay to preserve the status quo while it considers this motion.  *See Nat'l Urb. League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020); *United States v. Texas*, 144 S. Ct. 797, 798-99 (2024) (Barrett, J., concurring).  The district court already recognized the propriety of a brief stay by pausing the effective date of the injunction until March 16, 2026.  Order at 6-7.  Absent an administrative stay, Perplexity will suffer irreparable harm.  As further explained below, Perplexity's competitive position will erode with every day the injunction remains in effect, as users of this nascent technology will leave for competitors that are not subject to the same restriction and may never return.  *See infra* at 18-19.  And granting a short administrative stay will not harm Amazon, which has identified no concrete injury from eight months of Comet's operation.  *See infra* at 20-22; *see also Oregon v. Trump*, 154 F.4th 1161, 1164 (9th Cir. 2025) (granting administrative stay to "best preserve the status quo").

## II.  THE COURT SHOULD STAY THE PRELIMINARY INJUNCTION PENDING APPEAL

The Court should also grant a stay pending appeal.  This Court weighs four factors when presented with a motion to stay a preliminary injunction: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

7

whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Am. Fed'n of Gov't Emps. v. Trump*, 148 F.4th 648, 654 (9th Cir. 2025) (alteration in original) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). Here, all four factors support a stay.

## A. Perplexity Is Likely To Succeed On The Merits Of This Appeal

Perplexity is likely to succeed on the merits of its appeal for at least two independent reasons: (1) Amazon is unlikely to satisfy the elements of its claims, and (2) the equities do not support a preliminary injunction. *See Winter v. NRDC*, 555 U.S. 7, 24 (2008) (describing burden of preliminary-injunction movant).

### 1. Perplexity Will Likely Succeed In Showing District Court Error On Amazon's CFAA Claim

To show a violation of the CFAA under 18 U.S.C. § 1030(a)(2), Amazon must establish that Perplexity

> (1) intentionally accessed a computer, (2) without authorization or exceeding authorized access, and that [it] (3) thereby obtained information (4) from any protected computer (if the conduct involved an interstate or foreign communication), and that (5) there was loss to one or more persons during any one-year period aggregating at least $5,000 in value.

*LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). Failure to satisfy even one element would mean that Amazon's claims fail and preliminary

8

injunctive relief is unwarranted. The district court erred with respect to all five elements.[2]

>   (a)  Perplexity has not "intentionally accessed" an Amazon computer.

As a criminal statute, the CFAA was "enacted to prevent intentional intrusion onto someone else's computer—specifically, computer hacking." *hiQ Labs v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022). Thus, when Congress spoke of "intentional[] access[]" in Section 1030(a)(2), it was targeting people who "break[] into" computers. *United States v. Nosal*, 676 F.3d 854, 859 (9th Cir. 2012) (en banc) (declining to turn CFAA "into a sweeping Internet-policing mandate"); *see also hiQ Labs*, 31 F.4th at 1196 ("[T]he CFAA is best understood as an anti-intrusion statute and not as a 'misappropriation statute.'") (citation omitted).

The conduct Amazon alleges in this case is a dramatic misfit for that statutory meaning of "access." It is undisputed that (1) the Assistant (a feature of the Comet browser) runs locally on the user's computer, and (2) Perplexity computers never access Amazon computers. Yarats Decl. ¶¶ 17, 19-20; *see* Ex. 15 (Opp'n to Prelim. Inj.) at 10-11. There is, accordingly, no sense in which Perplexity accesses

---

[2] The district court analyzed Amazon's CDAFA claim in parallel with its CFAA claim. Order at 4; *see Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022) (CDAFA claims generally "rise or fall with" CFAA claims). The district court did not reach Amazon's argument that Perplexity is also violating a separate prong of the CFAA, 18 U.S.C. § 1030(a)(4). Accordingly, this motion addresses only the § 1030(a)(2) claim.

