Appellate Case No.: 26-1444

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMAZON.COM SERVICES LLC, a Delaware limited liability company,

*Plaintiff and Appellee*,

vs.

PERPLEXITY AI, INC., a Delaware corporation,

*Defendant and Appellant*.

On Appeal from United States District Court, Northern District of California
Hon. Maxine M. Chesney, Case No. 3:25-cv-09514-MMC

## PLAINTIFF-APPELLEE'S OPPOSITION TO MOTION FOR STAY
## PENDING APPEAL

MOEZ M. KABA
CHRISTINE WOODIN
HAGAN SCOTTEN
BILLY JOE MCLAIN
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:   (888) 866-4825

Attorneys for Plaintiff-Appellee
AMAZON.COM SERVICES LLC

TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................. 1

STATEMENT OF FACTS ................................................................... 3

LEGAL STANDARD........................................................................... 7

ARGUMENT ........................................................................................ 8

    I.      A Stay Pending Appeal Is Not Warranted ......................................... 8

          A.      Perplexity is Unlikely to Succeed on the Merits ..................... 8

          B.      Perplexity Will Not Suffer Irreparable Harm ........................ 20

          C.      A Stay Will Injure Amazon .................................................... 21

          D.      Public Interest ........................................................................ 22

    II.     An Administrative Stay is Not Warranted ....................................... 23

CONCLUSION................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747 (9th Cir. 2018)....................20

*Al Otro Lado v. Wolf*, 952 F.3d 999 (9th Cir. 2020)...............................................20

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 2025 WL 835337 (9th Cir. Mar. 17, 2025) ...........................................24

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999).....................................21

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932 (9th Cir. 2025) ...........................................................7, 8

*Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017)..............2, 6, 19

*Doe #1 v. Trump*, 957 F.3d 1050 (9th Cir. 2020) ....................................................7

*E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640 (9th Cir. 2021).........................1

*Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765 (N.D. Cal. 2017), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) (*Power Ventures II*) .......................................................................................2, 22

*Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) (*Power Ventures I*)...............................................................................*passim*

*Garcia v. Google, Inc.*, 786 F.3d 733 (9th Cir. 2015) (en banc) .........................7, 19

*GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199 (9th Cir. 2000) .......................24

*hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022)..........11, 12, 13, 15

*Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817 (9th Cir. 2020)...............................................................................7, 21

*InSinkErator, LLC v. Joneca Co., LLC*, 163 F.4th 608 (9th Cir. 2025).................21

*Jenkins v. Cnty. of Riverside*, 398 F.3d 1093 (9th Cir. 2005)................................18

TABLE OF AUTHORITIES (cont.)

Page(s)

*Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022)........................................................................................9, 10, 15

*Momox-Caselis v. Donohue*, 987 F.3d 835 (9th Cir. 2021)...................................18

*Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195 (10th Cir. 2026) ........................................................................................................15

*Nat'l Urb. League v. Ross*, 977 F.3d 698 (9th Cir. 2020) ...................................3, 23

*Nken v. Holder*, 556 U.S. 418 (2009) ..........................................................7, 21, 22

*Rodriguez v. Robbins*, 715 F. 3d 1127 (9th Cir. 2013).............................................20

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015)....................................18

*United States v. Umeti*, 2026 WL 468096 (4th Cir. Feb. 19, 2026) ........................15

*Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013) ..................................22

*Van Buren v. United States*, 593 U.S. 374 (2021) ....................................................15

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649 (N.D. Cal. 2020)........................................................................................................11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)..........................................7

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948 (N.D. Cal. 2024) ........................................................................................16

**Statutes**

California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502.................................................................5, 6, 17, 18

Computer Fraud and Abuse Act, 18 U.S.C. § 1030............................................... 5, 6, 8, 10, 11, 12,15, 16, 17, 18

# INTRODUCTION

The district court did not abuse its discretion in issuing a narrow preliminary injunction barring Perplexity, through its Comet AI agent, from accessing password-protected areas of Amazon.com (the "Amazon Store") without authorization. As the district court explained, Perplexity's trespass into Amazon's protected computer systems is plainly unlawful under *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016) (*Power Ventures I*). Perplexity's demand that it be allowed to persist in its illegal conduct throughout this appeal fails to justify "the extraordinary request to stay a preliminary injunction granted by a district court." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021).[1]

