*Appeal No. 26-1444*

## IN THE

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

AMAZON.COM SERVICES LLC,

Plaintiff-Appellee,

v.

PERPLEXITY AI, INC.,

Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of California
Hon. Maxine M. Chesney, Case No. 3:25-CV-09514-MMC

## APPELLEE'S ANSWERING BRIEF

Moez M. Kaba (CA SBN 257456)
mkaba@hueston.com
Christine Woodin (CA SBN 295023)
cwoodin@hueston.com
Billy Joe McLain (CA SBN 290682)
bmclain@hueston.com
HUESTON HENNIGAN LLP
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone: (213) 788-4340
Facsimile: (888) 866-4825
Attorneys for Plaintiff-Appellee
Amazon.com Services LLC

Hagan Scotten (NY SBN 4909719)
hscotten@hueston.com
HUESTON HENNIGAN LLP
1 Little W 12th Street
New York, NY 10014
Telephone: (212) 268-8150
Facsimile: (888) 866-4825
Attorneys for Plaintiff-Appellee
Amazon.com Services LLC

i

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................1

STATEMENT OF JURISDICTION................................................................................5

STATEMENT OF ISSUES ...........................................................................................6

STATEMENT OF THE CASE........................................................................................6

    A.    Legal Background................................................................................6

    B.    Factual Background .............................................................................7

        1.    The Amazon Store ....................................................................7

        2.    Perplexity's Comet AI Agent ....................................................8

        3.    Amazon Denies Authorization for the Comet AI Agent to Enter the Amazon Store......................................................................................10

    C.    Procedural History .............................................................................12

STANDARD OF REVIEW ...........................................................................................15

SUMMARY OF ARGUMENT .....................................................................................15

ARGUMENT ..............................................................................................................19

I.    The District Court Did Not Abuse Its Discretion in Issuing a Narrow Preliminary Injunction ................................................................................19

    A.    Amazon Is Likely to Succeed on the Merits.....................................19

        1.    Perplexity Violates the CFAA ................................................21

            (a)    Perplexity Intentionally Accesses Amazon's Computers ................21

            (b)    Perplexity's Access Is Without Authorization .................................25

            (c)    Perplexity Obtains Information from Amazon's Computers ............30

            (d)    Amazon Meets the Loss Requirement...............................................31

    B.    Perplexity Violated the CDAFA........................................................35

        1.    Perplexity's Arguments About the CDAFA's Scope Are Waived and Meritless..............................................................................................35

        2.    Perplexity's Supplemental Jurisdiction Argument Is Waived and Meritless..............................................................................................39

ii

C. The District Court Correctly Resolved the Remaining Preliminary Injunction Requirements in Amazon's Favor..............................................40

    1. Amazon Demonstrated the Equitable Requirements for a Preliminary Injunction ......................................................................................................41

        (a) Irreparable Harm.................................................................................41

        (b) Balance of Hardships.........................................................................47

        (c) Public Interest ...................................................................................49

    2. The District Court Weighed Each *Winter* Factor ...................................51

II. The Buy for Me Example Reinforces the District Court's Decision..............53

III. The District Court Did Not Abuse Its Discretion by Denying Perplexity's Request for a $1,000,000,000 Bond ............................................................57

CONCLUSION ....................................................................................................60

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abu v. Dickson*,
    107 F.4th 508 (6th Cir. 2024) ....................................................6, 19, 20

*Allen v. Stowell*,
    145 Cal. 666 (1905) ...............................................................................42

*Allred v. Harris*,
    14 Cal. App. 4th 1386 (1993) ................................................................42

*adidas America, Inc. v. Skechers USA, Inc.*,
    890 F.3d 747 (9th Cir. 2018) .................................................................46

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
    480 U.S. 531 (1987)................................................................................53

*Ariz. Dream Act Coalition v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ...............................................................41

*Barahona-Gomez v. Reno*,
    167 F.3d 1228 (9th Cir. 1999) ...........................................................58, 59

*Chrisman v. City of Los Angeles*,
    155 Cal. App. 4th 29 (2007) ..............................................................20, 38

*Claiborne v. Blauser*,
    934 F.3d 885 (9th Cir. 2019) .................................................................37

*Close v. Sotheby's Inc.*,
    894 F.3d 1061 (9th Cir. 2018) ...............................................................33

*Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*,
    321 F.3d 878 (9th Cir. 2003) .................................................................59

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ...............................................................5, 48

*Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*,
    232 Cal. App. 4th 1171 (2014) ..............................................................43

*Earth Island Inst. v. Carlton*,
626 F.3d 462 (9th Cir. 2010) ..................................................52, 53

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) .....................................................*passim*

*Facebook, Inc. v. Power Ventures, Inc.*,
252 F. Supp. 3d 767 (N.D. Cal. 2017) *(Power Ventures II)*
.................................................................................4, 14, 41, 48, 49, 53

*Facebook, Inc. v. Power Ventures, Inc.*,
749 F. App'x 557 (9th Cir. 2019) ............................................2, 4, 41

*Fisher v. Roe*,
263 F.3d 906 (9th Cir. 2001) .............................................................55

*Fla. Atl. Univ. Bd. of Trs. v. Parsont*,
465 F. Supp. 3d 1279 (S.D. Fla. 2020) .......................................41, 53

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987) .............................................................57

*Golden Gate Restaurant Ass'n v. City & Cnty. of S.F.*,
512 F.3d 1112 (9th Cir. 2008) ............................................................46

*Herb Reed Enterprises, LLC v. Florida Entertainment Management,
Inc.*, 736 F.3d 1239 (9th Cir. 2013) ..................................................46

*hiQ Labs, Inc. v. LinkedIn Corp.*,
31 F.4th 1180 (9th Cir. 2022) ....................................................*passim*

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*,
725 F.3d 940 (9th Cir. 2013) .............................................................56

*Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*,
4 F.3d 819 (9th Cir. 1993) .................................................................50

*Kohler v. Inter-Tel Techs.*,
244 F.3d 1167 (9th Cir. 2001) ...........................................................39

*League of Wilderness Defs./Blue Mountains Biodiversity Project v.
Connaughton*, 752 F.3d 755 (9th Cir. 2014) .....................................40

v

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
　　605 F. Supp. 3d 1218 (N.D. Cal. 2022).................................................24, 33, 36

*Meyer v. Portfolio Recovery Assocs., LLC*,
　　707 F.3d 1036 (9th Cir. 2012) ............................................................................42

*Moxie Pest Control (Utah), LLC v. Nielsen*,
　　164 F.4th 1195 (10th Cir. 2026) .........................................................33, 34, 35

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
　　422 F.3d 782 (9th Cir. 2005) ............................................................................15

*Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*,
　　747 F.2d 511 (9th Cir. 1984) ............................................................................49

*Reno v. ACLU*,
　　521 U.S. 844 (1997)..........................................................................................25

*Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*,
　　944 F.2d 597 (9th Cir. 1991) ............................................................................41

*Rodriguez v. Robbins*,
　　715 F.3d 1127 (9th Cir. 2013) ..........................................................................48

*S. Cal. Edison Co. v. Lynch*,
　　307 F.3d 794 (9th Cir. 2002) ............................................................................60

*S.E.C. v. Seaboard Corp.*,
　　677 F.2d 1301 (9th Cir. 1982) ..........................................................................60

*Smith v. City of Santa Clara*,
　　876 F.3d 987 (9th Cir. 2017) ......................................................................21, 43

*Smith v. Marsh*,
　　194 F.3d 1045 (9th Cir. 1999) ..........................................................................36

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
　　240 F.3d 832 (9th Cir. 2001) ......................................................................44, 45

*Sw. Voter Registration Educ. Project v. Shelley*,
　　344 F.3d 914 (9th Cir. 2003) ............................................................................15

vi

*Teran v. Super. Ct.*,
   334 Cal. Rptr. 3d 299 (2025) ...............................................................38

*Trs. of the Constr. Indus. v. Desert Valley Landscape*,
   333 F.3d 923 (9th Cir. 2003) ..........................................................39, 40

*United States v. Chesher*,
   678 F.2d 1353 (9th Cir. 1982) ............................................................55

*United States v. Christensen*,
   828 F.3d 763 (9th Cir. 2015) ..............................................................38

*United States v. Hinkson*,
   585 F.3d 1247 (9th Cir. 2009) (en banc) .........................................15, 21, 40, 47

*United States v. Lewis*,
   554 F.3d 208 (1st Cir. 2009)................................................................25

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) ..........................................................25, 30

*United States v. Nosal*,
   930 F. Supp. 2d 1051 (N.D. Cal. 2013).................................................31

*United States v. Robertson*,
   52 F.3d 789 (9th Cir. 1994) ................................................................43

*United States v. Steele*,
   595 F. App'x 208 (4th Cir. 2014)........................................................31

*United States v. Umeti*,
   167 F.4th 687 (4th Cir. 2026) .............................................................34

*United States v. Valle*,
   807 F.3d 508 (2d Cir. 2015) .......................................................6, 19, 20

*Valle del Sol Inc. v. Whiting*,
   732 F.3d 1006 (9th Cir. 2013) ........................................................52, 53

*Van Buren v. United States*,
   593 U.S. 374 (2021)...................................... 20, 30, 32, 33, 34, 35, 38

*Walsh v. Nev. Dep't of Hum. Res.*,
   471 F.3d 1033 (9th Cir. 2006) ................................................................55

*Wildwest Inst. v. Bull*,
   472 F.3d 587 (9th Cir. 2006) ................................................................15

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)................................................................45, 51, 52

**Statutes**

18 U.S.C. §1030................................................................*passim*

California Penal Code §502................................................................*passim*

**Other Authorities**

Orin S. Kerr, *Norms of Computer Trespass*,
   116 Colum. L. Rev. 1143, 1144-46 (2016)................................................................42

## **INTRODUCTION**

The district court issued a narrow injunction barring Perplexity, through its Comet AI agent, from accessing private, password-protected areas of Amazon.com (the "Amazon Store") during the pendency of this case. The court found "strong evidence," including Perplexity's sworn admissions, that Perplexity's Comet AI agent is "access[ing]" those password-protected areas, "obtaining information" there, and transmitting the information to Perplexity's servers "without authorization by Amazon." 1-ER-4. This is a textbook violation of the federal Computer Fraud and Abuse Act ("CFAA") and its broader state analogue, California's Comprehensive Computer Data Access and Fraud Act ("CDAFA"), as this Court held in *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016).