Amazon's computers within the meaning of the CFAA. Nobody would say that Google "accesses" Amazon's computers whenever a person navigates on her own computer to Amazon.com using Google Chrome, even if—as often happens—the Chrome software "agentically" auto-fills the user's address and payment information at checkout. The same is true here. *See United States v. Flores*, 729 F.3d 910, 914 (9th Cir. 2013) (words in statute "will be interpreted as taking their ordinary, contemporary, common meaning" (citation omitted)).

Courts interpreting the CFAA have followed this common-sense approach. For example, in *Meta Platforms, Inc. v. BrandTotal Ltd.*, the defendant BrandTotal's browser extension monitored ad metrics by automatically sending data to BrandTotal while a user browsed websites like Facebook. 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022). The court, applying the rule of lenity, granted summary judgment to BrandTotal on Meta's CFAA claim, holding Meta had merely cited evidence describing BrandTotal's access to data that Meta "ha[d] sent to the individual users . . . on users' computers." *Id.* at 1260-61.

Here, the district court ignored *BrandTotal* and unduly extended the CFAA to impute criminally "intentional access" to any disfavored software developer whose browser or tool is used to navigate a website. The court did so in a mere half-sentence of analysis that conflated the ***user's*** use of the Assistant on her local device to access Amazon.com with direct access by ***Perplexity*** itself. Order at 3 ("Amazon

10

has provided strong evidence that Perplexity, through its Comet browser, accesses . . . the user's password-protected account."). And the court admitted that its holding would reach innocuous conduct that "is not the traditional egregious behavior that often is covered by a criminal statute." Tr. at 128:7-8; *see id.* at 128:5 ("[W]hat [Perplexity] does is helpful."); *see also Nosal*, 676 F.3d at 860 (refusing to interpret CFAA as "transform[ing] whole categories of otherwise innocuous behavior into federal crimes simply because a computer is involved"). Perplexity is likely to succeed on this appeal on this basis alone.

(b) <u>Even if Perplexity accessed an Amazon computer, such access was authorized.</u>

Assuming arguendo that Perplexity did "access" an Amazon computer, any such access was not "without authorization" under the CFAA. 18 U.S.C. § 1030(a)(2). The CFAA's "authorization" regime ***does not even apply*** to public websites that are "available to anyone with an Internet connection." *hiQ Labs*, 31 F.4th at 1198 (CFAA does not apply to publicly accessible websites). Amazon, whose public-facing retail listings fall into this category, is thus like LinkedIn, which tried in *hiQ Labs*, unsuccessfully, to weaponize the CFAA to bar a competitor from collecting public data from LinkedIn.com. *See id.* And to the extent Perplexity arguably accessed password-protected areas of Amazon.com that can be reached only by Amazon account holders, Perplexity did so only with authorization from

11

those account holders, who in turn have authorization from Amazon to access their own accounts.

The district court's holding to the contrary, Order at 3, was based on a mistaken reading of *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), which involved a completely different kind of website. In *Power Ventures*, this Court partially affirmed a grant of summary judgment to Facebook on a CFAA claim it brought against Power. 844 F.3d at 1064, 1069. In 2008, when the facts arose and ***all*** of Facebook was still behind a password "gate," Power received access to certain Facebook users' private accounts and used that access to scrape data associated with the users' Facebook "friends"; Power then spammed those friends with mass promotional messages to their external email accounts. *Id.* at 1063. The Court held that after Facebook "plainly put Power on notice that it was no longer authorized to access Facebook's computers," Power accessed Facebook without "authorization" even though certain Facebook users "arguably gave Power permission" to access their private Facebook accounts. *Id.* at 1067 & n.3.

*Power Ventures* is inapposite. As this Court later made clear in *hiQ Labs*, the CFAA applied in *Power Ventures* to protect Facebook's interest in prohibiting Power's access to ***private information*** belonging to ***third-party*** Facebook users (*i.e.*, other than the users who provided Power with access to their accounts)—such as those third-parties' external email addresses. *See hiQ Labs*, 31 F.4th at 1199. The

12

Court explained that the CFAA's "prohibition on unauthorized access is properly understood to apply **only to private information**." *Id*. at 1197 (emphasis added). Facebook, of course, had an interest in protecting the private information of the "friends" of the users who provided Power with access to their accounts, because those "friends" had not granted Power access to their own private information.