The district court's ruling is amply supported by the law and the facts. On the merits, Perplexity's core argument is that its Comet AI agent can enter secure areas of the Amazon Store without Amazon's authorization so long as the agent does so through Amazon user accounts. But this Court rejected that argument in *Power Ventures I.* 844 F.3d at 1068 ("[C]onsent . . . from Facebook users was not sufficient to grant continuing authorization to access Facebook's computers after Facebook's express revocation of permission"). And Perplexity's claim that it does not transmit information from Amazon's password-protected systems to Perplexity's servers is

---

[1] Unless otherwise noted, case quotations omit internal quotation marks and citations and previous alterations.

false, as the district court found based on the sworn admission of *Perplexity's* chief technical officer. *See* Op. 3. As he admitted, Perplexity captures screenshots and HTML snapshots of Amazon's secure webpages and transmits that data—which can include customers' purchase histories, addresses, and browsing activity—to Perplexity's servers. *See* Ex. 1 ¶¶ 15–16. The other factors also strongly favor an injunction. Indeed, Perplexity has not cited a single case in which any court found that a defendant was unlawfully entering another company's password-protected systems yet declined to halt that trespass through an injunction. *Cf., e.g., Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 765, 779 (N.D. Cal. 2017) (issuing injunction), *aff'd*, 749 F. App'x 557 (9th Cir. 2019) (*Power Ventures II*).

*Second*, the equities do not favor a stay pending appeal. Perplexity claims that the injunction inhibits "technological advancement." Mot. 2. But the only "advancement" at issue is the Comet AI agent's willingness to unlawfully enter secure areas of the Amazon Store—misconduct that responsible AI companies refuse to commit. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) ("[H]arm caused by illegal conduct does not merit significant equitable protection."). Moreover, the district court correctly found that Perplexity—a $14 billion company—was not meaningfully threatened by an injunction barring one part of one of its more recently released products from entering one section of a single website. Op. 5. The same does not hold for Amazon, which would lose control over

its customer experience and password-protected data, threatening both its reputation and security, particularly given that the Comet AI agent is vulnerable to being "hijacked" by hackers who can "embed[] malicious prompts within a seemingly innocuous link to siphon sensitive data, including from connected services" like Amazon.com. Dkt. 14.10 at 10.

Perplexity's request for an administrative stay should also be denied. "When considering the request for an administrative stay," this Court's "touchstone is the need to preserve the status quo." *Nat'l Urb. League v. Ross*, 977 F.3d 698, 702 (9th Cir. 2020). For years, Perplexity did not enter the password-protected areas of the Amazon Store. Recently, its Comet AI agent began doing so pervasively—ignoring Amazon's explicit requests, including a cease-and-desist letter and even a lawsuit. Because the injunction does no more than preserve the status quo antedating the plainly unlawful conduct here, an administrative stay is not warranted. *See id.* at 700–01 (denying administrative stay where preliminary injunction preserved status quo prior to recent disputed conduct).

## STATEMENT OF FACTS

Amazon operates the Amazon Store, an online marketplace serving hundreds of millions of customers. The Amazon Store includes two types of webpages: (1) publicly accessible webpages available to anyone online, and (2) private webpages accessible only to customers through password-protected accounts. Ex. 2 ¶¶ 3–5.

Through these accounts customers view personalized content, place orders, store payment information and delivery addresses, and find their browsing and shopping history, which may include sensitive purchases such as controversial books and healthcare products. *Id.* ¶¶ 4–5; Dkt. 14.15 ¶ 11. To protect customers' private data, Amazon invests heavily in account security measures. Dkt. 14.9 ¶ 3.

Perplexity operates Comet, a web browser that includes an AI function called the Comet AI agent. Ex. 1 ¶ 6. Perplexity states that the Comet AI agent can independently "click[], scroll[], or interact[] with" websites to complete user-directed tasks, Ex. 3 at 3; when operating within the Amazon Store, the Comet AI agent "behaves like an efficient human shopper" and "automates clicks within Amazon's user interface," including Amazon's "secure web pages," Ex. 1 ¶¶ 16, 20; once inside those private webpages, the Comet AI agent captures "a JPEG screenshot or HTML snapshot of the webpages currently displayed on the user's device," *Id.* ¶ 15; Dkt. 14.15 ¶¶ 10–11; the Comet AI agent then transmits that data to Perplexity's servers, Ex. 1 ¶ 15.