The district court did not reach this conclusion lightly. It reviewed eight briefs, 16 declarations, and 75 exhibits, then held a three-and-a-half-hour hearing. That record reflects every fact necessary to establish violations of the CFAA and CDAFA. Perplexity owns and operates the Comet AI agent, which it touts as "autonomously" and "intelligently" performing actions on the internet—including entering the private, password-protected areas of the Amazon Store. 1-SER-81. Because the Comet AI agent poses significant risks to Amazon's systems, data, and customer relationships, Amazon repeatedly informed Perplexity that it did not have authorization to send its agent into these secure areas. Perplexity persisted,

1

disguising itself as a human user and transmitting sensitive data to Perplexity's servers. It ignored a cease-and-desist letter, twice circumvented technical barriers designed to keep the agent out of the Store's secure areas, and even continued its intrusions for months after being served with the complaint in this case. On that record, the district court did not err—let alone abuse its discretion—by halting Perplexity's ongoing trespass and protecting Amazon's ability to safely and reliably administer its private computer systems while this case is litigated. *See hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196-97 (9th Cir. 2022) (CFAA provides a civil remedy against "electronic trespassers" for "unauthorized access" to "password-protected sites"); *see, e.g.*, *Facebook, Inc. v. Power Ventures, Inc.*, 749 F. App'x 557, 558 (9th Cir. 2019) (affirming injunction for CFAA and CDAFA violations).[1]

Perplexity tries to undermine the district court's narrow injunction by misstating its factual findings and rulings. For example, Perplexity says it is "undisputed" that its Comet AI agent does not "gain[] entry to Amazon's computer systems." OB24. That is incorrect. Both Perplexity's Chief Technology Officer and its counsel *admitted* that the Comet AI agent sends password-protected information from Amazon's servers to Perplexity's, and so the district court made

---

[1] Unless otherwise noted, case quotations omit all internal quotation marks, citations, and previous alterations.

2

the same factual finding. *See* 1-ER-4; 2-ER-77; 4-ER-609 ¶ 15. Similarly, Perplexity relies on the purportedly "undisputed" fact that the Comet AI agent runs on an individual user's computer, thus supposedly absolving Perplexity from the agent's actions. OB8. But the agent actually requires real-time operating instructions from Perplexity, and stops operating altogether if not connected to Perplexity's servers. 2-ER-279 ¶ 13; 4-ER-610 ¶ 19. The district court thus correctly found the relevant actions to be those of "Perplexity, through its Comet AI browser." 1-ER-4. Perplexity further distorts the record by accusing the district court of hastily issuing a "thinly reasoned order." OB1. Perplexity ignores the 141-page hearing transcript, which the court stated its "relatively brief" order would incorporate, 2-ER-149—despite Perplexity repeatedly relying on that transcript as embodying the court's reasoning, *e.g.*, OB36, 42-43, 46-47.

Perplexity's legal arguments offer no more fidelity. With respect to the CFAA, this Court has already rejected each of Perplexity's theories. Because the injunction here, like the holding of *Power Ventures*, bars only an outside trespasser from accessing private information stored behind technical barriers, it does not implicate Perplexity's professed concerns about access to public information or overregulating computer-use policies. *See hiQ*, 31 F.4th at 1201 (explaining that these concerns do not apply "when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password

3

requirements, to gain access to a computer"). Perplexity's claim that Amazon cannot prohibit it from entering the password-protected areas of the Amazon Store so long as Perplexity has "authorization" from some Amazon users is exactly the theory rejected in *Power Ventures*, 844 F.3d at 1068. And the losses Amazon sustained in addressing Perplexity's unauthorized intrusions are the same as those found sufficient in *Power Ventures*, which remains sound and binding. *Id.* at 1066.

Perplexity's repeated claim that the district court "collapsed" the other preliminary injunction factors, OB3, 14, 18, 42, is—again—unfaithful to the record. The district court expressly gave each factor separate consideration. 1-ER-4-6. That it was able to do so concisely resulted from Perplexity's failure to offer meaningful arguments disputing those factors. Nor has Perplexity done so now. For example, Perplexity cannot explain how the harms from its persistent, continued intrusion into Amazon's password-protected areas could be compensated with money damages, and it has not cited a single case holding that it could. *Cf. Facebook, Inc. v. Power Ventures, Inc.*, 252 F. Supp. 3d 767, 782 (N.D. Cal. 2017) (*Power Ventures II*) ("Numerous courts have found that unauthorized access of computers and the acquisition of data in violation of the CFAA constitute irreparable harm."), *aff'd*, 749 F. App'x 557.

Moreover, Perplexity has no basis at all to dispute that it violates the CDAFA, which is materially broader than the CFAA, and which independently establishes

4

Amazon's likelihood of success on the merits, regardless of the federal statute. Perplexity chose not to offer arguments about the state statute below, and its belated efforts to do so now are as erroneous as they are waived.

Perplexity's arguments on the two remaining factors for injunctive relief substitute rhetoric for facts. Perplexity invokes innovation and competition, but there is no evidence that the Comet AI agent has any technological capabilities that similar AI agents lack, and being enjoined from illegally using those capabilities inside the password-protected areas of the Amazon Store is neither a cognizable hardship nor against the public interest. *See Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 867 (9th Cir. 2017) ("[H]arm caused by illegal conduct does not merit significant equitable protection."). Perplexity also cites no evidence—much less a factual finding—substantiating the hobgoblin of nefarious "business interests" conspiring to "promote its own rival AI tool." OB1, 4. Instead, Amazon's "business interest" is the commonplace desire to keep a trespasser outside the non-public portions of its Store, thus protecting its reputation, customers, and data. Because courts have enjoined such intrusions for as long as there have been trespass laws, Perplexity cannot demand that its illegal incursions continue while this case is litigated.

## STATEMENT OF JURISDICTION

Amazon accepts Perplexity's jurisdictional statement. *See* Circuit Rule 28-

2.2.

## STATEMENT OF ISSUES

1.     Whether the district court abused its discretion by enjoining Perplexity from accessing the password-protected areas of the Amazon Store without Amazon's authorization during the pendency of this case.

2.     Whether the district court abused its discretion in denying Perplexity's request for a one-billion-dollar bond.

## STATEMENT OF THE CASE

### A. Legal Background

Congress enacted the CFAA to address, among other issues, "trespassing into computer systems or data." *United States v. Valle*, 807 F.3d 508, 525 (2d Cir. 2015); *see also Abu v. Dickson*, 107 F.4th 508, 514 (6th Cir. 2024) (CFAA prohibits "digital trespassing"). The CFAA creates a civil remedy against anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). The civil remedy requires showing a "loss . . . aggregating at least $5,000 in value." *Id.* § 1030(g), (c)(4)(A)(i)(I).

The CDAFA reflects the California Legislature's intent "to expand the degree of protection afforded to . . . businesses . . . from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems"

6

because "protection of the integrity of all types and forms of lawfully created computers, computer systems, and computer data is vital to the protection of the privacy of individuals as well as to the well-being of financial institutions, business concerns, governmental agencies, and others." Cal. Penal Code § 502(a). CDAFA section 502(c)(7) makes it a public offense to "[k]nowingly and without permission access[] or cause[] to be accessed any computer, computer system, or computer network."

## B. Factual Background

### 1. The Amazon Store

Amazon operates the Amazon Store, an online retail service. 3-ER-572 ¶¶ 3-4. Customers who wish to do more than browse the Amazon Store's public pages create private accounts secured with unique login credentials. *Id.* ¶ 5. Once logged in, customers can manage orders, store payment information and delivery addresses, receive personalized recommendations, track purchases, and process returns within their password-protected accounts. *Id.* Private data within these password-protected accounts include customers' account details, shopping history, billing information, and other personal and financial data. 3-ER-568-69 ¶ 24. Amazon invests heavily in security measures to protect its customers' private data and the trust that underpins its business. 3-ER-564 ¶ 3.

### 2. Perplexity's Comet AI Agent

Perplexity is an AI company that operates, among other things, a web browser called Comet. Comet includes an agentic AI feature that can—as described by Perplexity—"actively conduct[] entire browsing sessions" and "execute[] complete workflows," independently performing complex tasks with minimal human input. 1-SER-157. As Perplexity's Chief Technology Officer explained, when instructed to shop in the Amazon Store, the Comet AI agent "behaves like an efficient human shopper" and "automates clicks within Amazon's user interface," including Amazon's "secure web pages." 3-ER-524-25 ¶¶ 16, 20.[2] To perform actions in the Amazon Store, the agent captures "a JPEG screenshot or HTML snapshot of the webpage currently displayed on the user's device." 4-ER-609 ¶ 15.

The Comet AI agent transmits that information from the customer's password-protected account to Perplexity's servers. *Id.* The agent also sends "the full history of every web page visited using the Comet browser . . . regardless of the webpage in the current tab and the user's request." 2-ER-284 ¶¶ 20-21.

The Comet AI agent "communicates with Perplexity's servers . . . to process

---

[2] If the user is not already logged into the Amazon Store, the Comet AI agent will prompt the user to log in. 3-ER-565 ¶ 10. But Perplexity's claim that the agent "cannot log into a user's Amazon account by itself," OB9, is misleading. The agent uses stored authentication cookies to access users' password-protected Amazon accounts without any user action. *See* 2-ER-272-78 ¶¶ 9-12.

natural language instructions and determine appropriate actions." 3-ER-525 ¶ 19. Because of this, the Comet AI agent "is fully dependent on Perplexity's servers to operate." 2-ER-279 ¶ 13. "[W]hen network access to Perplexity's servers is blocked, the Comet AI [agent] spins and is unable to perform any actions," like a puppet with its strings cut. *Id.*[3]

Perplexity configured the Comet AI agent to conceal its identity by creating the false impression that it is a human user using a conventional browser. 3-ER-566 ¶¶ 11-12. When the Comet AI agent accesses Amazon, it transmits the same "user-agent" string—standard information sent by browsers to identify themselves to third-party websites—used by Google's Chrome browser, thereby making it indistinguishable from a human customer browsing on Chrome. *Id.* Other browsers with AI capabilities add identifying information to their user-agent strings so that websites can distinguish human browsing from AI activity. *Id.* ¶ 13. Perplexity refuses to do so. *Id.* ¶¶ 11-13.[4]

---

[3] Perplexity selectively excerpts the declaration of a computer security expert to assert that "[i]t is undisputed that Comet runs locally on the user's machine." OB8. But the full quote states: "Components of the Comet AI Assistant run on the user's machine within the Comet browser and *other components run on servers operated by Perplexity* as well as servers operated by third-party model providers." 2-ER-269-70 ¶ 4 (emphasis added). The district court thus rejected Perplexity's claim that "Comet's some kind of free agent that has nothing to do with Perplexity." 2-ER-97.

[4] Perplexity's comparison to other agentic browsers that use the Chrome user-agent string, OB11, is misleading because those browsers *add* information to identify themselves as AI agents rather than humans. For example, Edge appends

The Comet AI agent is also particularly vulnerable to data security risks. Multiple cybersecurity researchers have demonstrated that the Comet browser is vulnerable to attacks that can hijack the Comet AI agent and steal users' private data. 3-ER-556-60 ¶¶ 5-11. For example, in one proof-of-concept attack that researchers call "CometJacking," a malicious instruction hidden in a social media site could commandeer the Comet AI agent to take over the user's email account. *Id.* ¶ 8. Although the researcher brought this specific vulnerability to Perplexity's attention, allowing Perplexity to patch it, the overall security risk it exemplifies is inherent to the Comet AI agent's design, which does not follow recognized security principles. 2-ER-286-92 ¶¶ 23-31.