Here, unlike in *Power Ventures*, there is **no evidence** that Perplexity obtains any "private information" behind any Amazon password "gate" that belongs to anyone other than the users who explicitly authorize Perplexity to have it. *See hiQ Labs*, 31 F.4th at 1201 (no CFAA violation where "the data hiQ seeks to access is not owned by LinkedIn"). Nor is there any evidence that when Comet accesses Amazon.com, Perplexity obtains any information other than for the purpose of complying with the user's express instructions. *See id*. at 1199 ("We specifically recognized [in *Power Ventures*] that 'Facebook has tried to limit and control access to its website' **as to the purposes for which Power Ventures sought to use it**." (emphasis added) (citation omitted)). Amazon does not dispute that its users are "free to share" any and all of their Amazon account information located behind their password "gate" with Perplexity (or anyone else) "as they see fit." *See BrandTotal*, 605 F. Supp. 3d at 1260.

The district court made no finding otherwise. It simply relied on Perplexity supposedly obtaining "the user's private Amazon account information" without even

identifying what that "information" is, considering who holds a privacy interest in it, or addressing what Perplexity does with it. The concerns that animated *Power Ventures* are not present here; there simply is no access to, nor misuse of, any Amazon "private information" (nor the private information of any other third party) at issue, and thus no basis to find any "unauthorized access" to it by Perplexity.

(c)     Perplexity has not "obtained information" from an Amazon computer.

The district court also erred with respect to the third and fourth elements of Amazon's CFAA claim: whether Perplexity, via its supposed unauthorized access to an Amazon computer, "(3) thereby obtained information (4) from any protected computer." *Brekka*, 581 F.3d at 1132. The sole evidence the district court cited to support its ruling on these elements was a paragraph from the declaration of Perplexity's CTO discussing the process by which the Assistant sends encrypted screenshots or HTML snapshots from the *user's* computer to Perplexity's servers that Perplexity temporarily retains. Order at 3 (citing Yarats Decl. ¶ 15); Tr. at 67:17-23. But there is nothing in the record showing that, even if it "accessed" Amazon computers, Perplexity also "obtained information" *from such Amazon computers*—which Amazon argues are the "protected computers" at issue. Mot. for Prelim. Inj. at 14. Indeed, the word "computer" appears in the statute twice, and access to a computer and obtaining information *from that computer* are therefore

14

separate elements.  *See* 18 U.S.C. § 1030(a)(2)(C); *Brekka*, 581 F.3d at 1132.  The district court misapplied the law in finding Amazon likely to satisfy these elements.[3]

> (d)    Amazon has not shown cognizable loss under the CFAA.

Finally, the district court wrongly concluded that Amazon is likely to satisfy the CFAA's damages requirement.  Order at 3-4 & n.2.

The CFAA requires that Amazon show an annual "loss" of at least $5,000.  18 U.S.C. § 1030(c)(4)(A)(i)(I); *see id.* § 1030(g); *see also Brekka*, 581 F.3d at 1132.  In *Van Buren v. United States*, the Supreme Court recognized that the CFAA focuses on "technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data," so that the term "loss" in the statute "relates to costs caused by harm to computer data, programs, systems, or information services."  593 U.S. 374, 391-92 (2021) (quoting 18 U.S.C. § 1030(e)(11)).  The Court noted that "[l]imiting 'damage' and 'loss' in this way makes sense in a scheme 'aimed at preventing the typical consequences of hacking.'"  *Id.* at 392 (citation omitted).