After Comet's initial "limited release" in July 2025, Mot. 3, Amazon repeatedly told Perplexity that its AI agent was not authorized to access password-protected areas of the Amazon Store, yet Perplexity refused to stop. When Amazon implemented a technical block to prevent the agent's access, Perplexity circumvented it. Dkt. 14.9 ¶¶ 16–17. Perplexity made Comet widely available on

- 4 -

October 2, 2025.  Mot. 3.  Within days, Amazon sent Perplexity a formal cease-and-desist letter.  Dkt. 14.10, Ex. 7.  Perplexity again refused to stop.  Dkt. 14.9 ¶ 20.

On November 4, 2025, Amazon filed the Complaint, asserting violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (the "CFAA"), and the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502 (the "CDAFA").  Dkt. 14.5 ¶¶ 64–81.  Amazon contemporaneously moved for a preliminary injunction to stop Perplexity's ongoing violations of both statutes. Dkt. 14.6.  Amazon also implemented another technical block, Ex. 4 at Ex. 44, but Perplexity again circumvented it, Dkt. 14.16 ¶ 7.

On March 9, 2026, after considering eight briefs and sixteen declarations, and holding a 3.5-hour hearing, the district court granted Amazon's motion for preliminary injunctive relief.  Regarding Amazon's likelihood of success, the district court found "strong evidence that Perplexity, through its Comet browser, accesses with the Amazon user's permission but without authorization by Amazon, the user's password-protected account."  *Id.* at 3.  The court explained that Perplexity could not lawfully access Amazon's private, secure webpages without Amazon's authorization under *Power Ventures I*.  *Id.*; Tr. 81.  The court considered the contested definition of loss under the CFAA and found that this question was "likely to be resolved in Amazon's favor" given the holding of *Power Ventures I*.  Op. 3 n.2.  The district court also held that Amazon would likely succeed on its

- 5 -

independent CDAFA claim, itself sufficient to grant the injunction. Op. 4; Tr. 128–29.

The district court found that "Amazon is likely to suffer irreparable harm in the absence of a preliminary injunction." Op. 4. As the court explained, Amazon has "a right to keep people out" of its password-protected systems, much like landowners have a right to keep trespassers off their land, and Comet's continued intrusion constitutes paradigmatic irreparable harm. Tr. 30–31, 126.

The court next reasoned that the balance of hardship tips in Amazon's favor because "even if the relief Amazon requests is granted, Comet will retain its ability to access the entirety of the web other than the password-protected sections of Amazon's website" and "'harm caused by illegal conduct does not merit significant equitable protection.'" Op. 5 (quoting *Disney*, 869 F.3d at 867). Finally, the court held that the public interest favored "protecting computers from unauthorized access." *Id.* at 5–6; Tr. 125–26 ("[C]ourts have consistently held in CFAA cases that the public interest solution favors an injunction" and the public interest factor "certainly doesn't weigh against" the injunction.).

The district court issued a narrow injunction barring the Comet AI agent from the password-protected areas of the Amazon Store. Op. 7–8. The court denied Perplexity's request for a stay pending appeal but granted a seven-day administrative stay to allow Perplexity to seek relief from this Court. *Id.*

- 6 -

## LEGAL STANDARD

The district court's entry of a preliminary injunction is reviewed for abuse of discretion. *Garcia v. Google, Inc.*, 786 F.3d 733, 739 (9th Cir. 2015) (en banc). This Court has held that "[b]ecause our review is deferential, we will not reverse the district court where it got the law right, even if we would have arrived at a different result, so long as the district court did not clearly err in its factual determinations." *Id.*

"The bar for obtaining a stay of a preliminary injunction is higher than the *Winter* standard for obtaining injunctive relief." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 824 (9th Cir. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Courts consider the four factors in *Nken v. Holder*, 556 U.S. 418, 426 (2009): "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 936–37 (9th Cir. 2025). The "party requesting a stay pending appeal bears the burden of showing that the circumstances justify an exercise of that discretion." *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020).

- 7 -

## ARGUMENT

## I.    A Stay Pending Appeal Is Not Warranted

### A.    Perplexity is Unlikely to Succeed on the Merits

Perplexity's arguments contradict the law and the facts, falling far short of the requisite "*strong* likelihood of success on the merits." *Cmty. Legal Servs.*, 137 F.4th at 936–37.