### 3. Amazon Denies Authorization for the Comet AI Agent to Enter the Amazon Store

Amazon first informed Perplexity that its agentic AI products were not authorized in the secure areas of the Amazon Store in a direct conversation with Perplexity's CEO. 2-SER-301 ¶ 3. When Perplexity later released Comet, it nonetheless deployed the Comet AI agent into password-protected Amazon customer accounts. 3-ER-565-66 ¶ 10. Since then, Amazon has told Perplexity that

---

"Edg/142.0.0.0" to its user-agent string to distinguish itself from Chrome. 2-ER-296 ¶ 43. Perplexity, by contrast, takes measures "to impersonate other browsers and hide the nature of the automated requests it generates," contrary to "reasonable practices for web browser clients and automated tools." 2-ER-295-97 ¶¶ 40-46; 2-ER-270 ¶ 6.

the agent is not authorized to enter those areas through direct conversations with Perplexity's senior management and then a cease-and-desist letter.  2-SER-301 ¶ 4; 3-ER-553 ¶ 3; 3-ER-572-73 ¶ 6; 1-SER-163-66.  After receiving the cease-and-desist letter, Perplexity confirmed that it understood the prohibition, publicly stating that "Amazon . . . [is] demanding we prohibit Comet users from using their AI assistants on Amazon."  3-ER-496.

Perplexity also circumvented technical barriers which Amazon built to keep the Comet AI agent outside the password-protected areas of the Amazon Store.  On August 19, 2025, after weeks of forensic investigation, Amazon engineers successfully "fingerprint[ed]" the agent and blocked its access to the Store.  3-ER-566-67 ¶¶ 15-16.  Almost immediately, Perplexity acknowledged the block online, posting "we're aware of this issue and currently working to resolve it."  3-ER-486 ¶ 5.  Within 24 hours, Perplexity released a new version of Comet that altered the browser's fingerprint to evade Amazon's block and Amazon's barrier stopped working.  3-ER-567 ¶ 17.

After Amazon sought the instant injunction, Perplexity claimed that its first circumvention of the technical barrier was the happenstance result of routine software updates.  1-SER-94-95.  To avoid any doubt on this point, Amazon then deployed a second technical block on the Comet AI agent's access to password-protected areas of the Amazon Store and expressly informed Perplexity's counsel

11

that it had done so. 3-ER-509. Perplexity again circumvented the block. 3-ER-487 ¶¶ 7-8.

### C. Procedural History

On November 4, 2025, Amazon filed its Complaint, asserting violations of the CFAA and the CDAFA. 2-SER-351-53 ¶¶ 64-81. Amazon contemporaneously moved for a preliminary injunction to stop Perplexity's ongoing violations of both statutes, supporting its motion with six declarations. 2-SER-302-34. Perplexity opposed, attaching three declarations of its own. 1-SER-84-115. Amazon replied, filing three rebuttal declarations. 1-SER-57-77. Perplexity filed what amounted to a sur-reply styled as "Objections to Reply Evidence," attaching a further declaration. 1-SER-50-55.

After initially scheduling the hearing on Amazon's motion for January 9, 2026, 1-SER-118, the district court twice continued the hearing, once *sua sponte* and once at Perplexity's request, 1-SER-27, 56. On March 6, 2026, the court held a three-and-a-half-hour hearing on Amazon's motion. 1-ER-8-9. After hearing argument, the court issued a tentative ruling in Amazon's favor and invited Perplexity's counsel to identify any gaps in its reasoning, but Perplexity's counsel did not do so. 2-ER-137-48. The district court further explained that if it adhered to its tentative ruling, it intended to "issue an order that's relatively brief, incorporates by reference what I've said today and possibly has a few highlights."

12

2-ER-149.  Perplexity's counsel did not object to that procedure.  *Id.*

The following Monday, the district court issued an order granting the preliminary injunction.  The order summarized the court's separate findings on each of the four factors governing injunctive relief, expressly incorporating "the entirety of the Court's factual findings and legal conclusions as explained at the hearing."  1-ER-2 & n.1.

*First*, the district court found Amazon would likely succeed on the merits, citing "strong evidence that Perplexity, through its Comet browser, accesses with the Amazon user's permission but without authorization by Amazon, the user's password-protected account."  1-ER-4.  The court explained that Perplexity could not lawfully access Amazon's private, secure webpages without Amazon's authorization under *Power Ventures*.  *Id.*  The court considered the contested definition of loss under the CFAA and found this question "likely to be resolved in Amazon's favor" given the holding of *Power Ventures*.  1-ER-5 n.2.  The court also ruled that Amazon would likely succeed on its independent CDAFA claim, which itself sufficed to grant the injunction.  1-ER-5; 2-ER-138-39.

*Second*, the district court found that "Amazon is likely to suffer irreparable harm in the absence of a preliminary injunction."  1-ER-5.  As the court explained, a trespasser cannot expect to remain on another's property indefinitely, making Perplexity's continued intrusion a paradigmatic example of irreparable harm.  2-ER-

13

40-41.

*Third*, the district court explained that the balance of hardship tips in Amazon's favor because "even if the relief Amazon requests is granted, Comet will retain its ability to access the entirety of the web other than the password-protected sections of Amazon's website" and "'harm caused by illegal conduct does not merit significant equitable protection.'"  1-ER-6 (quoting *Disney*, 869 F.3d at 867).

*Fourth*, the public interest favored "protecting computers from unauthorized access."  1-ER-6-7.  The court acknowledged Perplexity's countervailing claims regarding "consumer choice" and "innovation," but found that "Amazon has made a sufficient showing" on this element.  *Id.* (citing *Power Ventures II*, 252 F. Supp. 3d at 785); *see also* 2-ER-135-36 ("[C]ourts have consistently held in CFAA cases that the public interest [factor] favors an injunction" and the public interest factor "certainly doesn't weigh against" the injunction.).

The district court therefore enjoined the Comet AI agent from accessing the password-protected areas of the Amazon Store.  1-ER-8-9.  The court denied Perplexity's request for a stay pending appeal but granted an administrative stay to allow Perplexity to seek relief from this Court.  *Id.*  A motions panel of this Court stayed the injunction pending this appeal and ordered expedited briefing and argument.  Dkts. 18.1-19.1.

14

## STANDARD OF REVIEW

The grant of a preliminary injunction is reviewed under the "limited and deferential" abuse of discretion standard. *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). This Court asks only whether the district court "identified the correct legal rule to apply to the relief requested," and if so, "whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). Accordingly, this Court "will not second guess whether the court correctly applied the law to the facts of the case, which may be largely undeveloped at the early stages of litigation," *Wildwest Inst. v. Bull*, 472 F.3d 587, 590 (9th Cir. 2006), and thus "[m]ere disagreement with the district court's conclusions is not sufficient reason . . . to reverse the district court's decisions regarding a preliminary injunction," *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 793 (9th Cir. 2005).

## SUMMARY OF ARGUMENT

I.      The district court did not abuse its discretion in issuing the challenged injunction under both the CFAA and the CDAFA.

A.      The district court correctly found that Amazon is likely to succeed on the merits because Perplexity's Comet AI agent engages in the same conduct that

15

this Court found gave rise to civil liability in *Power Ventures*, thereby satisfying each element of the CFAA.

1.  Perplexity "intentionally accesses" the Amazon Store, 18 U.S.C. § 1030(a)(2), because the evidence proved that Perplexity directs the Comet AI agent to enter the Store's password-protected areas.  Perplexity's belated claim that its agent functions like conventional web browsers is contradicted by the evidence, including Perplexity's admissions that the Comet AI agent operates actively and autonomously in ways that distinguish it from those browsers.

2.  Perplexity's access was "without authorization," *id.*, because the authorization Perplexity claims—employing a user's password to access private information on a website, despite the website's denial of authorization—is precisely what this Court found invalid in *Power Ventures*.

3.  Perplexity "obtains . . . information," *id.*, from Amazon's computers because Perplexity transmits data from those computers to its own servers. Perplexity's contention that it can escape liability so long as those transmissions pass through other computers has no support in the text of the CFAA or the decisions applying it—or commonsense, given that *every* internet transmission occurs through networks of connected computers.

4.  The expenses Amazon incurred in "analyzing, investigating, and responding to [Perplexity]'s actions" constitute "a loss within the meaning of the

CFAA." *Power Ventures*, 844 F.3d at 1066. It is incorrect for Perplexity to argue that later decisions overruled *Power Ventures*, but also irrelevant, because Amazon's costs in fixing harms inflicted by the Comet AI agent qualify under any standard.

B. The district court also correctly found that Amazon will likely succeed on its CDAFA claim, which alone establishes likelihood of success on the merits. The district court and Amazon repeatedly explained that the CDAFA differs from the CFAA in ways that defeat Perplexity's arguments, yet Perplexity chose not to address the state statute. In any event, Perplexity's current responses make clear it has no colorable defenses against the CDAFA claim.

C. The district court also did not abuse its discretion in finding the remaining preliminary injunction factors satisfied. Perplexity's claim that the district court applied the wrong legal standard is refuted simply by reading the court's opinion.

1. In the district court, Perplexity declined to contest federal courts' uniform conclusion that continuing digital trespasses constitute irreparable harm. Its forfeited appellate arguments do not disturb that consensus, because Perplexity fails to explain how the harms here could be compensated with money damages. The evidence also demonstrated other uniformly recognized forms of irreparable harm, such as the severe data security risks posed by the Comet AI agent.

2. Perplexity failed to submit evidence that it will suffer meaningful

17

hardship from the district court's injunction, which prohibits only one feature of one of Perplexity's products from operating in one part of one website. And because this narrow injunction is tailored to bar only unlawful conduct, the law does not recognize any resulting encumbrance on Perplexity as a hardship.

3. The public interest does not favor allowing Perplexity's trespasses to continue unabated. Because Perplexity submitted no evidence that the Comet AI agent's shopping feature is unique (or even rare), its cries of innovation and consumer choice ring hollow. And its citation-free attempt to conjure a secret motive to suppress competition cannot show that the district court abused its discretion based on evidence that, unlike Perplexity's empty theory, was before it.

II. Perplexity's unclean hands argument is unmoored from the requirements of that doctrine. But the program on which Perplexity bases that argument—Amazon's "Buy for Me" feature—further illustrates the propriety of the injunction. Unlike the Comet AI agent, Buy for Me operates transparently, respects website owners' access limitations, and never intrudes in password-protected areas. Buy for Me thus demonstrates that it is entirely possible to offer agentic AI shopping without running roughshod over website operators' security measures.

III. The district court did not err in rejecting Perplexity's request for a one-billion-dollar bond. Perplexity submitted no evidence justifying that outlandish figure. The district court also acted well within its discretion to reject Perplexity's

18

last-minute request—made only after months of litigation resulted in an adverse ruling—to offer new briefing supporting some unspecified lesser amount.

## **ARGUMENT**

**I.     The District Court Did Not Abuse Its Discretion in Issuing a Narrow Preliminary Injunction**

### A.     Amazon Is Likely to Succeed on the Merits

The district court correctly recognized that Perplexity's digital trespass into password-protected areas of the Amazon Store violates the CFAA's civil liability provisions.   Perplexity cannot reasonably depict the court's straightforward application of *Power Ventures* as expanding the scope of those statutes on the theory that it was not "breaking and entering," OB21—especially because it twice defeated the technical barriers Amazon erected.   The Comet AI agent enters Amazon's protected systems in exactly the same way as the defendant in this Court's *Power Ventures* decision: through the unauthorized use of someone else's credentials.  *See* 844 F.3d at 1067-68.