In *hiQ Labs*, this Court said that after *Van Buren*, the CFAA "requires a showing" of the technological harms the Supreme Court identified.  31 F.4th at 1195 n.12; *see X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948,

---

[3]  The screenshots also reinforce that Perplexity did not "access" Amazon.  If it did, there would be no need for the Assistant to send screenshots back to Perplexity.

15

983-84 (N.D. Cal. 2024) (dismissing CFAA claim under *Van Buren* because alleged losses were "not technological in nature" and there was "no allegation that [data] was corrupted, changed, or deleted").

Remarkably, the district court dismissed all this as mere dicta. It had to do so to reach its ruling, as Amazon has not alleged, let alone shown a likelihood of proving, any technological harm sufficient to satisfy the CFAA's damages provision after *Van Buren*. It has only alleged three losses: (1) employee time spent investigating and responding to Perplexity; (2) engineering resources spent to filter out ad impressions generated by the Assistant's traffic; and (3) the costs of unblocking the accounts of Amazon users whom Amazon itself blocked for allegedly using the Assistant. Mot. for Prelim. Inj. at 18-19; Ex. 7 (Fernandes Decl.) ¶¶ 16-23. These allegations describe business harms, not technological harms, and are thus not cognizable as damages under *Van Buren*.

### 2. The District Court Erroneously Collapsed The Remaining Preliminary Injunction Elements Into One Inquiry

Independently, Perplexity is likely to succeed on this appeal because the district court abused its discretion in finding that Amazon has satisfied the other requirements for injunctive relief. Once the court's finding of likely success on the merits fails, the remaining elements necessarily fail too because the district court collapsed them all into its finding on the merits. On irreparable harm, the district court found that unauthorized access to Amazon computers—*i.e.*, a likely CFAA

16

violation—constitutes *per se* irreparable harm to Amazon, with no further analysis. Order at 4-5; Tr. at 130:20-23 ("We've talked about likelihood. The next one would be injury. They have a right to keep people out who keep doing it, like Comet, then that's irreparable until they're told to stop."). On the balance of the equities, Amazon won solely because of "Comet's continued unauthorized access to Amazon's password-protected sites," *i.e.*, a likely CFAA violation. Order at 5; *see* Tr. at 131:1-14 (agreeing with Amazon that "there's no balance because you can't do something that's unlawful"). And on the public interest, the district court found that the public "has an interest in protecting computers from unauthorized access," *i.e.*, in preventing a likely CFAA violation. Order at 6; *see* Tr. at 131:15-23.

The district court erred as a matter of law by effectively concluding that Amazon's entitlement to a preliminary injunction "follow[s] as a matter of course from [its] showing of a likelihood of success on the merits." *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam). Indeed, the district court itself recognized at the hearing that this cannot be the law, as such rule would swallow the rest of the multi-factor test for injunctive relief. *See* Tr. at 126:2-13; *id.* at 131:1-10. The district court's erroneous failure to require Amazon to independently satisfy each element of injunctive relief entitles Perplexity to a stay and, ultimately, vacatur of the injunction. *See Developmental Servs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) (district court "necessarily abuses its discretion when it bases its

17

decision on an erroneous legal standard"); *see also*, *e.g.*, *Winter*, 555 U.S. at 21-22 (reversing this Court's holding that mere "possibility" of irreparable harm was sufficient where plaintiff "demonstrates a strong likelihood of prevailing on the merits"); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[A] plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").

### B. Absent A Stay, Perplexity Will Suffer Irreparable Harm

If it takes effect, the district court's preliminary injunction will inflict immediate and escalating harm on Perplexity by banning its core product from the most important retail platform for its users. Perplexity invested tens of millions of dollars, plus the salaries of nearly 100 engineers, to build and sustain Comet and the goodwill it has earned. Shevelenko Decl. ¶¶ 10, 41; Opp'n to Prelim. Inj. at 24:4-10. Comet has built a substantial user base, many of whom set Comet as their default browser. Shevelenko Decl. ¶¶ 14, 18. Amazon "ranks among the top five most important sites for [Perplexity's] target demographic," and "[n]o consumer would use a web browser that cannot access Amazon." *Id*. ¶ 37. The injunction thus would damage, if not destroy, the goodwill Perplexity has engendered in Comet by signaling to users, investors, and the market that Comet cannot reliably function on Amazon.com, the Internet's most essential retail platform. *Id*. ¶ 40. Once lost, Perplexity may be unable to regain that credibility. *Id*. ¶¶ 38-40; *see adidas Am.,*

18

*Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756 (9th Cir. 2018) ("[L]oss of control over business reputation and damage to goodwill can constitute irreparable harm.").