#### 1.  Each Element of the CFAA Is Satisfied

##### a.    Perplexity Intentionally Accesses the Amazon Store

The district court correctly found that "Amazon has provided strong evidence that Perplexity . . . accesses . . . the user's password-protected [Amazon] account." Op. 3.  Perplexity forsakes credibility by claiming it "is undisputed that Comet runs locally on the user's device." Mot. 4.  To the contrary, Perplexity's chief technology officer admitted that the Comet AI agent "communicates with Perplexity's servers . . . to process natural language instructions and determine appropriate actions." Ex. 1 ¶ 19.  Only "[p]arts of it run on the user's local machine, [and] when network access to Perplexity's servers is blocked, the Comet AI Assistant spins and is unable to perform any actions." Dkt. 14.15 ¶ 13.  Thus, the district court correctly determined that Perplexity, through the Comet AI agent, accesses Amazon's password-protected webpages.  Op. 2–3.

Moreover, Perplexity's chief technology officer also averred that the Comet AI agent "navigat[es] purposefully through the [Amazon] site" "like an efficient human shopper" on Amazon's "secure web pages." Ex. 1 ¶¶ 16, 20. Perplexity only confirms this concession by arguing that "[n]obody would say that Google 'accesses' Amazon's computers whenever *a person* navigates on her own computer to Amazon.com using Google Chrome." Mot. 10 (emphasis added). Perhaps—but Perplexity has admitted that here it is the Comet AI agent, not "a person," navigating Amazon's protected areas. Perplexity even acknowledges that unlike a browser, "passively displaying whatever content websites throw at a person, Comet works on the user's behalf, filtering noise, surfacing what matters, and handling routine tasks so the user can focus on decisions that actually require his or her attention." Dkt. 14.13 ¶ 6.

These facts defeat Perplexity's reliance on *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260 (N.D. Cal. 2022). There, the defendant's program *passively* collected data from the computers of users who received that information from Facebook "through their normal use of the website." *Id.* at 1260. *BrandTotal* distinguished such "reactive" data collection from "proactively 'accessing' or 'communicating with' Meta's servers." *Id.* By contrast, the whole point of an AI agent is that, by design, it actively analyzes, reasons, and acts—or as Perplexity puts it "[w]hat sets Comet apart is its agentic capabilities, the ability to find information

and act on it intelligently and autonomously." Ex. 5 at 4. Because the Comet AI agent is, by Perplexity's own admission, *proactively* accessing and communicating with Amazon's servers, the district court correctly found *BrandTotal* inapplicable.[2]

Instead, the district court applied this Court's precedent, *Power Ventures I*. There, Power sent Facebook users a message enabling them to select "Yes, I do!," allowing Power to access their Facebook accounts. 844 F.3d at 1063. After that, "Power caused a message to be transmitted to the user's friends within the Facebook system" or an email was sent "to an external email account from the user to friends." *Id.* Thus, just as Perplexity accesses Amazon through user accounts, Power accessed Facebook through user accounts. Nevertheless, this Court ruled that "[o]nce permission has been revoked [by Facebook], technological gamesmanship *or the enlisting of a third party to aid in access* will not excuse liability" under the CFAA. *Id.* at 1067 (emphasis added). So too here.

Because "enlisting of a third party to aid in access will not excuse liability," *id.*, it is also irrelevant that Perplexity's servers may not be in "direct" contact with

---

[2] Perplexity's claim that the district court "ignored" *BrandTotal*, Mot. 10, unfairly impugns the court's thoroughness. The court spent significant portions of the hearing parsing the case—including reading a physical copy alongside counsel—before concluding that the "reactive" data collection there does not resemble Perplexity's conduct here. Tr. 69–77, 93–97, 111–113.

Amazon's servers. Mot. 10. Perplexity cites no case or statutory language requiring "direct" server-to-server contact for CFAA liability. For good reason: internet traffic routinely passes through multiple waypoints, so it would make no sense to limit the CFAA to the rare case where a wire runs directly from the defendant's system to the plaintiffs. *See, e.g.*, *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 472 F. Supp. 3d 649, 659–60 (N.D. Cal. 2020) (rejecting motion to dismiss CFAA claim where defendant "leased servers and internet hosting services from third parties . . . to distribute malware and relay commands to users' devices").

### b.    Perplexity's Access Is Unauthorized

The district court also correctly found that the Comet AI agent's intrusions into the Amazon Store's password-protected areas are unauthorized. Op. 3. Perplexity clearly understood that Amazon prohibited this conduct; after receiving Amazon's cease-and-desist letter, Perplexity publicly stated that "Amazon . . . [is] demanding we prohibit Comet users from using their AI Assistants on Amazon." Ex. 4 at Ex. 42. Yet the Comet AI agent continued entering the secure areas of the Amazon Store, even circumventing a second technical block. Dkt. 14.16 ¶ 7.