Consistent with *Power Ventures*, "hacking" occurs when defendants penetrate "gates" excluding them from private computer systems but does not require defendants to break the gates open.  *hiQ*, 31 F.4th at 1198.   Instead, the CFAA considers "digital trespass" a form of hacking.  *Abu*, 107 F.4th at 514; *see also Valle*, 807 F.3d at 525 (CFAA was enacted to address "'hacking' or trespassing into computer systems or data.").   Thus, when this Court quoted the discussion of

19

"breaking and entering" in the CFAA's legislative history, it also quoted Congress's concern with "the problem of 'hackers' who have been able to access (***trespass into***) both private and public computer systems." *hiQ*, 31 F.4th at 1196 (emphasis added). Whether the trespasser breaks in with a crowbar or sneaks in using someone else's credentials, he remains a trespasser—or as one court analogized, "you open your office door and, to your surprise, find someone already inside. If the person is a stranger with no right to be in the building, they lack authorization." *Abu*, 107 F.4th at 514.

The cases on which Perplexity relies address a different scenario: people who were permitted to enter the relevant part of the computer system, but did so for an improper purpose, such as the police officer who accessed a law enforcement database for personal reasons in *Van Buren v. United States*, 593 U.S. 374 (2021).[5] Those individuals were not "hackers" because they did not enter areas "to which their computer access does not extend." *Id.* at 378. In those circumstances, courts rightly worry about criminalizing "every violation of a computer-use policy." *hiQ*, 31 F.4th at 1201 n.19 (quoting *Van Buren*, 593 U.S. at 394). But those concerns are

---

[5] *See also, e.g.*, *Valle*, 807 F.3d at 525 (also concerning police officer accessing law enforcement database for improper reasons); *Chrisman v. City of Los Angeles*, 155 Cal. App. 4th 29 (2007) (CDAFA case concerning police officer accessing law enforcement database for improper reasons); *hiQ*, 31 F.4th at 1187 (scraping publicly available LinkedIn profiles that LinkedIn did not grant permission to be scraped).

absent "when a person circumvents a computer's generally applicable rules regarding access permissions, such as username and password requirements." *Id.* at 1201.[6] The district court reasonably found that Perplexity's Comet AI agent does exactly that under *Power Ventures.* Because the CFAA and CDAFA have always barred such digital trespasses, and trespasses have always violated both civil and criminal law, "concerns about overreaching or an absence of culpable intent simply do not apply." *Power Ventures*, 844 F.3d at 1069.

### 1. Perplexity Violates the CFAA

The district court's explanation that the evidence likely satisfied each element of the CFAA was correct, and certainly far from "illogical, implausible, or without support in inferences that may be drawn from the record." *Hinkson*, 585 F.3d at 1262.

### (a) Perplexity Intentionally Accesses Amazon's Computers

Perplexity intentionally accesses the Amazon Store because, as Perplexity admits, the Comet AI agent "navigat[es] purposefully through the site," and "communicates with Perplexity's servers . . . [to] determine appropriate actions." 4-

---

[6] This Court limited the CFAA to password-protected areas (and their equivalents) citing the rule of lenity, to avoid the over-criminalization concerns Perplexity now raises. *See hiQ*, 31 F.4th at 1200-01. Perplexity has thus wisely abandoned any rule of lenity argument. *See, e.g.*, *Smith v. City of Santa Clara*, 876 F.3d 987, 995 (9th Cir. 2017) (arguments not raised in opening brief are abandoned).

ER-609-10 ¶¶ 16, 19. The district court's conclusion that this constitutes intentional access by Perplexity is obviously correct. *See* OB23 (acknowledging that "'access' references the act of entering a computer system itself" (quoting *Van Buren*, 593 U.S. at 388)).

Perplexity does not (because it cannot) really dispute that this constitutes access, instead contending that "the district court erred by ascribing actions taken by software"—that is, the Comet AI agent—"to Perplexity." OB24. But the district court had ample evidence that the agent's actions should be ascribed to Perplexity, because Perplexity boasts that the software it created and operates—and not the user—"navigates purposefully through" the Amazon Store, "automates clicks within Amazon's user interface," including on "secure web pages," uses "its [a]gentic capability . . . to find information and act on it intelligently and autonomously," and otherwise "behaves like an efficient human shopper." 1-ER-4 (quoting 4-ER-609 ¶ 16); 3-ER-524 ¶ 16; 3-ER-525 ¶ 20; 1-SER-81. Given that Perplexity admits that the software it created and controls takes the relevant actions, "handling routine tasks so the user can focus on decisions that actually require his or her attention," 3-ER-512 ¶ 6, the district court hardly abused its discretion by agreeing.

Nor is there anything "novel," OB25, about attributing the actions of Perplexity's software to Perplexity. In *Power Ventures*, when a Facebook user clicked a button on Power's platform, that user's action, from the user's computer,

22

generated "an event, photo, or status on the user's Facebook profile" and sent messages to the users' friends inviting them to join Power's site. 844 F.3d at 1063. This Court held that Power "accessed Facebook's computers" within the meaning of the CFAA. 844 F.3d at 1067-68. Given that this Court ascribed Power's automation of a relatively ministerial, user-directed task to Power, the district court reasonably did the same for Perplexity's execution of all the tasks of "an efficient human shopper," 3-ER-524; 2-ER-81-82.

Perplexity protests that the Comet AI agent lacks its own "intent." OB25. The district court saw through this distraction, rejecting Perplexity's efforts to distance itself from its product. 2-ER-81 ("Comet [acts] on behalf of Perplexity because Comet is just a thing."). That makes sense, given that the agent does not act "autonomously" in any philosophical sense; it merely acts autonomously *from the user*, because it is instead controlled *by Perplexity* through instructions from Perplexity's servers. *See* 2-ER-78-79 (Perplexity's counsel explaining that Perplexity provides the "reasoning layer" directing the Comet AI agent's actions); 2-ER-279 ¶ 13 (agent ceases to function when not in communication with Perplexity); 4-ER-610 ¶ 19 (agent depends on Perplexity for instructions).

Perplexity's control of the Comet AI agent also distinguishes it from conventional browsers. In the district court, Perplexity submitted no evidence that the agent operates similarly to a web browser like Safari, and so its belated claim

23

here cites no supporting evidence. *See* OB24-25. Instead, the evidence demonstrated that the Comet AI agent fundamentally differs from those conventional browsers. According to Perplexity, unlike regular browsers "passively displaying whatever content websites throw at a person," "[w]hat sets Comet apart is its agentic capabilities, the ability to find information and act on it intelligently and autonomously." 4-ER-596 ¶ 6; 1-SER-81. As Perplexity says, the agent can "actively conduct[] entire browsing sessions." 1-SER-157. Because Perplexity has admitted—and even bragged—that "agentic capabilities" distinguish its product from Safari, it cannot now argue that "[t]here is no reason to treat the [agent] differently." OB25.

The district court relied on Perplexity's active control of its Comet AI agent in distinguishing *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022). *See* 2-ER-79-87, 2-ER-103-07, 2-ER-121-23. *BrandTotal* concerned "reactive" data collection in which users accumulated data from Facebook on their computers "through their normal use of the website," and the defendant's browser extension then transmitted some of that data from the users' computers to itself. 605 F. Supp. 3d at 1260. *BrandTotal* differentiated such passive collection from "proactively 'accessing' or 'communicating with' Meta's servers." *Id.* Because Perplexity directs the Comet AI agent to actively navigate Amazon's password-protected webpages and initiate transactions, *BrandTotal* reinforces both

24

the correctness of the district court's analysis and that enjoining Perplexity's trespass—based largely on distinctions Perplexity itself admitted—does not "transform the CFAA from an anti-hacking statute into an expansive misappropriation statute." OB26 (quoting *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012)).

Finally, Perplexity's assertion "that the only 'access' is from the user's own device" makes no sense. OB25. Of course, Perplexity's servers access Amazon's servers through users' computers, just as Power accessed Facebook through users' computers in *Power Ventures*. The internet goes by that name because it is an "international network of interconnected computers" in which communications travel through multiple computers before reaching their destination. *Reno v. ACLU*, 521 U.S. 844, 849 (1997); *United States v. Lewis*, 554 F.3d 208, 210 (1st Cir. 2009) (internet transmissions "take[] a stepping-stone path through the network of connected computers"). For that reason, Perplexity cites neither statutory text nor case law supporting its "direct access" argument. OB26. Because Perplexity's servers instruct its Comet AI agent to purposefully navigate the Amazon Store through a user's computer, it can no more disclaim access than an arsonist could say, "I didn't send that mail bomb, the postman did."

(b)     Perplexity's Access Is Without Authorization

The district court correctly found that the Comet AI agent's intrusions into the

25

Amazon Store's password-protected areas are "without authorization" under *Power Ventures*. 1-ER-4; 2-ER-91-93. In *Power Ventures*, Facebook users voluntarily gave Power access to their password-protected Facebook accounts. 844 F.3d at 1063. Power used that access to obtain data—the users' contacts—from Facebook. *Id.* Facebook sent Power a cease-and-desist letter and erected technical barriers to its access. *Id.* Power continued accessing Facebook anyway. *Id.* This Court rejected Power's claim that its access was authorized, holding that "the consent that Power had received from Facebook users was not sufficient to grant continuing authorization to access Facebook's computers after Facebook's express revocation of permission." *Id.* at 1068. The parallel here is exact. Certain Amazon users voluntarily activate the Comet AI agent, but Amazon revoked Perplexity's authorization to access the password-protected areas of the Amazon Store. As this Court analogized, even if the owner of a safe deposit box gives a friend the key, the friend still needs the bank's permission to enter the bank's premises. *Id.*[7]

Because *Power Ventures* resolves this case against it, Perplexity offers increasingly strained efforts to distinguish it. None has merit.

---

[7] In the Court's analogy it imagined a particularly colorful reason that the bank revoked the friend's permission to enter: he "decide[d] to visit the bank while carrying a shotgun." 844 F.3d at 1068. Perplexity's conduct may not be as visually alarming, but the principle that property owners may eject trespassers remains the same.

*First*, Perplexity claims that it did not intentionally evade Amazon's technical blocks. OB33. But the evidence indicates that it did exactly that. *Supra* 14-15. Moreover, Perplexity was plainly on notice of those blocks before the hearing, given that it denied intentionally circumventing them in its first district court filing, 1-SER-94-95, yet continued to disregard the barriers nonetheless. In any event, the dispositive fact in *Power Ventures* was that the defendant had received a cease-and-desist letter. 844 F.3d at 1068 ("Permission from the users alone was not sufficient to constitute authorization after Facebook issued the cease and desist letter."). Because Perplexity also received and understood such a letter, its efforts to suggest doubt about whether it was on notice only highlight the weakness of its case.

*Second*, Perplexity's discussion of public and private information, OB27-29, blends distraction and error. It is settled law that the CFAA does not apply to publicly available information, but here that is a red herring. OB29 (citing *hiQ Labs*, 31 F.4th at 1197). The district court expressly limited its injunction to preventing the Comet AI agent from accessing non-public, password-protected areas of the Amazon Store, which is the only relief Amazon sought. *See, e.g.*, 1-ER-6 ("Comet will retain its ability to access the entirety of the web other than the password-protected sections of Amazon's website.").[8] Perplexity errs in suggesting that the

---

[8] Perplexity's amici elaborate on concerns about extending the CFAA to public information. *See* Dkts. 30 at 15; 31 at 17, 19. Because the injunction here follows

information at issue here is not private. Because the injunction covers only information that requires a password to access, it is "private information—information delineated as private through use of a permission requirement of some sort." *hiQ*, 31 F.4th at 1197; *id.* at 1199 (explaining that the information in *Power Ventures* was protected, private information because it required users' passwords to access).