Further, absent a stay, the harm to Perplexity will be irreparable because the market for AI-enhanced browsers is nascent. Even if it ultimately prevails in this appeal, Perplexity will have no practical way to recapture users lost during a crucial period for the company—every day, let alone month, counts. Shevelenko Decl. ¶¶ 36, 38. As Perplexity's CBO attested, browser adoption is "sticky," and a product that fails a user once can permanently lose credibility. *Id*. ¶ 39. In emerging technology markets in particular, "timing is everything." *Id*. ¶ 38. Every user who switches to a competitor during the months it will take to resolve this appeal is a user Perplexity must later re-acquire, and by that point, Perplexity may be in a "catastrophically weakened position" vis-à-vis entrenched rivals in a growing market that will have moved on without it. *Id*. ¶¶ 38-39.

And the district court set ***no bond***, despite recognizing that the injunction could cause significant loss to Perplexity and harm its position in the market, Tr. at 132:1-3, meaning Perplexity has no recourse to recover any of these losses even if it prevails. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond.").

### C.    A Stay Pending Appeal Will Cause No Harm To Amazon

A stay will not harm Amazon.  It has been eight months since Comet launched, and Amazon has pointed to no customer, retailer, or advertiser harmed by (or who even complained about) use of the Assistant on Amazon.com; no data breach; no realized security vulnerability; and no increase in fraud or chargebacks.  Shevelenko Decl. ¶ 17; Yarats Decl. ¶¶ 22-23.

The record refutes Amazon's specific claims of harm.  Amazon argued that the Assistant obtains "all available data" in users' accounts, including "payment information."  Mot. for Prelim. Inj. at 21.  Not so.  The Assistant only "sees" what the user instructs the Assistant to see and what is displayed (*i.e.*, what Amazon decides to show users) on the webpages it navigates to at the user's express instructions; it does not mine or scrape data behind the scenes.  Amazon already masks its users' credit-card numbers on its own webpage, and—because nobody is hacking into Amazon—the Assistant cannot "see" behind the mask.  Ex. 13 (Evans Reply Decl.) ¶ 10.  Amazon also argued that the Assistant degrades the Amazon shopping experience because it "may not" select optimal prices or delivery methods, Fernandes Decl. ¶ 14, but Amazon identified no customer who has actually

20

complained. That is unsurprising: users who use the Assistant have chosen to do so, and that is the shopping experience they prefer.[4]

Amazon also devoted substantial briefing to the Assistant's supposed security vulnerabilities, but its own expert could not reproduce them. Evans Decl. ¶ 13. The district court was not persuaded by Amazon's arguments, Tr. at 137:16-25 (stating it was not "blown away" by the cybersecurity argument and that cybersecurity was "not a strong reason here"), and the Order does not mention security at all.

Further, Perplexity did not cause any of the costs (or damages) Amazon complains of—Amazon did. To serve its business interests (rather than any interest the CFAA protects), Amazon chose to devote engineering resources to developing tools to block Comet, investigating the Assistant's activity, and unblocking customer