Perplexity's first argument on this element is a red herring. It says that Amazon's "public-facing retail listings" are open to the public, and thus not subject to the CFAA under *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022). Mot. 11. But the injunction does not apply to the publicly accessible portions of the

Amazon Store: As the district court's order makes clear, this dispute concerns only Perplexity's efforts "to access password-protected sections of plaintiff['s] website." Op. 2. And *hiQ* states in no uncertain terms that the CFAA applies to "password-protected sites." 31 F.4th at 1197–98; *see also id.* at 1199 n.17 ("Of course, even computers and servers hosting public websites may contain areas that require authorization to access. Accessing those areas without authorization would violate the CFAA.").

Given that Amazon has prohibited the Comet AI agent from accessing only its password-protected sites, it does not matter whether Comet's users "explicitly authorize" the access "for the purpose of complying with the user's express instructions." Mot. 13. The same was true in *Power Ventures I*. There, this Court found that the consent of Facebook users did not authorize Power to access Facebook through the users' accounts, because "for Power to continue . . . using Facebook's computers, it needed authorization both from individual Facebook users (who controlled their data and personal pages) and from Facebook (which stored this data on its physical servers)." *Power Ventures I*, 844 F.3d at 1068.

Perplexity cannot distinguish *Power Ventures I* on the theory that *hiQ* describes it as concerning "private information." Perplexity says that "private information" meant information "belonging to *third-party* Facebook users (*i.e.*, other than the users who provided Power with access to their accounts)." Mot. 12.

- 12 -

But that is not what *hiQ* says. The sole use of that phrase in *hiQ Labs* is "private information—information delineated as private through use of a permission requirement of some sort." 31 F.4th at 1197. Thus, when *hiQ* discussed *Power Ventures I*, it explained that the information in that case was "private" because "Facebook requires its users to register with a unique username and password, and Power Ventures required that Facebook users provide their Facebook username and password to access their Facebook data on Power Ventures' platform." *Id.* at 1199. Amazon's information is equally "private," because Amazon requires its users to register with a unique username and password. Ex. 2 ¶ 5.

Nor does it matter that the information in *Power Ventures* included users' collections of their friends' email addresses. Power's access was unauthorized not because of the type of information, but because that information was stored in password-protected areas to which Facebook had revoked Power's access. *hiQ*, 31 F.4th at 1199 (describing *Power Ventures I*). Again, the same is true here: Because Amazon has prohibited the Comet AI agent from entering its password-protected areas, its intrusions there are unauthorized, regardless whether the agent is obtaining users' personal information, or the names and addresses of every "third party" for whom the user has purchased gifts. *See, e.g.*, Ex. 14.15 ¶¶ 17–18 (Comet transmits user's purchase history and address information to Perplexity).

- 13 -

### c.      Perplexity Obtains Information

The district court correctly determined that "Amazon has provided strong evidence that Perplexity" is "obtaining . . . the user's private Amazon account information," given that Perplexity admitted "that such information is transmitted to Perplexity's servers for the purpose of conducting said user's requested tasks."  Op. 3 (citing the declaration of Perplexity's chief technology officer).   Perplexity contends that because the Comet AI agent operates through users' computers, it is not obtaining information *directly* from Amazon's computers.  Mot. 14.  That makes no more sense than insisting that a clerk does not obtain information from *Westlaw* because she views that website through her computer.  Indeed, Perplexity's counsel conceded at argument that "the Comet Assistant receives . . . *information from Amazon*, and it sends screenshots back to Perplexity's computers."  Tr. 67:3–5 (emphasis added).  Perplexity thus cannot rely on "technological gamesmanship or the enlisting of a third party" to evade the fact that the Comet AI agent transfers password-protected data from Amazon to Perplexity.  *Power Ventures I*, 844 F.3d at 1067.

### d.      Amazon Suffered Over $5,000 Loss

Again applying *Power Ventures I*, the district court held that Amazon's "essentially undisputed evidence" that its "'employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to defendant's

actions'" satisfied the CFAA's loss requirement. Op. 3 (quoting 844 F.3d at 1068). Perplexity argues otherwise, relying on asides in *hiQ* and *Van Buren v. United States*, 593 U.S. 374, 391–92 (2021). The district court correctly found these statements to be dicta. Although Perplexity complains about this determination, it does not actually dispute it. *See* Mot. 16. With good reason: As the district court explained, neither *hiQ* nor *Van Buren* concerned the CFAA's loss element, but rather merely mentioned it en route to holdings on other subjects. *See* Tr. 98–99, 100–101. The district court thus correctly followed the holding of *Power Ventures I*. *See also BrandTotal*, 605 F. Supp. 3d at 1265 ("declin[ing] to construe *Van Buren* and *hiQ* as foreclosing a loss based on Facebook's investigative costs" or to "construe [such] dicta . . . as overruling" *Power Ventures I*).