*Third*, Perplexity also cannot distinguish *Power Ventures* as concerning "third-party" information. OB3, 30. That case used "third party" to explain that "technological gamesmanship or the enlisting of a third party to aid in access will not excuse liability." 844 F.3d at 1067. That is, in *Power Ventures* as here, accessing private areas of the site through the credentials and computer of a user—a "third party"—did not make that access authorized; it was merely "technological gamesmanship." *Id.* By contrast, Perplexity uses "third party" not to mean users, but rather someone listed in the users' contacts list, even though *Power Ventures* neither employs the term that way nor attaches any significance to those contacts. Perplexity also cannot retroactively insert its third-party theory into *Power Ventures* by misquoting *hiQ* to imply that access becomes "unauthorized" only when "a third party's 'expectation of privacy' is at issue." OB28 (quoting 31 F.4th at 1190, 1198).

---

the undisputed rule that the CFAA does not restrict access to public content, their concerns are simply not implicated by this case.

The passage Perplexity quotes appeared in a discussion of the equities, because LinkedIn claimed as hardship threats to "its members' privacy." 31 F.4th at 1189. The Court's analysis had nothing to do with authorization under the CFAA, and in any event concerned *users'* privacy—not "third parties" as Perplexity wishes to redefine the phrase. *See id.* at 1190.

Perplexity's attempt to manufacture a "third-party privacy" element also lacks support in the statutory text, which covers all "information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). That is why this Court analogized to safe deposit boxes, where the box's contents unquestionably belong to the box's owner and thus implicate only her privacy interests, yet a bank can nonetheless prevent the owner from sending her friend to access the box. *See Power Ventures*, 844 F.3d at 1068. Once again, *hiQ* explains that authorization under the CFAA does not turn on what the information is, or who it belongs to, but rather whether it is protected by an access limitation, such as the password "gates" at issue here and in *Power Ventures*. *hiQ*, 31 F.4th at 1195-99.[9]

---

[9] Perplexity's assertion that "[t]he district court made no finding regarding the nature of the information at issue here," OB33, is thus irrelevant. But it is also wrong. The district court correctly recognized that the nature of the information here shows that Amazon has a reasonable interest in protecting it. *See, e.g.*, 2-ER-104 (Perplexity is "getting . . . information about the user's buying habits" from the "password protected part" of Amazon's website); 2-ER-105 (noting that Perplexity also obtains Amazon customers' payment information).

*Fourth*, Perplexity gets the law backwards in claiming that *Power Ventures* turned on Power's improper purpose, which Perplexity characterizes as "spam[ming]" Facebook users. OB30-32. Courts, including this Court, have rejected the notion that authorization under the CFAA depends on whether the defendant accessed information for an improper purpose. *See, e.g.*, *Van Buren*, 593 U.S. at 378, 390-92 (rejecting argument that access is unauthorized where defendants have "improper motives for obtaining information that is otherwise available to them"); *Nosal*, 676 F.3d at 857 (employees' improper purpose did not render their access to their employers' computers unauthorized). Courts rejected purpose-based limits in part because they created the same concerns about the CFAA's breadth and clarity that Perplexity now invokes. *See hiQ*, 31 F.4th at 1198. By contrast, the clear, simple limitation of confining the CFAA to non-public areas delineated by technical access restrictions addresses those concerns while vindicating the CFAA's prohibition on digital trespassing, as evinced by *Power Ventures* and explained by *hiQ*. *Id.* Because Perplexity clearly transgressed that limitation, the district court neither erred nor expanded the statute in finding the unauthorized access element is likely met.

  (c) <u>Perplexity Obtains Information from Amazon's Computers</u>

Perplexity obtains information from Amazon's computers because, as the district court found, the Comet AI agent transmits data from Amazon's secure pages

to Perplexity's servers. 1-ER-4. Perplexity denies this data comes "from" Amazon's computers because the agent requests, views, and transmits that information through users' computers, OB34-35, but this just repeats its meritless "direct access" argument, *see supra* I.A.1(a). This Court has already rejected such "technological gamesmanship." *Power Ventures*, 844 F.3d at 1067. It is also textually meritless: Perplexity "obtains information . . . from any protected computer," 18 U.S.C. § 1030(a)(2), just as the United States obtains coffee "from" Colombia regardless whether the coffee passes through Mexico or across an ocean. That is why even Perplexity's counsel could not help admitting that the "Comet Assistant receives this information from Amazon." 2-ER-77.[10]

(d)    <u>Amazon Meets the Loss Requirement</u>

The district court correctly found that the CFAA's loss element "is likely to be resolved in Amazon's favor." 1-ER-4-5 n.2. As it explained, Amazon "submitted essentially undisputed evidence that it has expended significantly more than $5,000 in responding" to Perplexity's intrusions, 1-ER-4, such as by "developing tools to

---

[10] If Perplexity means to suggest there is anything exculpatory about it obtaining information by viewing screenshots of Amazon pages, *see* OB34, the district court correctly understood that Perplexity, like any person, obtains information by "seeing things." 2-ER-138; *see United States v. Steele*, 595 F. App'x 208, 214 (4th Cir. 2014) (obtaining information "requires *only* that the defendant read or observe data"); *United States v. Nosal*, 930 F. Supp. 2d 1051, 1062 (N.D. Cal. 2013) ("[T]he term 'obtaining information' includes merely reading it.").

31

block Comet's access to its private customer accounts and detect[] future unauthorized access by Comet." *Id.* Those expenditures also included investigating the Comet AI agent's activities in the Amazon Store and fixing the Store's advertising systems so as not to charge for non-human traffic generated by the agent. 3-ER-566-68 ¶¶ 12-23. This Court has held that such expenditures satisfy the CFAA's loss requirement. *Power Ventures*, 844 F.3d at 1066 ("Facebook employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to Power's actions. Accordingly, Facebook suffered a loss under the CFAA.").

Perplexity argues that certain language in *Van Buren* and *hiQ* disqualifies these losses under the CFAA, OB35-37, but the district court explained that neither decision concerned the CFAA's loss element and did not overrule this Court's holding in *Power Ventures*. 2-ER-109-11. That analysis was correct. As noted above, *Van Buren* concerned the unauthorized access element. 593 U.S. at 378. Among the reasons the Court gave for excluding misuse of otherwise authorized access was that the CFAA's "damage" and "loss" definitions "*focus on* technological harms—*such as* the corruption of files—of the type unauthorized users cause to computer systems and data." *Id.* at 391-92 (emphasis added). Such a *focus* does not, however, imply exclusion of other costs. The CFAA's broad language covers Amazon's costs, even if it focuses on enumerating categories such as loss of data:

32

> [T]he term **"loss" means any reasonable cost to any victim, including the cost of responding to an offense**, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

18 U.S.C. § 1030(e)(11) (emphasis added).  Neither the statutory language nor *Van Buren* limit qualifying losses to categories "such as the corruption of files."  *Van Buren*, 593 U.S. at 391.  The Tenth Circuit has thus recognized that *Van Buren*, "didn't say, in dicta or otherwise, that the damages available when an individual *does* violate the CFAA are limited to technological harms."  *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1201 (10th Cir. 2026).

Perplexity's reliance on language in *hiQ* offers even less support for its position.  In discussing unauthorized access, *hiQ* included a footnote stating that *Van Buren* "requires a showing" of "technological harms."  *Id.* at 1195 n.12.  Because that footnote did not grapple with *Power Ventures* or the CFAA's text, it could not have intended to silently overrule *Power Ventures*' express and binding holding on this point.  *See Close v. Sotheby's Inc.*, 894 F.3d 1061, 1073-74 (9th Cir. 2018) ("So long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so."); *see, e.g.*, *BrandTotal*, 605 F. Supp. 3d at 1265 ("The Court declines to construe *Van Buren* and *hiQ* as foreclosing a loss based on Facebook's investigative costs.").

The only two appellate courts to have reached this question have held that

33

investigative and remediation costs remain cognizable losses under the CFAA after *Van Buren*. *See Moxie*, 164 F.4th at 1201; *United States v. Umeti*, 167 F.4th 687, 698 (4th Cir. 2026). Perplexity's reading of *Moxie* as excluding the damages incurred by Amazon is plainly incorrect. There, the Tenth Circuit drew a line between costs "reasonably necessary to *respond* to [a CFAA] offense, for example by identifying the perpetrator or the method by which the offender accessed the protected information"—which qualify—and downstream "business harms, such as the costs of investigating how a competitor used protected information obtained as a result of the CFAA violation"—which do not. *Moxie*, 164 F.4th at 1201. The expenses Amazon incurred to identify and prevent the Comet AI agent's activities in the Amazon Store and to detect and filter out its traffic from automated advertising systems fall well on the covered side of *Moxie*'s line. *See, e.g.*, 3-ER-566 ¶¶ 15-16 (Amazon engineers "conduct[ed] a forensic analysis of network traffic and browser data to create a digital fingerprint identifying the Comet AI agent" to "block network traffic associated with the . . . agent").

Perplexity cannot categorize these expenses as "business harm" on the theory that they "result[] from Amazon's own business model." OB38. The losses inflicted on Amazon's "business model" reinforce the technological nature of the losses here. Amazon has invested in automated systems that perform functions such as charging advertisers based on the number of humans that see their advertising and blocking

34

users who engage in suspicious activity. The Comet AI agent circumvents Amazon's technical barriers and causes those systems to malfunction, necessitating repairs to restore Amazon's systems to their pre-intrusion state. The resulting costs satisfy the CFAA not only under *Power Ventures* and *Moxie*, but also constitute "technological harm" because they are harms "of the type unauthorized users cause to computer systems and data," and "relate[] to costs caused by harm to computer . . . systems." *Van Buren*, 593 U.S. at 391-92.

### B. Perplexity Violated the CDAFA

The district court correctly found Amazon likely to succeed on its CDAFA claim under section 502(c)(7). 1-ER-5. Because all Perplexity's arguments concerning the CDAFA presume that its CFAA arguments will prevail, *see* OB39-41, this Court can reject Perplexity's assertions about the CDAFA simply because the district court's CFAA ruling was correct, and certainly not an abuse of discretion. Perplexity's contentions about the CDAFA also fail on their own terms.