---

[4] In contrast to the Assistant, which operates only at a user's explicit instruction, Amazon launched its own agentic AI feature in April 2025, called "Buy for Me," which makes it appear that third-party retailers opted to sell their products on Amazon even if they did not. Ex. 18 (Amazon press release); Ex. 19 (Modern Retail article). The feature uses agentic AI to complete transactions on third-party retailer websites while creating the appearance the transactions are being completed on Amazon.com. In January 2026, news reports revealed that the feature had generated widespread complaints from retailers and consumers about unauthorized access to retailer websites, erroneous orders, and degraded shopping experiences. Ex. 19 (Modern Retail article). Amazon's harmful deployment of its own agentic AI while challenging the propriety of Perplexity's far more transparent (and harmless) Assistant amounts to "unclean hands" that "may militate against issuing an injunction that otherwise meets *Winter*'s requirements." *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 947 (9th Cir. 2013). Perplexity raised this issue, Ex. 16 (Suppl. Br.), but the district court did not address it.

21

accounts that Amazon itself had blocked.  Fernandes Decl. ¶¶ 16-22; Ex. 14 (Fernandes Reply Decl.) ¶ 9.  Those "harms" are self-imposed, not cognizable under *Van Buren*, and at most constitute quantifiable monetary costs, not irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) (injuries "in terms of money, time and energy" are not irreparable where compensatory relief will be available later).

### D. The Public Interest Favors A Stay

A stay would preserve consumer choice and competition in the nascent AI-enabled browser market while this Court resolves the legal questions presented.  The public interest is served when consumers decide how to interact with the marketplace, not when a platform dictates their options.  *See Regents of Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 521 (9th Cir. 1984) (public interest served when "the economic voice of the consumer may still be heard"); *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) (affirming denial of injunction that would have "depriv[ed] consumers of a choice of products").  The injunction overrides the decisions of millions of consumers who chose to use the Assistant on their own Amazon accounts.  Shevelenko Decl. ¶ 18.  Amazon's own briefing makes clear that its concern is not security but lost upselling opportunities: Amazon complains that the Assistant "dissuades Amazon's customers from visiting the Amazon Store themselves, thereby depriving Amazon of opportunities to . . . sell additional products by making recommendations or offering promotional benefits."

22

Mot. for Prelim. Inj. at 22. The public interest lies with consumers who choose how they interact with the Internet, not an e-commerce giant that wants to choose for them.

Moreover, under the reasoning of the district court's order, any website operator could invoke the CFAA to block AI tools (or, indeed, *any* software tools that "autonomously or semi-autonomously perform actions," Order at 7 n.4) that their customers choose to use, a rule that would harm every company building AI tools on the Internet, not just Perplexity. *See* Shevelenko Decl. ¶¶ 36-37 (identifying Google, Microsoft, and OpenAI as competitors developing AI-assisted browsing products). Courts should not lightly grant preliminary relief that alters the trajectory of a nascent industry before the underlying legal questions have been fully considered, let alone resolved. *See TikTok Inc. v. Garland*, 604 U.S. 56, 62 (2025) (counseling "caution" in cases involving "new technologies with transformative capabilities"); *Moody v. NetChoice, LLC*, 603 U.S. 707, 796 (2024) (Alito, J., concurring) (warning against "premature resolution" of legal questions involving new technology).

23

## **CONCLUSION**

Perplexity respectfully requests that the Court immediately order an administrative stay of the preliminary injunction while it considers this motion, and then stay the preliminary injunction pending Perplexity's appeal.


DATED: March 12, 2026        QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By      */s/ Daniel C. Posner*
        Daniel C. Posner
        Attorney for Defendant–Appellant

24

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and Ninth Circuit Rule 27-1(d). This document is proportionally spaced and, not counting the items excluded from the length by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f), contains 5,575 words, which when divided by 280 does not exceed the 20-page limit of Ninth Circuit Rule 27-1(d) as calculated under Ninth Circuit Rule 32-3.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

By _____*/s/ Daniel C. Posner*_____
Daniel C. Posner
Attorney for Defendant–Appellant

25

## CERTIFICATE OF SERVICE

I, Daniel C. Posner, a member of the Bar of this Court, hereby certify that on March 12, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

By  */s/ Daniel C. Posner*
Daniel C. Posner
Attorney for Defendant–Appellant

26