Moreover, Perplexity's argument contravenes the CFAA's text, which defines "loss" to mean "*any* reasonable cost to any victim, *including the cost of responding to an offense*." 18 U.S.C. § 1030(e)(11) (emphasis added). The only appellate courts to have reached this question have thus held that investigative and remediation costs remain cognizable losses under the CFAA after *Van Buren*. *See Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1201 (10th Cir. 2026); *United States v. Umeti*, 2026 WL 468096, at *8 (4th Cir. Feb. 19, 2026).

Lastly, even if "loss" under the CFAA were construed to only cover "technological harm," Mot. 15, the costs Amazon incurred to repair its advertising

- 15 -

systems qualify. The Comet AI agent introduced false, non-human data into Amazon's impression-tracking system, thereby forcing Amazon to make "system adaptations," including "developing new detection mechanisms to identify and exclude automated traffic." Dkt. 14.9 ¶ 22. Perplexity therefore cannot rely on *X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948 (N.D. Cal. 2024). In addition to being an outlier—at odds with *Power Ventures I*, the statutory language, and the holdings of other circuits—*X Corp.* concerned costs "to conduct internal investigations." *Id.* at 983–84.

* * *

Amazon's satisfaction of each CFAA element also answers Perplexity's rhetoric about the statute's potential criminal application. Perplexity offers these atmospheric allusions in discussing the "access" element, Mot. 9–10, but it is the combination of elements—such as the fact that its access is unauthorized and inflicts significant losses—that makes Perplexity's conduct illegal. And there is nothing unusual about an intrusion on property constituting both a criminal and civil violation, as trespassing itself is. *See Power Ventures I*, 844 F.3d at 1069 (considering potential criminal applications of CFAA but finding "concerns about overreaching or an absence of culpable intent simply do not apply here, where an individualized cease-and-desist letter"—exactly what Perplexity received— "is a far cry from the permission skirmishes that ordinary Internet users may face").

- 16 -

### 2. Perplexity Is Violating the CDAFA

The district court also correctly found that Amazon was likely to prove its CDAFA claim, which itself merits an injunction regardless of the CFAA claim. Op. 4. And as the district court recognized, the CDAFA is broader than the CFAA on elements that Perplexity disputes. *See* Op. 4 n.3; Tr. 128–29. The CDAFA defines "access" to include "to cause input to" or "cause output from" a computer system. Cal. Pen. Code § 502(b)(1). Not even Perplexity can dispute that the Comet AI agent does exactly that when it "automates clicks within Amazon's user interface." Ex. 1 ¶ 20 (Perplexity's own description of the agent's activity). Similarly, the CDAFA provision on which the district court relied does not require Perplexity to have obtained information. *See* Cal. Pen. Code § 502(c)(7). The CDAFA also has neither a $5,000 minimum nor any "technological harm" limitation on cognizable losses. *See id.* § 502(e)(1). Perplexity conceded this point in the district court. Dkt. 14.12 at 19 (arguing that Amazon's CDAFA claim would "rise or fall" with its CFAA claim "[b]arring the cognizable harm requirement"). The district court thus correctly explained that the CDAFA claim renders irrelevant any concern with the loss element of Amazon's CFAA claim. *See* Op. 4 n.3.

Perplexity does not discuss the CDAFA, other than claiming—here and in the district court—that its CFAA arguments have equal force with respect to the state statute. *See* Dkt. 14.12 at 19; Mot. 9 n.2. But this Court does not "interpret the state

- 17 -

statute consistent with the federal statute" because the "statutes are different." *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2015). And Perplexity has now forfeited any argument that Amazon will not prevail on its CDAFA claim regardless of arguments concerning particular elements of the CFAA. *See Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (appellant abandoned her claims "by not raising them in opposition" to appellee's motion); *Momox-Caselis v. Donohue*, 987 F.3d 835, 841 (9th Cir. 2021) (appellant "waived several appellate arguments" that "were . . . not raised before the district court").