#### 1. Perplexity's Arguments About the CDAFA's Scope Are Waived and Meritless

Before the district court, Perplexity submitted only two sentences of argument about the CDAFA, claiming that "CDAFA claims generally rise or fall with . . . CFAA claims because the necessary elements of Section 502 do not differ materially from the necessary elements of the CFAA, except in terms of damages." 1-SER-

35

108.[11]  In reply, Amazon pointed out this was obviously wrong, given that this Court

has "refus[ed] to 'interpret the state statute consistent with the federal statute'

because the 'statutes are different.'"  1-SER-67 (quoting *United States v.*

*Christensen*, 828 F.3d 763, 789 (9th Cir. 2015)).  Perplexity never disagreed.  It filed

multiple further briefs, but never again mentioned the CDAFA.  1-SER-12-13, 28-

39, 50-55.  It also never engaged with the statute at the hearing, even after the district

court explained that the CDAFA is "a little bit broader" than the CFAA, and both

the court and Amazon identified ways in which that breadth defeated Perplexity's

CFAA arguments.  2-ER-123-24, 138, 140.[12]

Perplexity's decision not to offer argument about the CDAFA's application—

other than the clearly erroneous assertion that it mirrors the CFAA—waived its

ability to offer such arguments now.  *See, e.g.*, *Smith v. Marsh*, 194 F.3d 1045, 1052

(9th Cir. 1999).  And even if Perplexity's concession does not rise to the level of

---

[11] Perplexity relied on *BrandTotal* for this proposition, but there the parties "agree[d] that" the CFAA and CDAFA claims were "coextensive for the purpose of the present motions."  605 F. Supp. 3d at 1260.

[12] That clear statement by the district court belies Perplexity's inexplicable claim that "the district court did not rely on any purported distinctions between the statutes."  OB39 n.7.  The district court expressly relied on "distinctions between the statutes" at the hearing and in its order.  *E.g.*, 1-ER-4 n.3; 2-ER-138–140.  Because the district court explicitly analyzed the CDAFA and applied it to the facts of the case, Perplexity's assertion that this Court should not "reach out to decide unsettled state-law issues the district court did not reach itself," OB39 n.7, makes no sense.

36

intentional waiver, its failure to develop independent CDAFA arguments at least forfeited them, allowing review only for plain error. *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019). Given the district court's well-reasoned CDAFA rulings, Perplexity comes nowhere near meeting that demanding standard. *See id.*

Whatever the standard of review, the CDAFA is broader than the CFAA on every element Perplexity disputes.

*First*, the CDAFA defines "access" to include "to cause input to," "cause output from," or "communicate with" a computer system. Cal. Penal Code § 502(b)(1). Perplexity admits that it "automates clicks within Amazon's user interface," "navigating purposefully" through "Amazon's secure web pages." 3-ER-524-25 ¶¶ 16-20. Thus, even if Perplexity's theory that it does not "directly" access the Amazon Store had merit under the CFAA, it indisputably "cause[s] input to" and "output from," and "communicates with" Amazon's computer systems under the CDAFA. 2-ER-123.

*Second*, the CDAFA prohibits "[k]nowingly and without permission access[ing] or caus[ing] to be accessed any computer, computer system, or computer network." Cal. Penal Code § 502(c)(7). Perplexity knowingly accesses Amazon's systems, and Amazon has repeatedly denied permission. Its claims that users "authorized" its access would thus fail under the CDAFA, even if *Power Ventures*

37

had not already rejected them under that statute and the CFAA. *See Christensen*, 828 F.3d at 789 (explaining CDAFA's lack of authorization element).

*Third*, Section 502(c)(7)—the provision the district court cited—does not require that the defendant "obtain" information. It merely prohibits knowing, unpermitted access, such as Perplexity's ongoing intrusion into private Amazon pages. *See* 1-ER-5 & n.3; 2-ER-138-39.

*Fourth*, the CDAFA has no "technological harm" limitation. *See* Cal. Penal Code § 502(e)(1). Perplexity conceded as much below. 1-SER-108. The district court therefore recognized that the CDAFA claim renders irrelevant Perplexity's arguments about the language in *Van Buren* and *hiQ* on this point. 1-ER-5 n.3.

*Finally*, Perplexity's arguments about "paradigmatic applications" of the CDAFA, OB22, do not exculpate Perplexity's paradigmatic digital trespass. Its claim that "[n]o California court has applied the CDAFA to circumstances remotely resembling the present dispute," OB39 n.7, ignores that *this Court* has done exactly that. *See Power Ventures*, 844 F.3d at 1068. And the California cases on which Perplexity relies draw the same line discussed above, making clear that the CDAFA (like the CFAA) does not apply to those who are permitted to access the computer in question, regardless whether they did so for unauthorized purposes. *See Teran v. Super. Ct.*, 334 Cal. Rptr. 3d 299, 310-11 (2025) (employee did not violate CDAFA in disclosing records from employer's computer), *Chrisman*, 155 Cal. App. 4th at

38

29 (police officer did not violate CDAFA by accessing police database for personal reasons). Because Perplexity's conduct clearly falls on the wrong side of that clear line, it violated the CDAFA.

> 2. Perplexity's Supplemental Jurisdiction Argument Is Waived and Meritless

Perplexity argues, for the first time on appeal, that the district court is "likely to relinquish supplemental jurisdiction" over the state-law claim if the CFAA claim is dismissed. OB40. This argument is doubly waived, both under the general principles discussed above and under the specific rule that a party "waive[s] her objection to the district court's discretionary exercise of supplemental jurisdiction by failing to raise it in the district court." *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1171 (9th Cir. 2001).

The argument also fails on its merits. Section 1367(c)(3) permits district courts to decline supplemental jurisdiction to avoid "needless decisions of state law" when the federal claim on which jurisdiction rests "proves to be unfounded." *Trs. of the Constr. Indus. v. Desert Valley Landscape*, 333 F.3d 923, 925-26 (9th Cir. 2003). That is why "cases upholding the exercise of discretion" to dismiss state law claims "under § 1367(c)(3) have all involved dismissals for failure to state a claim or a grant of summary judgment to the defendant on the federal claim." *Id.* at 926. Every case Perplexity cites on this point thus involved federal claims that had been dismissed or deemed patently meritless. *See* OB39-40. But here, "[f]ar from

39

determining that the federal claim was unfounded," the district court's CFAA ruling "represents its determination that the federal claim was well-founded." *Desert Valley*, 333 F.3d at 926. "As the federal claim here was not dismissed," dismissing the CDAFA would "not [have been] authorized by § 1367(c)(3)." *Id*.

* * *

Because Perplexity has done nothing to unsettle the district court's finding that it likely violated the CDAFA, Amazon has established a likelihood of success on the merits without even considering the CFAA. *See League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 760 (9th Cir. 2014) (plaintiff must show likelihood of success on only one of several claims).

### C. The District Court Correctly Resolved the Remaining Preliminary Injunction Requirements in Amazon's Favor

The district court carefully considered each remaining preliminary injunction factor and found each satisfied. *See* 1-ER-5-6; 2-ER-140 (irreparable harm); 1-ER-6 (balance of hardships); 1-ER-6-7; 2-ER-136, 141 (public interest). Each of those conclusions was correct, and far from "illogical," "implausible," or "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1261-62.

40

1.      Amazon Demonstrated the Equitable Requirements for a
        Preliminary Injunction

(a)     <u>Irreparable Harm</u>

In the district court, Amazon argued that "'federal courts around the country agree that the interference with an entity's control of its computer systems constitutes irreparable injury.'" 2-SER-329 (quoting *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1296 (S.D. Fla. 2020) (collecting cases)). Perplexity did not disagree—denying only that it was interfering with Amazon's control of its systems. *See* 1-SER-108-11. Because the district court found (correctly, as discussed above) that the Comet AI agent's intrusions into the Amazon Store were doing exactly what Perplexity denied, the court reasonably found the irreparable harm factor satisfied. *See* 1-ER-5-6 (quoting *Power Ventures II*, 252 F. Supp. 3d at 782 ("Numerous courts have found that unauthorized access of computers and the acquisition of data in violation of the CFAA constitute irreparable harm."), *aff'd*, 749 F. App'x 557.

The district court was correct. Perplexity's intrusions inflict "intangible injuries" that "generally lack an adequate legal remedy." *Ariz. Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Perplexity has never explained how money damages could compensate for its continuing trespasses. *See Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (affirming irreparable harm finding because "damages would be difficult to

valuate and thus constituted possible irreparable harm"). The district court's irreparable harm finding is also reinforced by the ongoing nature of Perplexity's misconduct. Perplexity ignored Amazon's cease-and-desist letter, circumvented two technical barriers, and continues its trespasses, in violation of the CFAA and CDAFA, to this day. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1044-45 (9th Cir. 2012) (affirming irreparable harm finding where defendant "would have continued to violate [a statute] if an injunction had not been issued").

There is nothing unusual about finding that continued, unauthorized intrusion into private areas constitutes irreparable harm. "[T]he right to exclude persons from trespassing on private property" is "a fundamental aspect of private property ownership," making injunctions "an appropriate remedy for a continuing trespass." *Allred v. Harris*, 14 Cal. App. 4th 1386, 1390 (1993). The same common-law principle applies here. *See* Orin S. Kerr, *Norms of Computer Trespass*, 116 Colum. L. Rev. 1143, 1144-46 (2016) (because computer trespass statutes "prohibit trespass into a computer network just like traditional laws ban trespass in physical space," courts should apply "trespass norms" to determine when access invades private computer spaces (cited approvingly by *hiQ*, 31 F.4th at 1197)). Amazon's right to control access to its password-protected systems is the equivalent of a homeowner's right to exclude trespassers from her property, where trespasses of a "continuing nature" have always amounted to irreparable harm. *Allen v. Stowell*, 145 Cal. 666,

42

668 (1905); *see also Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1184 (2014) ("A trespass of a continuing nature, whose constant recurrence renders the remedy at law inadequate, unless by a multiplicity of suits, affords sufficient ground for relief by injunction.").

Perplexity has never offered an argument, much less a coherent one, that a continued digital trespass which obtains sensitive information from protected computer systems does not inflict irreparable harm. In the district court, it did not contest this legal basis for finding irreparable harm if the facts established the alleged conduct (as the district court has now found they do), forfeiting its right to disagree now. *See United States v. Robertson*, 52 F.3d 789, 791 (9th Cir. 1994). Perplexity has also failed to address this basis for finding irreparable harm in its opening brief, abandoning the issue here. *See Smith*, 876 F.3d at 995. This Court thus can, and should, affirm the district court's finding of irreparable harm on this basis alone.

The record also establishes additional forms of irreparable harm. Amazon submitted extensive, detailed evidence documenting Perplexity's conduct and its effects, including the mechanisms through which that conduct harms Amazon's systems, reputation, and goodwill, such as degrading the shopping experience of Amazon's customers and threatening data security. *See, e.g.*, 2-ER-281 ¶ 18; 3-ER-566-69 ¶¶ 14, 21-24.

43

Perplexity argues that Amazon did not *also* submit evidence of harms that have already occurred (such as customer complaints), OB46-47, but "[e]vidence of *threatened* loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (emphasis added). Perplexity's Comet AI agent degrades Amazon customers' experience in concrete ways, failing to select optimal prices, delivery options, or product recommendations, and neglecting to consolidate orders to obtain free shipping. 3-ER-566 ¶ 14. The agent thereby substitutes a diminished experience for the "unique and personalized shopping experience" that Amazon spent decades building, threatening Amazon's reputation and customer goodwill. 3-ER-572 ¶ 4.