### 3. The District Court Correctly Analyzed the Remaining Preliminary Injunction Factors

Perplexity also errs in contending that the district court collapsed the remaining injunctive relief factors into the merits. To the contrary, the district court gave individual consideration to each factor and—in analysis Perplexity largely fails to engage with—found that all of them supported injunctive relief. *Compare* Mot. 16–18 *with* Op. 4–6.

Perplexity cannot alter this conclusion by complaining that, under the particular facts of this case, Perplexity's blatant violation of the relevant statutes also shaped the consideration of other factors. With respect to the irreparable harm faced by Amazon, the court found that Perplexity would continue to trespass in Amazon's password-protected areas and obtain information there absent an injunction, given that Perplexity had already ignored Amazon's cease-and-desist letter. Op. 4–5

(citing *Power Ventures II*, 252 F. Supp. 3d at 782). In its briefing below, Perplexity did not even contest that this was a legally sufficient basis for finding irreparable harm. *Compare* Dkt. 14.6 at 20 *with* Dkt. 14.12 at 19–20. On the balance of hardships, the court found not only that requiring Perplexity to abstain from unlawful conduct imposed no cognizable hardship, but that even that non-cognizable hardship would be minimal, because "Comet will retain its ability to access the entirety of the web other than the password-protected sections of Amazon's website." Op. 5; *see also Disney*, 869 F.3d at 866–67 ("[F]inancial hardship from ceasing infringing activities" is not a cognizable hardship.). And with respect to the public interest, the court acknowledged Perplexity's claimed interests in "consumer choice and innovation," but found the countervailing public interest "in protecting computers from unauthorized access" a sufficient showing on this factor. Op. 5 (citing *Power Ventures II*, 252 F. Supp. 3d at 785). Perplexity may disagree with those determinations, but cannot erase the fact that the district court conscientiously made them, nor show that the court abused its discretion in doing so. *See Garcia*, 786 F.3d at 739 ("We will not reverse the district court where it got the law right, even if we would have arrived at a different result, so long as the district court did not clearly err in its factual determinations.").

- 19 -

**B.     Perplexity Will Not Suffer Irreparable Harm**

Perplexity also fails to show "that irreparable injury is likely to occur during the period before the appeal is likely to be decided." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). Perplexity claims the injunction will decrease Comet's adoption as a browser, because "[n]o customer would use a web browser that cannot access Amazon." Mot. 18. But the injunction does not bar customers from using the Comet browser to access Amazon; it bars only using one of its functions—the AI agent—in one part of the store—the password-protected areas. *See* Op. 5; *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 760–761 (9th Cir. 2018) (finding no irreparable harm without "evidence in the record" to support the "theory of harm").

Nor has Perplexity produced evidence that it will suffer cognizable harm in "the market for AI-enhanced browsers." Mot. 19. What Perplexity is really arguing is that it will lose the particular advantage of its willingness to break laws that others are required to follow. *See* Dkt. 14.15 ¶ 12 (identifying other AI-enhanced browsers that refuse to access password-protected areas of the Amazon Store). But a party "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F. 3d 1127, 1145 (9th Cir. 2013).

Perplexity also cannot fault the district court for declining to grant its outlandish request for a bond of "at least $1 billion." Dkt. 14.12 at 25. The only evidence Perplexity proffered was an assertion that its overall value "increased $5

- 20 -

billion on the strength of Comet," *id.*, but as the district court explained, "the requested injunctive relief does not implicate the entirety of Perplexity's investment in Comet, let alone the entire value of Perplexity as a company." Op. 6. The district court therefore did not abuse its discretion here either. *See InSinkErator, LLC v. Joneca Co., LLC*, 163 F.4th 608, 614 (9th Cir. 2025) (district court did not abuse discretion by denying bond); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (affirming district court's issuance of only a nominal bond where "defendants did not tender any evidence on the issue").

### C.    A Stay Will Injure Amazon

Even if this Court reaches the remaining *Nken* factors—and it need not do so because Perplexity fails to satisfy the first two, *see Index Newspapers*, 977 F.3d at 824—those factors likewise weigh against a stay.

With respect to the third *Nken* factor, although Perplexity asserts that the Comet AI agent's trespasses cause Amazon no harm, Mot. 20–21, the district court disagreed, finding that Amazon has "a right to keep people out," and if that right is violated, "then it's harmful to you," Tr. 126. Perplexity identifies no flaw, much less an abuse of discretion, in that commonsense reasoning. *See Index Newspapers*, 977 F.3d at 824.