Perplexity speculates that customers use its agent "to avoid" Amazon's curated shopping experience, OB47, but that only admits that the agent substitutes a different experience for the one Amazon has designed, inserting itself between Amazon and its customers. *See* 3-ER-566 ¶ 14. Perplexity pejoratively describes the result as "lost upselling opportunities," OB47, but "deprivation of opportunity to expand business is irreparable harm." *Stuhlbarg*, 240 F.3d at 841. And because there is no way to calculate how many customers are lost when customers silently drift away from Amazon due to the Comet AI agent's inferior experience, the

44

evidence establishes threatened, unquantifiable loss under *Stuhlbarg* and "likely" irreparable harm under *Winter*, 555 U.S. at 22.[13]

Amazon also demonstrated that the Comet AI agent poses unacceptable risks to data security in the Amazon Store. This results from systemic design flaws, as a computer security expert explained in detail. 2-ER-272-88 ¶¶ 9-16, 24-25. This evidence is not theoretical: multiple security researchers corroborated the security risks posed by Perplexity. 3-ER-556-59 ¶¶ 5-8. Perplexity says it patched specific vulnerabilities after they were publicized, OB48, but this "penetrate-and-patch" approach "has been widely discredited" in the security research community and "does not solve the inherent security risks in the design." 2-ER-286, 91 ¶¶ 23, 29. Perplexity also cannot logically dismiss Amazon's evidence about the systemic risk of future breaches because the breaches have not yet occurred. *See* OB47-48. Requiring Amazon to seek injunctive relief only after a breach would defeat the "purpose of a preliminary injunction," which "is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits."

---

[13] It does not matter who customers "blame" for inferior experiences in the Amazon Store. OB46-47. Loss occurs when customers choose not to buy something because of the Comet AI agent's interference—regardless who the customer consciously attributes this to. That it is difficult to identify exactly why any particular customer forgoes any particular purchase, 2-ER-38, confirms that money damages for these lost opportunities cannot be calculated.

45

*Golden Gate Restaurant Ass'n v. City & Cnty. of S.F.*, 512 F.3d 1112, 1116 (9th Cir. 2008).

Because of the extensive evidence showing threatened irreparable harm, Perplexity derives no support from *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239 (9th Cir. 2013), or *adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747 (9th Cir. 2018). In *Herb Reed*, this Court reversed a preliminary injunction because the district court's analysis was not "grounded in *any* evidence or showing offered by" the plaintiff. 736 F.3d at 1250 (emphasis added). Similarly, in *adidas America*, this Court reversed in part as to a trademark infringement claim because the "only evidence" supporting the district court's irreparable harm finding was a "generalized statement" providing no specifics regarding damage to the plaintiff's brand. 890 F.3d at 760-61. Those barren records do not suggest that the district court abused its discretion on the fulsome record here. To the contrary, *adidas America* also found "concrete evidence" of irreparable harm as to another plaintiff, who provided testimony regarding the efforts their team invested in promoting and protecting their product, as well as its "concerns about damage to [its] reputation if the marketplace were flooded with similar" products. 890 F.3d at 756. Given the more extensive, equally concrete evidence Amazon submitted, *adidas America* confirms that the district

46

court's decision was not illogical, implausible, or unsupported. *See Hinkson*, 585 F.3d at 1263.

(b)  Balance of Hardships

The district court correctly found that the balance of hardships favors Amazon.  As just discussed, Amazon faces significant harms from Perplexity's continuing trespasses.  Because the narrow injunction here blocks only the precise conduct the court identified as unlawful, the court reasonably explained that "to the extent Perplexity may incur losses in connection with password-protected Amazon accounts, the Ninth Circuit has noted there is a 'long-settled principle that harm caused by illegal conduct does not merit significant equitable protection.'"  1-ER-5 (quoting *Disney*, 869 F.3d at 867).

Perplexity attempts to magnify its potential hardship by misrepresenting the injunction's scope, claiming it "disabl[es] the Assistant's access to Amazon.com." OB49.  But the district court limited its injunction to "the password-protected sections of Amazon's website."  1-ER-6.  Perplexity has acknowledged that Amazon.com has extensive non-password-protected areas.  *See* 1-SER-96 ("Amazon.com is a public retail website whose product listings are viewable by anyone, regardless of whether they have logged into the website.").  Perplexity's generalized claims about the importance of the agentic feature to the overall

47

popularity of the Comet browser, or the entire Amazon website to Comet's "target demographic," OB49, thus fail to engage with the district court's ruling or reasoning.

Perplexity also cannot claim the injunction will deprive it of any legitimate "first-mover advantage." OB49. There are many companies with agentic AI browsers. 3-ER-517 ¶ 36. Perplexity submitted no evidence that the Comet AI agent's "functionality," OB50, in trespassing into Amazon's protected spaces is anything more than a simple willingness to go where it is not allowed. *See* 2-ER-276-78 ¶ 12 (record evidence of other agents that decline to enter password-protected areas of the Amazon Store). Perplexity cannot claim competitive harm from being required to comply with the same legal constraints that govern everyone else, because defendants "cannot suffer harm from an injunction that merely ends an unlawful practice." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013). In *Disney*, for example, this Court rejected a defendant's argument that an injunction would devastate its "fledgling business" because "lost profits from an activity which has been shown likely to be infringing . . . merit[] little equitable consideration." 869 F.3d at 866-67. If Perplexity differentiated itself by the illegal maneuver of sending its Comet AI agent to trespass into Amazon's password-protected spaces, it cannot now claim equitable hardship from being required to stop. *See Power Ventures II*, 252 F. Supp. 3d at 784 (balance of hardships favored "an injunction [that] would simply serve to force [Defendants'] compliance with the law").

48

(c)     Public Interest

The public interest weighs in Amazon's favor.  After considering Perplexity's countervailing arguments, the district court found Amazon's showing on this factor sufficient because "the public also has an interest in protecting computers from unauthorized access."  1-ER-6 (citing *Power Ventures II*, 252 F. Supp. 3d at 785 ("The public has an interest in ensuring that computers are not accessed without authorization.")).  That should be clear:  If website owners cannot control who enters their restricted areas, the public's interest in the safety, convenience, and accountability of those sites will be impaired.  *See* 1-SER-45-46.

Perplexity cannot show that this injunction limits "consumer choice," OB51, more than any injunction of any unlawful commercial activity.  Consumers remain free to use the Comet browser anywhere—including anywhere in the Amazon Store—and can use its AI agent feature everywhere *except* the private areas of the store.  1-ER-8.  Consumers' choices are no more constrained here than by a bank's decision to permit account holders, but not their accountants, to access a safety deposit box vault.  Perplexity therefore cannot rely on a case which concerned antitrust protections for *public* access to televised sporting events.  *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.3d 511, 521 (9th Cir. 1984).[14]

---

[14] Perplexity's other citation on this point is even further afield.  *See* OB51-52 (citing *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819 (9th Cir. 1993)).  In *International Jensen*, a district court found that the defendant's product did not

Perplexity's speculation that the injunction "would allow a dominant platform to suppress a nascent competitor" is unsupported by the record. Perplexity is not a baby in its cradle: it is a $14 billion enterprise with "millions of consumers." 3-ER-518-19 ¶ 41; OB51. Further, Perplexity cites no evidence that the Comet AI agent competes with Amazon by shopping in the Amazon Store, much less that Amazon acted from any motive to "suppress" it. *See* OB50-51 (containing no record citations); *infra* § I.C.2. To the contrary, Perplexity told the district court that its agent's intrusions into the Amazon Store benefit Amazon. 1-SER-108.

Finally, Perplexity claims, without citation to legal authority, that the injunction would "give every website operator a CFAA veto over digital tools" and "reshape the competitive landscape on the Internet." OB52. But this Court has already held that Congress enacted the CFAA to prohibit unauthorized access to *private* computer systems, like those behind password gates, thereby protecting system operators' right to determine who may enter their non-public sites, *hiQ*, 31 F.4th at 1197, even when some individual users would prefer to grant such access, *Power Ventures*, 844 F.3d at 1068. Enforcement of those settled rules will not

---

infringe the plaintiff's trademark, so "there was no public interest in granting the injunction," and thus "the court viewed an injunction as depriving consumers of a choice of products." 4 F.3d at 827. This Court affirmed after determining the finding of no likely infringement was "not clearly erroneous," without opining on the consumer choice aside. *Id.* That obviously does not imply that courts should refrain from enjoining commercial conduct that is unlawful.

"reshape" anything. Nor is this case about using "any digital tool," given Perplexity's admissions that the Comet AI agent is not merely a tool in the hands of a user, but rather an agent that navigates autonomously from the user, following Perplexity's explicit instructions. *See* 3-ER-524-25 ¶¶ 16-20. The authority to exclude such an independent agent from private spaces is no more novel than a bank denying a customer's friend permission to access the customer's safety deposit box. *Power Ventures*, 844 F.3d at 1068.[15]

2.     The District Court Weighed Each *Winter* Factor

As the previous discussion makes clear, the district court gave separate, express consideration to each preliminary injunction factor. It also enumerated those factors at the outset of its opinion and structured the opinion around analyzing each in turn. *See* 1-ER-3-7 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). Perplexity therefore cannot use words that appear nowhere in the district

---

[15] Perplexity and its amici also err in suggesting that the district court's opinion grants new power to cease-and-desist letters. *See* OB52; Dkt. 30.1 at 15-16, 18; Dkt. 31.1 at 18. The question is whether the website operator has a right to exclude someone, as they already do for password-protected spaces, but do not for public ones, under *hiQ*. *See supra* § I.A.1(b). Cease-and-desist letters are just one of many methods by which to communicate a lack of authorization, but they have no effect where authorization is not required. *See hiQ*, 31 F.4th at 1195.

court's opinion—such as "per se," "automatically," and "necessarily"—to claim that the court "collapsed" the three equitable factors into the merits. OB18, 41-43, 45.

In fact, Perplexity told the district court that the reason the second, third, and fourth factors were unsatisfied was that Perplexity's conduct comported with the CFAA. *See, e.g.*, 1-SER-109, 112. It was therefore proper for the district court to consider its conclusion that Perplexity was likely breaking the law when rejecting Perplexity's equitable arguments. Moreover, "there is significant overlap between" each *Winter* factor. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010). For that reason, "*Winter* does not stand for the proposition that courts may never evaluate one factor without looking to another." *Id.* That is especially true in statutory enforcement cases, where persistent misconduct simultaneously evinces a merits violation, irreparable harm, and a public interest in enforcement. *See id.* at 474-75 (court's consideration of "likelihood of success on the merits in connection with its irreparable harm analysis" was not "impermissibl[e] conflat[ion]"); *see also, e.g.*, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law.").

Contrary to Perplexity's claim, OB43-44, examining the illegality of the enjoined conduct when weighing the equities is just as appropriate in considering preliminary injunctions as in considering permanent ones. "The standard for a

preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12 (1987). This Court thus readily considers a showing of likely success on the merits when examining the equitable factors in preliminary injunction cases. *See, e.g.*, *Earth Island Inst.*, 626 F.3d at 474; *Whiting*, 732 F.3d at 1029.[16]

## II.     The Buy for Me Example Reinforces the District Court's Decision

In April 2025, Amazon launched "Buy for Me," a feature allowing Amazon customers to find and purchase products from other merchants' public websites. 2-ER-153 ¶¶ 3-4. On January 15, 2026, Perplexity filed a supplemental brief, based on media reports that some merchants were dissatisfied with Buy for Me, arguing that the program demonstrated "unclean hands." 1-SER-36-39. In response, Amazon filed a sworn declaration from an Amazon employee who explained how Buy for Me works, that the media reports were inaccurate, and that the merchants' concerns had been addressed. 2-ER-153-57. Because that declaration showed that

---

[16] Perplexity also misses a second point in observing that the district court relied on cases concerning permanent injunctions for its irreparable harm finding. OB44 n.9. Those cases establish the legal *principle* that continued unauthorized access to protected computer systems constitutes irreparable harm. *E.g.*, *Power Ventures II*, 252 F. Supp. 3d at 782. That principle does not depend on the procedural posture; it stems from the nature of the trespass itself, which is why other courts rely on it in issuing preliminary injunctions. *E.g.*, *Parsont*, 465 F. Supp. 3d at 1296–97.