Moreover, Amazon's security and reputation are at risk because Perplexity's Comet AI agent can "siphon sensitive data" from connected services like Amazon

and covertly transmit private customer data, including purchase histories, addresses, and browsing activity to Perplexity's servers.  Dkt. 14.10, Ex. 1; Dkt. 14.9 ¶ 16; Dkt. 14.8 ¶¶ 9–16.  Perplexity's responses to this extensive record evidence are immaterial.  It notes a lack of customer complaints and proven data breaches, Mot. 20–21, but Comet's AI browser only recently began operating, and Perplexity identifies no case suggesting that companies must allow calamities to occur before preventing them.  That the district court did not find cybersecurity risks "as strong a reason" behind its irreparable harm finding, Mot. 21 (quoting Tr. 137), also does not mean that Amazon should be forced to continue bearing these risks now that an injunction has issued.  And Perplexity can no more fairly describe Amazon's costs in repairing the damage done by the Comet AI agent's intrusions to date as "self-imposed," *id.* at 22, than a reckless driver could say the same about an accident victim's "choice" to pay for treating his broken leg.

### D.    Public Interest

The fourth *Nken* factor also weighs against granting a stay.  As the district court rightly concluded, Op. 5–6, the public has a strong interest in preventing conduct that both Congress and the California Legislature have deemed criminal.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state. . . to violate the requirements of federal law."); *Power Ventures II*, 252 F.

Supp. 3d at 785 ("The public has an interest in ensuring that computers are not accessed without authorization.").

Perplexity argues that the "public interest is served when consumers decide how to interact with the marketplace," but this injunction has little to do with that. Mot. 22–23. Consumers remain free to use Comet and its AI agent function; Perplexity just cannot force Amazon to accept the latter's intrusions into the non-public areas of its store. There is nothing artificially constrained, or unusual, about a marketplace in which the law allows companies to control access to their secure areas. And Perplexity derives no support from citing *TikTok Inc. v. Garland*, 604 U.S. 56 (2025). That case affirmed legal restrictions on TikTok despite its claims that consumer choice demanded otherwise. Although expressing caution in addressing new technologies, the Court nevertheless affirmed because settled law supported those restrictions. *Id.* at 62, 80. *Power Ventures* compels the same result here.

## II. An Administrative Stay is Not Warranted

An administrative stay also should not issue because "staying the preliminary injunction would upend the status quo, not preserve it." *Nat'l Urb. League*, 977 F.3d at 701. Perplexity operated for years without sending AI agents into Amazon's password protected areas. Perplexity first made Comet "widely available on October 2, 2025," Mot. 3, and Amazon sought this injunction 32 days later. The relevant

status quo here is thus the longstanding absence of Comet's AI agent from the Amazon Store, before Perplexity's trespass ignited the current controversy. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy."). For that reason, forbidding Comet's AI agent from accessing the password-protected areas of the Amazon Store while this Court deliberates best preserves the status quo. *See, e.g., Am. Fed'n of Gov't Emps., AFL-CIO v. United States Off. of Pers. Mgmt.*, 2025 WL 835337, at *1 (9th Cir. Mar. 17, 2025) (denying administrative stay because "the district court found that the employees were wrongfully terminated and ordered an immediate return to the status quo ante, an administrative stay of the district court's order would not preserve the status quo").

## CONCLUSION

Perplexity's motions for a stay pending appeal and an administrative stay should be denied.

Dated:  March 16, 2026                    HUESTON HENNIGAN LLP


                                          By: */s/  Moez M. Kaba*
                                          Moez M. Kaba
                                          Christine Woodin
                                          Hagan Scotten
                                          Billy Joe McLain
                                          Attorneys for Plaintiff and Appellee
                                          AMAZON.COM SERVICES LLC

- 24 -

## **CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and Ninth Circuit Rules 27-1(1)(d) and 32-3(2). This document is proportionally spaced and, not counting the items excluded from the length by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f), contains 5,599 words, which when divided by 280 does not exceed the 20-page limit of Ninth Circuit Rule 27-1(d) as calculated under Ninth Circuit Rule 32-3.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6). This document has been prepared using Microsoft Word in 14-point Times New Roman font.

Dated: March 16, 2026                    By:    */s/ Moez M. Kaba*

Moez M. Kaba
Attorneys for Plaintiff and Appellee
AMAZON.COM SERVICES LLC

- 26 -

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on March 16, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF System.


Dated: March 16, 2026             */s/ Moez M. Kaba*

Moez M. Kaba
Attorneys for Plaintiff and Appellee
AMAZON.COM SERVICES LLC