Buy for Me "operates exactly as Perplexity's Comet AI agent should—transparently and respecting opt-out requests, technological restrictions, and blocks," Amazon invited the court to hold Perplexity "to the same standard as Buy for Me." 1-SER-16. Perplexity never disputed Amazon's declaration, and never again raised the Buy for Me program or its unclean hands argument.

Perplexity had good reason to abandon the argument: Buy for Me proves that Comet could easily provide agentic shopping that complies with the CFAA and CDAFA. Where the Comet AI agent disguises itself as a human, Buy for Me clearly identifies itself as an AI agent. 2-ER-154 ¶ 12. "Buy for Me" accesses only public portions of websites, does not employ user login credentials for third-party sites, and does not circumvent authentication requirements. 2-ER-156-57 ¶¶ 23-29. Buy for Me honors other websites' crawling instructions; if a merchant's site requests that even its public pages not be accessed, Amazon does not create listings for that merchant. 2-ER-154 ¶ 13. Amazon also provides clear instructions for merchants who wish to opt out of Buy for Me, implements opt-out requests within two business days, and records removals to prevent reappearance. 2-ER-155 ¶ 19. If Perplexity abided by these principles, Amazon would not have had to bring this suit.

Perplexity now says the district court "ignored" its "Buy for Me" argument. OB52. That is misleading at best. After Amazon supplied firsthand evidence that each of Perplexity's hearsay-based claims about Buy for Me erred, Perplexity

54

dropped the matter. Amazon filed its declaration more than five weeks before the hearing, yet Perplexity never responded. During the hearing, Perplexity never mentioned Buy for Me or unclean hands. When the court expressly invited Perplexity to identify anything the court had "overlooked," 2-ER-149, Perplexity said nothing about Buy for Me. Having abandoned the unclean hands argument below, Perplexity cannot now fault the court for not addressing it. *See Walsh v. Nev. Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (party "effectively abandoned" an issue where there was no "overture to the district court to suggest that [the party] had continuing interest in pursuing [the claim] . . . the district court had no reason to consider the contention").

Perplexity cannot resurrect the argument now. To start, it relies on the same hearsay sources (at OB53-55) that Amazon's sworn declaration already rebutted. Given that Perplexity did not challenge that declaration in the district court, it cannot ask this Court to conduct its own investigation, or to rely on the newspaper reports and second-hand accounts it abandoned below. *See Fisher v. Roe*, 263 F.3d 906, 912 (9th Cir. 2001) ("Trial courts find facts. We do not."); *United States v. Chesher*, 678 F.2d 1353, 1359 (9th Cir. 1982) (courts are "entitled to give great weight to [a] sworn [affidavit], based on personal knowledge, as contrasted with the weight [they] may give to statements based on hearsay information.").

Perplexity's unclean hands defense is also meritless. "[T]he unclean hands

doctrine requires that the plaintiff have dirtied [his hands] in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertion of such rights against the defendant." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 947 (9th Cir. 2013). Neither is true here.

*First*, Amazon cannot have dirtied its hands in acquiring the right it now asserts. The right to limit access to the password-protected pages of the Amazon Store is provided "automatically" by the CFAA and CDAFA. *Id.* (reversing district court and restoring preliminary injunction where plaintiff "has done nothing to acquire the rights . . .; they flow automatically from customary international law and treaties").

*Second*, nothing about Buy for Me makes it inequitable to stop Perplexity from trespassing in the password-protected portions of the Amazon Store. As Amazon's sworn, unrebutted declaration establishes, Buy for Me models the standards of equitable conduct that Amazon is seeking from Perplexity. For example, Perplexity claims that Buy for Me "created hundreds of thousands of . . . listings without retailers' consent," OB54, but Amazon's program actually respects the instructions merchants embed in their websites, specifying whether non-human visitors are welcome. 2-ER-154 ¶ 13.[17] And even if it did not, Amazon would still

---

[17] Perplexity complains that Buy for Me listed Perplexity's merchandise, OB53, but Perplexity advertised that merchandise on its *public* site, and Perplexity did not write the site's electronic instructions in the standardized form programs like Buy for Me

56

be following the law, which does not require consent to review these retailers' *public* webpages. *hiQ Labs*, 31 F.4th at 1197-98.

Perplexity also cannot make the required showing that "Amazon's conduct relates to the subject matter of its claims." OB54. Buy for Me is a tool for shopping on public websites *outside* the Amazon Store, 2-ER-153 ¶ 3, whereas the injunction bars the Comet AI agent from shopping *inside* the password-protected parts of the Amazon Store. As noted throughout, Amazon's claims concern Perplexity's unauthorized access to password-protected computer systems, which the law recognizes as fundamentally distinct from the public websites Buy for Me exclusively relies upon. *See hiQ Labs*, 31 F.4th at 1199.[18]

## III. The District Court Did Not Abuse Its Discretion by Denying Perplexity's Request for a $1,000,000,000 Bond

In the district court, Perplexity asked for a billion-dollar bond on the ground that "Amazon's proposed injunction would threaten Perplexity's valuation, which

---

can read to determine whether they are welcome. 1-SER-21 & n.5. More importantly, once Amazon learned that Perplexity did not wish to participate in Buy for Me, Amazon removed Perplexity's products. *Id.* If Perplexity showed the same respect for Amazon, this case would be unnecessary.

[18] Perplexity also vaguely gestures at some sort of trademark infringement allegation. OB54 ("Amazon . . . reproduced [retailers'] trademarks without [their] permission."). Because this is not a trademark case, that undeveloped allegation plainly does not "relate[] to the subject matter of the plaintiff's claims." OB53 (citing *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)).

recently increased $5 billion on the strength of Comet, and Perplexity's entire investment in Comet." 1-SER-114. As its sole support, Perplexity submitted a declaration discussing Perplexity's corporate valuation and its investment in Comet. 4-ER-601-03 ¶¶ 36-41. But as the district court explained, Amazon's injunctive request "does not implicate the entirety of Perplexity's investment in Comet, let alone the entire value of Perplexity as a company." 1-ER-7.

That finding is manifestly correct. The injunction does not restrict the Comet browser, or even its agentic feature, from operating anywhere on the internet, except the password-protected parts of the Amazon Store. It does not even bar the Comet AI agent from the publicly accessible areas of the Amazon Store. As the district court noted, the Comet AI agent can still find products in the Amazon Store's public listings; all the injunction changes is that the user now must use the non-agentic aspect of the Comet browser to enter his Amazon account and place the order himself. 2-ER-60. The notion that restricting the agent's access to Amazon's private customer accounts somehow warranted a billion-dollar bond was, to put it charitably, unsupported. After an extensive discussion on Perplexity's bond request, 2-ER-56-61, 116-19, 141-42, the district court acted well within its discretion to deny a billion-dollar bond, 1-ER-7. *See Barahona-Gomez v. Reno*, 167 F.3d 1228,

1237 (9th Cir. 1999) (affirming nominal bond where "defendants did not tender any evidence on the issue").[19]

Perplexity now makes no effort to defend its billion-dollar ask, arguing only that Federal Rule of Civil Procedure 65(c) required the district court to impose a bond in some unspecified amount. OB55-57. But as the case upon which it relies states, "the language of Rule 65(c)" does not "absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003); *see also Barahona-Gomez*, 167 F.3d at 1237 (Rule 65(c) "invest[s] the district court with discretion as to the amount of security required, if any.").[20] Amazon first observed that Perplexity had submitted no real evidence in support of its billion-dollar request on December 10, 2025. 1-SER-76. In the nearly four months between then and the March 6, 2026 hearing, Perplexity made no effort to fill this gap. It was only at the hearing, when it became apparent that Perplexity was on the verge of

---

[19] Perplexity claims that during this colloquy the district court "acknowledged" that Perplexity faces "a significant loss of position in the market" from the preliminary injunction. OB56. But the statement Perplexity quotes was prefaced with the district court's disclaimer that "I understand what was being said by Mr. Posner and in the papers." 2-ER-141–42. In other words, the district court was describing Perplexity's position, not endorsing it.

[20] Perplexity's reliance on *Maryland Department of Human Resources v. U.S.D.A.*, is likewise misplaced, because the plaintiffs in that case admitted that the preliminary injunction affected "'staggering' amounts of food stamp funds." 976 F.2d 1462, 1483 (4th Cir. 1992). Perplexity has pointed to no similar evidence here.

losing, that its counsel suggested for the first time that "it might make sense [for the district court] to entertain further briefing on the issue of the bond" because that issue has not been "fully explored." 2-ER-118.

The district court had no obligation to grant that request. The decision not to "fully explore[]" the bond issue was a choice Perplexity made, leaving the district court with only its maximalist billion-dollar request to entertain, and it cannot seek a do-over now that its gambit has failed. The district court understandably decided that it would not receive "more briefing" on top of the four briefs Perplexity had already filed, noting that the request for additional briefing "could have been made earlier." 2-ER-119, 142. That was a reasonable exercise of the court's authority to require presentation of evidence and argument in a timely fashion, and Perplexity has given this Court no reason to second-guess it. *See, e.g.*, *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 807 (9th Cir. 2002) ("District courts have 'inherent power' to control their dockets. . . . [W]e will reverse a district court's litigation management decisions only if it abused its discretion."); *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1314 (9th Cir. 1982) ("[A]cceptance or rejection of argumentative briefs, memoranda, and other supplementary material is within the sound discretion of the court.").

## CONCLUSION

The district court's order should be affirmed.

Dated:     April 22, 2026     HUESTON HENNIGAN LLP

By: _____

Hagan Scotten
Moez M. Kaba
Christine Woodin
Billy Joe McLain
Attorneys for Plaintiff-Appellee
Amazon.com Services LLC

61

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* [http://www.ca9.uscourts.gov/forms/form17instructions.pdf](http://www.ca9.uscourts.gov/forms/form17instructions.pdf)

**9th Cir. Case Number(s)** | 26-1444

The undersigned attorney or self-represented party states the following:

⦿ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | s/ Hagan Scotten     **Date** | April 22, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**                                                                 *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-1444

I am the attorney or self-represented party.

**This brief contains** 13,975 **words, including** 0 **words** manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.

- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    - [ ] it is a joint brief submitted by separately represented parties.
    - [ ] a party or parties are filing a single brief in response to multiple briefs.
    - [ ] a party or parties are filing a single brief in response to a longer joint brief.

- ( ) complies with the length limit designated by court order dated _____.

- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Hagan Scotten    **Date** April 22, 2026
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**    *Rev. 12/01/22*