**NO. 26-1444**

IN THE

# United States Court of Appeals

FOR THE NINTH CIRCUIT

▶▶◀◀

AMAZON.COM SERVICES LLC

*Plaintiff–Appellee,*

v.

PERPLEXITY AI, INC.

*Defendant–Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA IN CASE NO. 3:25-CV-09514-MMC, MAXINE M. CHESNEY, DISTRICT JUDGE

## APPELLANT'S REPLY BRIEF

JOHN B. QUINN
DANIEL C. POSNER
JONATHAN H. KIM
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
johnquinn@quinnemanuel.com
danposner@quinnemanuel.com
jonathankim@quinnemanuel.com

ANDREW H. SCHAPIRO
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, Illinois 60606-1881
(312) 705-7400
andrewschapiro@quinnemanuel.com

CHRISTOPHER G. MICHEL
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
555 13th Street NW, Suite 600
Washington, D.C. 20004
(202) 538-8000
christophermichel@quinnemanuel.com

RENITA N. SHARMA
LUCAS A. HAMMILL
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
295 5th Avenue, 9th Floor
New York, New York 10016
(212) 849-7000
renitasharma@quinnemanuel.com
lucashammill@quinnemanuel.com

*Attorneys for Defendant–Appellant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ............................................................................................3

I.    AMAZON CANNOT JUSTIFY THE DISTRICT COURT'S FLAWED LIKELIHOOD-OF-SUCCESS ANALYSIS ................................3

    A.    Amazon Cannot Show Likely Success Under The CFAA ...................3

        1.    Amazon Fails To Show Likely Success On The "Intentionally Accessed" Element ................................................4

        2.    Amazon Fails To Show Likely Success On The "Without Authorization" Element .............................................9

        3.    Amazon Fails To Show It Is Likely To Prove Perplexity "Obtained Information" "From An Amazon Computer" .........13

        4.    Amazon Fails To Show It Is Likely To Establish Cognizable Loss ................................................................15

    B.    Amazon Cannot Show Likely Success Under The CDAFA ..............17

II.    AMAZON CANNOT JUSTIFY THE DISTRICT COURT'S FLAWED RULINGS ON THE REMAINING *WINTER* REQUIREMENTS ...................................................................20

    A.    Amazon Fails To Refute That It Will Not Suffer Irreparable Harm ...................................................................21

    B.    Amazon Fails To Refute That The Balance Of Equities Disfavors An Injunction..................................................24

    C.    Amazon Fails To Refute That The Public Interest Disfavors An Injunction..................................................25

    D.    Amazon Fails To Refute That Unclean Hands Provides Another Basis To Reverse The Injunction ..................27

i

III. AMAZON CANNOT JUSTIFY THE DISTRICT COURT'S FAILURE TO REQUIRE A BOND ...............................................29

CONCLUSION ......................................................................................30

ii

# TABLE OF AUTHORITIES

**Page**

## Cases

*Abu v. Dickson*,
107 F.4th 508 (6th Cir. 2024) ................................................................7

*adidas Am., Inc. v. Skechers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018) ...............................................................22

*All. for Wild Rockies v. Petrick*,
68 F.4th 475 (9th Cir. 2023) ................................................................27

*Allen v. Ornoski*,
435 F.3d 946 (9th Cir. 2006) ...............................................................14

*Allen v. Stowell*,
145 Cal. 666 (1905) .............................................................................23

*Benisek v. Lamone*,
585 U.S. 155 (2018)........................................................................20, 21

*California ex rel. Becerra v. Azar*,
950 F.3d 1067 (9th Cir. 2020) .............................................................21

*Chrisman v. City of L.A.*,
155 Cal. App. 4th 29 (2007) ................................................................19

*Disney Enterprises, Inc. v. VidAngel, Inc.*,
869 F.3d 848 (9th Cir. 2017) ..........................................................24, 25

*Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*,
232 Cal. App. 4th 1171 (2014) ............................................................23

*Elonis v. United States*,
575 U.S. 723 (2015)................................................................................7

*Facebook, Inc. v. Power Ventures, Inc.*,
844 F.3d 1058 (9th Cir. 2016) ............................ 2, 7, 8, 10, 11, 12, 15

*Facebook, Inc. v. Power Ventures, Inc.*,
No. 08-cv-5780 (N.D. Cal. Jan. 19, 2012)..........................................10

*Facebook, Inc. v. Power Ventures, Inc.*, (*Power Ventures II*)
  252 F. Supp. 3d 765 (N.D. Cal. 2017) ................................................................25

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
  826 F.2d 837 (9th Cir. 1987) ..............................................................................28

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) ............................................. 4, 5, 11-14, 16, 25, 26

*Int'l Jensen v. Metrosound U.S.A., Inc.*,
  4 F.3d 819 (9th Cir. 1993) ..................................................................................26

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
  287 F.3d 866 (9th Cir. 2002) ..............................................................................28

*Lui v. DeJoy*,
  129 F.4th 770 (9th Cir. 2025) ..............................................................................19

*LVRC Holdings LLC v. Brekka*,
  581 F.3d 1127 (9th Cir. 2009) ............................................................................14

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2022) ........................................................5, 6, 18

*Moxie Pest Control (Utah), LLC v. Nielsen*,
  164 F.4th 1195 (10th Cir. 2026) ....................................................................16, 17

*Precision Instrument Mfg. Co. v. Auto. Maintenance Machinery Co.*,
  324 U.S. 806 (1945) ......................................................................................27, 28

*Regents of the Univ. of Cal. v. Am. Broad. Cos.*,
  747 F.2d 511 (9th Cir. 1984) ..............................................................................26

*Reno v. ACLU*,
  521 U.S. 844 (1997) .............................................................................................4

*Rodriguez v. Robbins*,
  715 F.3d 1127 (9th Cir. 2013) ............................................................................25

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ..............................................................................22

*Teran v. Super. Ct.*,
112 Cal. App. 5th 371 (2025) ................................................................20

*United States v. Lewis*,
554 F.3d 208 (1st Cir. 2009) ..............................................................4, 5

*United States v. Nosal*,
676 F.3d 854 (9th Cir. 2012) ............................................................11, 13

*United States v. Pallares-Galan*,
359 F.3d 1088 (9th Cir. 2004) .........................................................17, 18

*United States v. Umeti*,
167 F.4th 687 (4th Cir. 2026) ...............................................................16

*United States v. Wiltberger*,
18 U.S. (5 Wheat.) 76 (1820) ...............................................................13

*Valle del Sol Inc. v. Whiting*,
732 F.3d 1006 (9th Cir. 2013) ...............................................................21

*Van Buren v. United States*,
593 U.S. 374 (2021)...............................................................5, 15, 16

*Walsh v. Nev. Dep't of Human Res.*,
471 F.3d 1033 (9th Cir. 2006) .........................................................27, 28

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008).......................................................................2, 23

*X Corp. v. Ctr. for Countering Digital Hate, Inc.*,
724 F. Supp. 3d 948 (N.D. Cal. 2024)................................................16

## Rules/Statutes

18 U.S.C. § 1030(a)(2)...............................................................1, 4, 7

18 U.S.C. § 1030(a)(2)(C) ................................................................14

Cal. Penal Code § 502(b)(1) ..............................................................19

Cal. Penal Code § 502(c)(7)...............................................................19

v

Fed. R. Civ. P. 65(c)...........................................................................................29

## PRELIMINARY STATEMENT

Amazon's answering brief confirms that its claims are a fundamental misfit for the CFAA and the CDAFA and that the district court's preliminary injunction should be reversed for any of multiple independent reasons.

As a threshold matter, Amazon has no answer to the straightforward premise that only Amazon users—not Perplexity's computers—"intentionally access[]" Amazon's servers through the Comet browser, and thus Amazon cannot satisfy the first element of the CFAA. 18 U.S.C. § 1030(a)(2). Amazon's own expert conceded that there are "no direct requests from Perplexity hosts to amazon.com." 2-ER-269-70 ¶ 4. Amazon's suggestion that Perplexity intentionally accessed Amazon's servers simply because it built the Comet browser or automatically responded to Comet users' prompts has no foundation in the statute. By Amazon's logic, Apple would "access" every website that a Safari user visits. Such untenable consequences demonstrate that Amazon is seeking to stretch the CFAA—a criminal hacking statute—far beyond its proper scope. This Court should reverse on that ground alone.

Amazon fares no better on the other CFAA elements. It offers no credible response to the commonsense conclusion that any access by Perplexity was not "without authorization" within the meaning of the CFAA, 18 U.S.C. § 1030(a)(2), given that Comet users browsed only public areas of Amazon's website or those

1

accessible through ***their own*** accounts. Amazon relies almost exclusively on *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016), but it overreads that case in critical ways, including with respect to the content of the respective cease-and-desist letters. Amazon further fails to demonstrate how Perplexity, rather than Comet users, obtained information ***from Amazon's computers***. And Amazon all but concedes that its reading of the CFAA's "loss" element conflicts with decisions of the Supreme Court and this Court, which Amazon reduces to dicta.

Because Amazon is unlikely to satisfy any, much less all, of the elements of its CFAA claim, the Court should reverse the preliminary injunction. And Amazon's long-shot attempt to save the preliminary injunction under the CDAFA fails for the same reasons—plus the additional reason that the district court will likely dismiss this suit if the sole basis for federal jurisdiction falls away.

As a separate basis for reversal, Amazon fails to establish any of the necessary equitable requirements to support a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Amazon doubles down on the district court's collapsing of the equitable elements into the merits analysis. That is wrong under black-letter precedent and a telling indicator that Amazon cannot meet the equitable requirements on their own terms. The only cognizable harm that Amazon asserts is demonstrably not "irreparable"; it is a paradigmatic illustration of business

loss that could be compensated (if proved) through damages. As for the other requirements, the balance of equities and the public interest tip sharply for Perplexity given the severe consequences that would follow from foreclosing consumers' voluntary choice to use the Comet Assistant on one of the world's most popular websites at a key stage in the development of agentic AI. *See, e.g.*, Amicus Brief of Electronic Frontier Foundation et al., at 16-24; Amicus Brief of American Civil Liberties Union et al., at 4-18.

In short, there is no basis in the relevant statutes for this suit—and at the very least, Amazon falls far short of the showing required to support the extraordinary remedy of a preliminary injunction. The motions panel rightly granted a stay based on a similar analysis, and this Court should now reverse.

## **ARGUMENT**

### I. **AMAZON CANNOT JUSTIFY THE DISTRICT COURT'S FLAWED LIKELIHOOD-OF-SUCCESS ANALYSIS**

#### A. **Amazon Cannot Show Likely Success Under The CFAA**

As Perplexity showed in its opening brief, Amazon is not likely to succeed on any element of its CFAA claim. Perplexity does not intentionally access Amazon computers, and any such access is authorized. OB23-34. Further, Amazon has not shown that it will likely prove that Perplexity obtained information from an Amazon computer, OB34-35, or that it has suffered cognizable CFAA damages, OB35-38.

### 1. Amazon Fails To Show Likely Success On The "Intentionally Accessed" Element

The threshold requirement for Amazon's CFAA claim is that Perplexity "intentionally accesse[d]" an Amazon computer. 18 U.S.C. § 1030(a)(2). But Amazon effectively concedes that it has *no evidence* that any Perplexity server or computer "accessed" any Amazon server or computer. AB25. Accordingly, this Court can reverse at the first step of the inquiry, as Amazon has not come close to showing "intentional intrusion onto someone else's computer." *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196 (9th Cir. 2022).

Amazon belatedly argues that "Perplexity's servers access Amazon's servers through users' computers" because Internet communications "travel through multiple computers before reaching their destination." AB25; *cf.* 2-SER-321. But Amazon cites no CFAA case supporting its theory that Perplexity necessarily "accesses" Amazon's servers simply because both companies own computers connected to the Internet. Amazon cites *Reno v. ACLU*, 521 U.S. 844 (1997), and *United States v. Lewis*, 554 F.3d 208 (1st Cir. 2009), *see* AB25, but neither involved the CFAA. Contrary to Amazon's suggestion, Perplexity has never contended that a CFAA plaintiff must show access "from source to destination" without any interruption, such as through a router. *Lewis*, 554 F.3d at 210. But a CFAA plaintiff must show *some* intentional access by the defendant. And as Amazon concedes, the

4

"source" of the only intentional access at issue here, *id.*, is the user who "prompts" the Assistant from her own computer, 3-ER-565 ¶ 10.

The absence of access here is especially apparent when considering the statutory context. As Perplexity explained and Amazon does not dispute, Congress enacted the CFAA to prevent "computer hacking," and courts construing the statute "look to whether the conduct at issue is analogous to 'breaking and entering.'" *hiQ Labs*, 31 F.4th at 1196-97 (citation omitted). Specifically, the Supreme Court has interpreted "access" in the CFAA context to mean "the act of entering a computer 'system ***itself***,'" not merely entering ***any*** computer connected via the Internet to such a computer system. *Van Buren v. United States*, 593 U.S. 374, 388 (2021) (emphasis added) (quoting 1 Oxford English Dictionary 72 (2d ed. 1989)).

Relying on that understanding of "access," the only district court to consider an analogous fact pattern rejected an argument similar to Amazon's. In *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218 (N.D. Cal. 2022), the court held that defendant BrandTotal—whose software was installed, like Comet, on users' computers—did not violate the CFAA where it only "analyz[ed] data ***on users' computers*** that the users [we]re authorized to access from Facebook." *Id.* at 1260-61 (emphasis added). Amazon attempts to evade *BrandTotal*'s holding by claiming that, unlike BrandTotal, Perplexity is "proactively" accessing Amazon.com through users' computers. *Id.* at 1260. But just as in *BrandTotal*, there is nothing

5

in the record that shows Perplexity, rather than Comet users, ever activated the Assistant, nor does the record show Perplexity "direct[ed]" anyone else to prompt the Assistant to access Amazon. *Id.* at 1261. In fact, the Assistant is ***less*** proactive than BrandTotal's software; the BrandTotal product operated continuously, "automatically send[ing] data to BrandTotal while a user browse[d] websites." *Id.* at 1232. By contrast, the Assistant ***does not operate at all*** unless ***the user*** "proactively" activates it and tells it what to do. *Id.* at 1260; *see* 3-ER-523 ¶ 10.

Amazon tries to divert the Court's attention from that dispositive flaw in its theory by arguing that because Perplexity "created" software that "navigates purposefully" through Amazon.com, that software's "actions should be ascribed to Perplexity." AB22. This argument is meritless. It is undisputed that the Assistant "navigates" a website by executing instructions that ***the user***—not Perplexity— gives to it. *See, e.g.*, 3-ER-565-66 ¶ 10 (Amazon witness stating that "[w]ithin a Comet browser session, the Comet AI agent can perform numerous tasks ***in response to user prompts***" and that it navigates Amazon.com "on the user's behalf" (emphasis added)). It would torture logic and the record to conclude that Perplexity "control[s]" the Assistant, AB23, when it is undisputed that the Assistant only acts when instructed by Comet users. Amazon selectively quotes the statement that the Assistant "navigates purposefully through" Amazon.com, AB22 (quoting 3-ER-524 ¶ 16), without including the full sentence: "The Assistant simply behaves like an

6

efficient human shopper, ***following the user's instructions*** and navigating purposefully through the site." 3-ER-524 ¶ 16 (emphasis added).

As Perplexity explained in the opening brief and Amazon never meaningfully refutes, Perplexity does not access Amazon.com when a user visits that site using the Assistant any more than Apple accesses Amazon.com when a user visits that site using the Safari browser. OB23-27.[1] Amazon's analogy about a "mail bomb," AB25, only illustrates the flaw in Amazon's position. Amazon likens users of the Assistant to mere deliverymen carrying out Perplexity's instructions, when in fact, the users are the ones activating and directing the Assistant. 3-ER-523 ¶ 11 ("The Assistant limits itself strictly to actions consistent with the user's stated goals.").[2]

Nor does *Power Ventures* support Amazon's attempt to "ascribe[]" the Assistant's actions to Perplexity rather than the user who controls it. AB22; *see* AB22-23, 25. *Power Ventures* said ***nothing*** about the "intentional[] access[]" element of a CFAA claim, 18 U.S.C. § 1030(a)(2), because it was not at issue:

---

[1] Contrary to Amazon's contention, AB23, Perplexity did submit evidence that Comet and the Assistant operate similarly to an ordinary web browser. *See* 3-ER-521 ¶ 5, 524 ¶¶ 16-17.

[2] Amazon's invocation of *Abu v. Dickson*, 107 F.4th 508 (6th Cir. 2024), *see* AB20, further undermines its position. The Sixth Circuit there affirmed summary judgment for CFAA defendants, emphasizing that the statute reflects "the basic principle that 'wrongdoing must be ***conscious***.'" 107 F.4th at 517 (emphasis added) (quoting *Elonis v. United States*, 575 U.S. 723, 734 (2015)). As Amazon concedes, AB23, the Assistant is not conscious. And the user—not Perplexity—controls it. 3-ER-523 ¶¶ 10-11.

Power *admitted* it had intentionally accessed Facebook's computers, *see* 844 F.3d at 1067-68 & n.4. This Court relied repeatedly on those admissions. *Id.*; *see id.* at 1068 ("In sum, *as it admitted*, Power . . . accessed Facebook's computers without authorization to do so." (emphasis added)). Instead, the central question in *Power Ventures* was whether such access was "without authorization" or in "exce[ss] [of] authorized access" under the CFAA. *Id.* at 1066; *see id.* at 1067-68 ("We therefore hold that . . . Power accessed Facebook's computers 'without authorization' within the meaning of the CFAA and is liable under that statute."). Amazon thus errs when it argues that this Court "ascribed . . . a relatively ministerial, user-directed task to Power," AB23, because this Court did not decide that issue at all.

Indeed, if this Court had decided that issue in *Power Ventures*, the record would have made clear that Power itself was accessing Facebook's servers, unlike Perplexity vis-à-vis Amazon. As this Court explained, access to Facebook occurred when a Power user clicked a button "on [Power's] website"—not on software downloaded to the user's local machine—and "***Power then accessed that user's Facebook data***, and Facebook crafted and caused form e-mails to be sent to recipients." 844 F.3d at 1063, 1065 (emphasis added). Amazon is therefore wrong to say Power "accessed Facebook through users' computers," AB25; in fact, Power accessed Facebook through its own computers.

8

Further, even when Perplexity's servers provide the "reasoning layer" necessary for the Assistant to respond to a user's prompts, Perplexity's servers do so by communicating with *the user's* computer. *See, e.g.*, 2-ER-269-70 ¶ 4 (Amazon's expert conceding that "data from Amazon" is "transmitted to the user's browser *and then* to Perplexity servers" (emphasis added)). And the "reasoning" merely effectuates the user's intent, not Perplexity's. Amazon quotes Perplexity's counsel's discussion of the "reasoning layer," AB23 (quoting 2-ER-78-79), without including the rest of counsel's answer to the district court's question: "Perplexity provides that reasoning layer. It says, oh, you sent me the screenshot. . . . *This is consistent with what [the user] wants, and that's what [the Assistant] should serve up*." 2-ER-78-79 (emphasis added); *cf.* AB9 n.3 (accusing Perplexity of "selective[]" quotation). At bottom, nothing in the record shows Amazon is likely to prove Perplexity intentionally accesses Amazon, and the Court should reverse the injunction on this basis alone.[3]

### 2. Amazon Fails To Show Likely Success On The "Without Authorization" Element

Amazon has separately failed to support the district court's conclusory finding that any conceivable "access" by Perplexity was unauthorized. Amazon's argument

---

[3] None of Amazon's amici contend with whether Perplexity "intentionally accesses" Amazon computers. They accordingly provide no help for Amazon on this threshold question.

again turns entirely on equating this case to *Power Ventures*, which Amazon describes as presenting an "exact" parallel to the facts of this case. AB26. But that is badly mistaken; *Power Ventures* and its progeny instead demonstrate why Perplexity's supposed access to Amazon.com was ***not*** unauthorized.

***First***, Amazon fails to show that its cease-and-desist letter to Perplexity had the same effect on authorization as the cease-and-desist letter the defendant received in *Power Ventures*. *See* AB27 (calling this the "dispositive" issue). In *Power Ventures*, the defendant Power received a cease-and-desist letter that "plainly put Power on notice that it was no longer authorized to access Facebook's computers." 844 F.3d at 1067 n.3; *see* Ex. A to Decl. in Supp. of Facebook's Mot. for Summ. J., *Facebook, Inc. v. Power Ventures, Inc.*, No. 08-cv-5780 (N.D. Cal. Jan. 19, 2012), Dkt. No. 226-1 (demanding that Power cease and desist "using . . . Facebook user login information"). Here, by contrast, Amazon's cease-and-desist letter to Perplexity did not revoke Perplexity's authorization to access Amazon.com. 3-ER-574-77. Instead, it merely tried to enforce Amazon's Conditions of Use, demanding that Perplexity "transparently identify Comet AI when operating in the Amazon Store, consistent with Amazon's Conditions of Use." 3-ER-577; *see* 3-ER-574 (stating that Perplexity must stop "disguis[ing]" the Assistant, not stop accessing Amazon computers altogether). That distinction matters, because the *Power Ventures* letter's invocation of Facebook's terms of use was "***not*** dispositive." 844

10

F.3d at 1067 n.3 (emphasis added) ("Violation of Facebook's terms of use, without more, would not be sufficient to impose liability.").

In other words, Amazon's concern in its cease-and-desist letter was that Perplexity failed to equip the Assistant with Amazon's preferred user-agent string—that is, that Perplexity failed to comply with Amazon's Conditions of Use. This Court has held that the CFAA "does not extend to violations of use restrictions." *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc). An identification requirement is a use restriction, not an access prohibition. Amazon's arguments on the CFAA's "authorization" element thus fail as a matter of law, and its attempt to analogize to *Power Ventures* is meritless.[4]

**Second**, Amazon fails to meaningfully address the consequential distinctions between *Power Ventures* and this case with respect to the nature of the information at stake and the defendant's purpose in obtaining it. *See* AB27. As Perplexity demonstrated, those distinctions are critical. This case does not involve any Amazon "private information," nor anyone else's private information that Amazon has an interest in protecting. OB27 (quoting *hiQ Labs*, 31 F.4th at 1197). Amazon does not dispute this. Indeed, its footnote citing the district court's "buying habits"

---

[4]  Amazon only wants Comet's user-agent string to identify the Assistant so Amazon can block the Assistant from its website entirely and thereby force customers to use Amazon's own AI offerings—which is why Amazon sought an injunction banning Perplexity's access entirely rather than merely requiring identification.

reference, AB29 n.9 (citation omitted), only confirms the point. That information belongs to the user, and Amazon does not dispute that the user is free to share it with Perplexity. No other Amazon customer's information is even available to Perplexity here, let alone obtained.

This Court has explained that the CFAA in *Power Ventures* applied precisely to protect Facebook's interest in prohibiting Power's access to "private information" belonging to **third-party** Facebook users for Power's own improper purposes. *hiQ Labs*, 31 F.4th at 1197; *see id.* at 1199 ("[W]e specifically recognized [in *Power Ventures*] that 'Facebook has tried to limit and control access to its website' as to the purposes for which [Power] sought to use it." (quoting *Power Ventures*, 844 F.3d at 1063)). Again, Amazon has no meaningful answer to that statement.[5] Nor does Amazon identify any case imposing CFAA liability where, as here, a user's agent accessed a computer containing **only** public information and/or **that user's** private information. OB29. Amazon and its amici also seek to reimagine this Court's bank analogy from *Power Ventures* by removing the shotgun from the description. *See* AB26 n.7 (stating this Court inserted the shotgun for no reason); Dkt. 38.1 at 14 (stating without citation that a place of public accommodation such as a bank could

---

[5] Amazon briefly responds with a non sequitur, noting that in *Power Ventures*, the Court used the term "third party" to address a different issue about obtaining aid in accessing a computer. AB28 (quoting *Power Ventures*, 844 F.3d at 1067). That attempted digression shows that Amazon has no response to Perplexity's argument.

ban a person from its premises "for whatever reason"). Although Amazon and amici argue that the CFAA is coextensive with the common law of trespass, they cite no case setting forth such a rule; in fact, this Court has said the opposite. *hiQ Labs*, 31 F.4th at 1201 (stating that CFAA does not encompass potential claim for trespass to chattels).

*Finally*, contrary to Amazon's argument that Perplexity evaded technical blocks, AB27, the evidence does not show that Perplexity evaded anything. A routine security update by Perplexity—in development for weeks before Amazon's first alleged "block"—incidentally restored Amazon customers' access to Amazon.com using the Assistant. 3-ER-526-27 ¶¶ 24-27. Amazon then accused Perplexity, without evidence, of updating Comet again to allow its users to evade a second alleged block, 1-SER-71 n.9, but there had been no such update nor any other effort to evade this supposed block, 2-ER-266-67 ¶¶ 6-10.[6]

### 3. Amazon Fails To Show It Is Likely To Prove Perplexity "Obtained Information" "From An Amazon Computer"

Even if Perplexity accessed an Amazon computer, *and* said access was without authorization, Amazon must separately prove that Perplexity also obtained

---

[6]  Amazon wrongly argues that Perplexity "abandoned" the rule of lenity. AB21 n.6. To the extent the Court finds the CFAA ambiguous, the cases Perplexity cited require the Court to apply the rule. *E.g.*, OB22 (citing *Nosal*); *Nosal*, 676 F.3d at 863 (lenity "*requires*" the CFAA to be "'construed strictly'" (emphasis added) (quoting *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820))).

information ***from an Amazon computer***.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (setting forth separate elements).  Amazon's sole theory in the district court was that its own computers are the computers in question under this element.  *See* 1-SER-66; 2-SER-323.  Recognizing now that it cannot meet this element because Perplexity obtained nothing from an Amazon computer, Amazon claims for the first time that "any" computer will suffice.  AB31 (quoting 18 U.S.C. § 1030(a)(2)(C)).  Amazon then essentially rehashes its same argument from the "access" element: that it does not matter whether Perplexity obtained information from Amazon (which it did not) or from a user's computer, *see* AB31, even where the user is the only one ***intentionally*** obtaining anything (and then voluntarily sharing it with Perplexity).

Amazon forfeited this argument by failing to raise it below, *see Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir. 2006), but it is meritless in any event.  Amazon offers no support in the context of the CFAA for such an expansive reading, which would effectively read out of existence its core purpose to prohibit the hacking of private information on one computer from another.  *See hiQ Labs*, 31 F.4th at 1196.  Moreover, Amazon offers no support for its suggestion that the information obtained could come from a different computer—here, the user's computer—from the computer being accessed (assuming arguendo that Perplexity accessed Amazon's computers, which is Amazon's theory, *see* 1-SER-64; 2-SER-321).

14

Amazon also again selectively quotes Perplexity's counsel's statement that the Assistant "receives [certain] information from Amazon," AB31 (quoting 2-ER-77), but fails to include the rest of the sentence: "and it sends screenshots back to Perplexity's computers." 2-ER-77. Amazon does not refute that if Perplexity obtained information directly from an Amazon computer, it would not need screenshots from the user's computer. And Amazon's resort to *Power Ventures* is again of no help. The discussion of "technological gamesmanship" there concerned attempts to avoid technical barriers under the CFAA's authorization element. 844 F.3d at 1067. The Court said nothing about the third and fourth CFAA elements, which Power conceded. *Id.* at 1067-68 & n.4 (Power admitted it "collect[ed] information from" Facebook computers (citation omitted)).

### 4. Amazon Fails To Show It Is Likely To Establish Cognizable Loss

Perplexity demonstrated that the district court legally erred by finding the CFAA's "loss" requirement likely met even though Amazon did not suffer loss from any "technological harms." OB35 (quoting *Van Buren*, 593 U.S. at 391-92). Amazon's responses are unavailing. It contends that *hiQ* "could not have intended" to abrogate *Power Ventures* on the meaning of the CFAA's loss requirement. AB33. But this Court did not need to do that in *hiQ*, because the Supreme Court had already done so in *Van Buren*. *See* 593 U.S. at 391-92. This Court accordingly observed that *Van Buren* "[l]imit[ed]" the meaning of the terms "'damage' and 'loss'" to

15

vindicate the CFAA's focus on "hacking." *Id.* at 392; *see hiQ Labs*, 31 F.4th at 1195 n.12. Even the Tenth Circuit, which disagreed, understood this Court as having concluded that *Van Buren*'s discussion of CFAA damages was not dicta. *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1200 n.4 (10th Cir. 2026); *see X Corp. v. Ctr. for Countering Digital Hate, Inc.*, 724 F. Supp. 3d 948, 983-84 (N.D. Cal. 2024) (same).[7]

In any event, even *Moxie Pest* acknowledges that "business harms" are not cognizable under the CFAA. 164 F.4th at 1201. Amazon maintains that it has suffered harms because the Assistant "generate[s]" nonhuman "ad traffic" for which advertisers do not want to be billed, requiring Amazon to expend resources filtering out such traffic. 3-ER-568 ¶ 22. But expending resources to comply with contractual obligations and keep advertisers happy is a quintessential business harm.

Attempting to manufacture cognizable damages, Amazon now contends that it has had to "restore [its] systems to their pre-intrusion state." AB35. But Amazon's evidence, which speaks of ***updating*** Amazon's systems, contradicts that claim. *See* 3-ER-568 ¶ 22 ("[Addressing the Assistant's activity] requires ***modifications*** to Amazon's advertising systems, including developing ***new*** detection mechanisms to identify and exclude automated traffic." (emphasis added)). Amazon is only

---

[7] The Fourth Circuit case Amazon cites, AB33-34, does not mention *Van Buren*, let alone contend with it. *United States v. Umeti*, 167 F.4th 687 (4th Cir. 2026).

"maintain[ing] contractual obligations with advertisers" after any CFAA investigation has concluded, 3-ER-568 ¶ 22, not continuing to "identify[] the perpetrator or the method by which the offender accessed the protected information," *Moxie Pest*, 164 F.4th at 1201 (citation omitted). Its claim for CFAA damages therefore fails even the Tenth Circuit's more lenient standard.

### B.     Amazon Cannot Show Likely Success Under The CDAFA

Because the CFAA claim is the only basis for federal jurisdiction in this case, its likely failure will lead to the dismissal of Amazon's tagalong CDAFA claim for lack of jurisdiction. OB40. Amazon argues that the district court determined that its "federal claim was well-founded," AB40 (citation omitted), but this ignores that the point (and premise) of Perplexity's argument is that this ruling was wrong—and that the ruling on the CDAFA claim was thus wrong too, for the same reasons, *see* 1-ER-5 (holding that Perplexity had likely violated the CDAFA for the same "reasons discussed above with respect to" the CFAA). Amazon ultimately does not dispute that it would be inappropriate for the district court to retain supplemental jurisdiction over a state claim when the only claim providing a basis for federal jurisdiction falls away.[8]

---

[8]   Contrary to Amazon's argument that Perplexity forfeited this argument, AB39, Perplexity contended below that Amazon's CFAA and CDAFA claims fall for the same reasons, 1-SER-108, and the district court's lack of supplemental jurisdiction over the CDAFA claim merely provides an "additional reason" why this is the case. OB40; *see United States v. Pallares-Galan*, 359 F.3d 1088, 1094-95 (9th Cir. 2004)

Amazon also offers no reason why this Court should consider the pure issues of state law that Amazon raises here when the district court did not reach them in the first instance. In a footnote, the district court noted that there was no case purporting to limit the CDAFA's definition of "loss," as *Van Buren* does under the CFAA. 1-ER-5 n.3. But that only relates to one statutory element, and because the district court wrongly cast aside *Van Buren*'s reasoning on this point as dicta, this supposed distinction did not actually impact the court's analysis of the CDAFA claim. Contrary to Amazon's argument, AB36 & n.12, moreover, the court's opaque musings about the CDAFA at the hearing do not supply additional support for its decision. *See, e.g.*, 2-ER-138:21-25 (suggesting that CDAFA liability might attach even if "you . . . just show up and kind of sit there and—I don't know, or blindfolded. I don't know, anyway, to get any kind of information because now you're seeing things"); 2-ER-139:7-10 (speculating that the CDAFA's damages provision is "a little broader in some respects" than the CFAA's, "and maybe a little narrower").

Regardless, Amazon fails to demonstrate that Perplexity violated the CDAFA. *See BrandTotal*, 605 F. Supp. 3d at 1260 ("[T]he necessary elements of [the CDAFA] do not differ materially from the necessary elements of the CFAA, except

---

(party did not forfeit an "alternative argument" made "to support what has been his consistent claim from the beginning").

18

in terms of damages." (citation omitted)).[9]  Amazon argues that the CDAFA defines "[a]ccess" to include any action that causes "input to," "output from," or "communicat[ion] with" a computer.  Cal. Penal Code § 502(b)(1).  Amazon again cites a declaration stating that the Assistant "navigat[es]" through Amazon's website and "automates clicks" within it, AB37 (citing 3-ER-524-25 ¶¶ 16, 20), but fails to cite any CDAFA case supporting its argument that such actions should be attributed to Perplexity rather than to the user who caused the Assistant to take those actions.  And Amazon again omits that the same declaration makes clear that the Assistant "never acts on its own initiative," "must [be] affirmatively enable[d]" by users, and "limits itself strictly to actions consistent with the user's stated goals."  3-ER-523 ¶¶ 10-11.

Amazon further contends that the CDAFA applies where one "without permission accesses or causes to be accessed any computer."  Cal. Penal Code § 502(c)(7).  But California courts have held that the CDAFA is a hacking statute that does not criminalize mere violations of access policies or terms of service, which is all Amazon alleges here.  *Chrisman v. City of L.A.*, 155 Cal. App. 4th 29, 33-35 (2007); *see supra* at § I.A.2.  Nor does the CDAFA "impose criminal sanctions . . .

---

[9]  Contrary to Amazon's waiver arguments, AB36-37, Amazon, as Perplexity anticipated it would, chose to raise and argue the CDAFA in its answering brief, and this Court "has discretion to review" any issue "raised in the appellee's brief," *Lui v. DeJoy*, 129 F.4th 770, 780 (9th Cir. 2025) (citation omitted).

for failing to obtain permission to use a document that is fully available from a public source just because the individual accessed an identical copy of the document from an entity's computer." *Teran v. Super. Ct.*, 112 Cal. App. 5th 371, 381 (2025). Again, Amazon cites no contrary authority.

## II. AMAZON CANNOT JUSTIFY THE DISTRICT COURT'S FLAWED RULINGS ON THE REMAINING *WINTER* REQUIREMENTS

The district court effectively held that the remaining *Winter* requirements "follow[ed] as a matter of course" from Amazon's supposed likelihood of success— a threshold error requiring reversal. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018); *see* OB42-43. Although Amazon invited this error, *see, e.g.*, 2-ER-55:4-7 (contending that the public interest requirement "flow[s] automatically" from Amazon's likelihood of success), it now casts blame on Perplexity for supposedly telling "the district court that the reason the second, third, and fourth factors were unsatisfied was that Perplexity's conduct comported with the CFAA," AB52. But Perplexity provided a detailed analysis of each *Winter* requirement and never suggested, as Amazon did, that the district court could permissibly collapse the entire analysis based solely on its merits determination. *See* 1-SER-109-13. Regardless, while collapsing the *Winter* requirements is inappropriate in ***granting*** a preliminary injunction, this Court has held that an injunction may be ***denied*** solely because

20

success on the merits is unlikely. *See California ex rel. Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc).[10]

Amazon also argues that "*Winter* does not stand for the proposition that courts may never evaluate one factor without looking to another." AB52 (citation omitted). But the problem with the district court's analysis is not that it "referred" to Amazon's supposed likelihood of success "in connection with" the rest of the *Winter* inquiry, *id.*; the problem is that the court relied on its merits determination as its ***sole*** support for every other *Winter* requirement—a practice Supreme Court precedent forecloses. *Benisek*, 585 U.S. at 158.

To the extent Amazon attempts to defend the district court's equitable findings on its own accord, based largely on findings the district court never made, Amazon fails to show that any *Winter* requirement tips in favor of injunctive relief.

### A.      Amazon Fails To Refute That It Will Not Suffer Irreparable Harm

Each theory of irreparable harm that Amazon advances is speculative and lacks merit. The district court did not credit any—instead wrongly imputing the

---

[10]      *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006 (9th Cir. 2013), only supports Perplexity's argument that likely success on the merits does not *per se* satisfy the other *Winter* requirements. *Id.* at 1029. The Court relied on several other considerations in affirming the preliminary injunction. *See id.* (concluding the other *Winter* requirements were satisfied where plaintiffs showed a "credible threat of prosecution," "ongoing harms to their organizational mission," and a lack of other "adequate remedies" (cleaned up)).

satisfaction of these elements from Amazon's showing on the merits—and neither did the motions panel. *See* Dkt. 19.1.

***First***, Amazon fails to show a likelihood of irreparable harm from lost customer goodwill. In the district court, Amazon could not explain why customers would blame Amazon rather than Perplexity for any problems related to the Assistant. 2-ER-38:18. Recognizing this, Amazon now baselessly claims that "[i]t does not matter who customers 'blame,'" because in all cases Amazon will lose a sale. AB45 n.13 (quoting OB46-47). Not only is there ***no evidence*** that Amazon has lost or will lose any sale based on any customer's problems with using the Assistant on Amazon.com, but any such lost sales would plainly be compensable by money damages and thus cannot constitute irreparable harm. In contrast, the cases Amazon cites involved consumers attributing degraded shopping experiences ***to the plaintiff***—which Amazon does not even attempt to demonstrate has happened to it. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (finding harm to "newfound customers and [] goodwill" where customers identified detained goods with the plaintiff's brand); *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 756-57 (9th Cir. 2018) (affirming, in part, injunction based on evidence that 20% of consumers attributed defendant's shoe to plaintiff).

***Second***, Amazon's purported concern about "cybersecurity" is belied by the record—as the district court recognized in stating at the hearing it was not "blown

22

away" by this theory of harm, 2-ER-147:17, and then declining to credit it in its order. The record shows, and Amazon does not dispute, that after eight months of the Assistant's operation, there is no evidence of any actual cybersecurity harm, breach, or compromised account traceable to the Assistant. AB45; OB48; 3-ER-514 ¶ 17. Indeed, Amazon effectively concedes it cannot show a cybersecurity injury is "likely," as *Winter* requires, 555 U.S. at 22, instead labeling the Assistant's design as posing "unacceptable risks" and a "systemic risk of future breaches" without ever explaining why such breaches are likely to occur. AB45.[11]

*Third*, Amazon's argument that the Assistant's alleged access is a "digital trespass" equivalent to a continuing physical trespass on private land, AB42-43, also fails.[12] Amazon's trespass-to-land cases, AB42-43, turn on conduct with no analog here: physical destruction of an orange grove in *Allen v. Stowell*, 145 Cal. 666, 667 (1905), and unwanted physical solicitation that drove customers away in *Donahue Schriber Realty Grp., Inc. v. Nu Creation Outreach*, 232 Cal. App. 4th 1171, 1185

---

[11]   Amazon misleadingly implies that "penetrate-and-patch" is Perplexity's entire security strategy. AB45 (citation omitted). To the contrary, Perplexity's security approach is multilayered. Perplexity proactively builds defenses on multi-week engineering cycles before exploits surface, 4-ER-611 ¶¶ 23-24; designs Comet's architecture to "evolv[e] with the threat landscape," 3-ER-526 ¶¶ 21-22; and requires explicit user permission for any significant Assistant action, including login and purchase, 3-ER-525-26 ¶¶ 19, 22.

[12]   Amazon's forfeiture argument, AB43, misreads the record: Perplexity contested irreparable harm at every stage, attacking Amazon's theories of injury and disputing the CFAA violation. 1-SER-71-73; OB45-48.

23

(2014). The defendants in these cases inflicted harm **beyond** the mere fact of the trespass. The Assistant does nothing similar, and Amazon has produced no evidence showing otherwise.

### B. Amazon Fails To Refute That The Balance Of Equities Disfavors An Injunction

Amazon fails to refute that, in contrast to the lack of any appreciable harm it will suffer without an injunction, an injunction would cause dire harm to Perplexity. OB48-50. All the following is undisputed: (i) Perplexity invested tens of millions of dollars and the time of roughly 100 engineers to develop the capability the injunction disables, on a product with millions of daily active users, 3-ER-512 ¶¶ 6-7, 10; 4-ER-597-98 ¶¶ 14, 18; (ii) browser adoption is "sticky," meaning users who switch will not return, 3-ER-518 ¶ 39; (iii) first-mover position lost during litigation cannot be recovered, 3-ER-517-18 ¶¶ 36-40; and (iv) a flagship feature that does not function on the world's eleventh-most visited website signals to users and the broader public that Comet does not work, causing reputational damage money cannot undo, 3-ER-518 ¶¶ 37, 40. In sum, the injunction shuts down Comet's signature feature on Amazon.com, 3-ER-515 ¶ 22, despite the fact that after eight months of unrestricted operation, Amazon has produced no evidence of any cognizable injury.

The cases Amazon cites, AB47-48, supply no reason to discount Perplexity's harms. In *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017),

the Ninth Circuit gave no weight to the harm an injunction would inflict on a defendant whose ***entire business*** was the "activity which has been shown likely to be infringing." *Id.* at 866-67 & n.18. Comet, by contrast, operates lawfully across thousands of websites, but the first-mover and product-credibility harms resulting from a preliminary injunction would attach to Comet as a whole. 3-ER-517-18 ¶¶ 36-40. *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013), involved constitutional deprivations that "unquestionably constitute[] irreparable injury," *id.* at 1145, unlike the CFAA. And *Power Ventures II* is inapt, as it involved a permanent injunction entered after the "Defendants ***d[id] not contest*** that Facebook ha[d] suffered irreparable harm." 252 F. Supp. 3d 765, 783 (N.D. Cal. 2017) (emphasis added).

### C. Amazon Fails To Refute That The Public Interest Disfavors An Injunction

As Perplexity showed, the injunction would disserve the public interest in at least three ways. OB50-52. Amazon fails to persuasively refute any of them.

***First***, Amazon minimizes the scope of the injunction as being limited to private "password-protected" areas, AB47 (citation omitted), but simultaneously argues that ***all*** information, regardless of whether it is otherwise publicly accessible, is private if it is viewed after logging in with a password, AB27-28. Amazon's framework would convert the CFAA into precisely the type of "sweeping Internet-policing mandate" this Court has rejected, with consequences far beyond Comet.

25

*hiQ Labs*, 31 F.4th at 1200-01 (citation omitted).  Perplexity's amici document those stakes in concrete terms.  For example, investigative journalism and academic research, which routinely occur inside authenticated browser sessions, would face the risk of being shut down at the discretion of dominant platforms.  Dkt. 30.1 at 15.

***Second***, Amazon does not dispute that *Regents of the Univ. of Cal. v. Am. Broad. Cos.*, 747 F.2d 511, 521 (9th Cir. 1984), and *Int'l Jensen v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 827 (9th Cir. 1993) both ground the public-interest analysis in protecting consumer choice.  Amazon tries to confine *Regents* to sports-broadcasting antitrust and dismiss *Int'l Jensen* as an unadopted aside, AB49 & n.14, but neither reading holds.  *See Regents*, 747 F.2d at 521 (stating in product-neutral terms that a private actor should not unilaterally prescribe "the options of the consumer"); *Int'l Jensen*, 4 F.3d at 827 (affirming that an injunction would "depriv[e] consumers of a choice of products," and finding "no reason to overturn" that holding).

***Third***, Amazon's arguments regarding the public interest in fair competition are unavailing.  That Perplexity is a "$14 billion enterprise," AB50, conflates corporate size with competitive position:  The Assistant feature is a small entrant compared to industry giants like Microsoft, Google, and Amazon, which each deploy competing products.  3-ER-517-18 ¶¶ 36-39.  And Amazon's contention that the record lacks evidence of competition, AB50, ignores that Amazon has developed its

26

own AI shopping technology and is seeking in this case to enjoin a competitor, 2-ER-203-09 (documenting Amazon's own agentic AI shopping tool).

### D. Amazon Fails To Refute That Unclean Hands Provides Another Basis To Reverse The Injunction

Amazon's unclean hands provide a separate ground for reversing the preliminary injunction. Amazon's own "Buy for Me" program inflicts on nonconsenting third-party retailers the very conduct it asks this Court to enjoin. Therefore, the "doors of equity" are closed to it. *Precision Instrument Mfg. Co. v. Auto. Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945) (cleaned up).

Amazon asserts that Perplexity "abandoned" this argument by failing to respond to Amazon's declaration respecting Buy for Me below or mention the issue at the hearing. AB55. But the declaration only proved Perplexity's point—that Buy for Me accesses retailers' websites without their consent, creates Amazon listings for their products without their permission, and places the burden on them to object. *See* AB54 (admitting merchants must "opt out of Buy for Me"). Perplexity needed only to "raise[]" unclean hands "sufficiently for the trial court to rule" on the defense, and Perplexity did. *All. for Wild Rockies v. Petrick*, 68 F.4th 475, 488 (9th Cir. 2023) (citation omitted); *see* 1-SER-30-39.[13]

---

[13] Amazon's reliance on dicta in *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1035-36 (9th Cir. 2006), is misplaced. *See* AB55. The *Walsh* plaintiff made only a "single reference to injunctive relief" with no supporting "facts or allegations" in her complaint and no argument on the issue in her opposition to the motion to

Amazon also contends that unclean hands does not apply because Buy for Me does not operate in exactly the same way Amazon (incorrectly) asserts the Assistant does. AB56. For instance, Amazon insists that Buy for Me does not operate inside "password-protected" webpages and operates on websites other than Amazon.com. AB57. But the Court need not find that Buy for Me violates the CFAA or CDAFA for unclean hands to apply. *See Precision Instrument*, 324 U.S. at 815. Nor must Amazon's conduct precisely mirror Perplexity's alleged conduct—it need only "relate[] to the subject matter" of Amazon's claims. *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (citation omitted).[14] Amazon argues, 2-SER-331, that Perplexity "interposes itself between retailers and their customers" and "thereby disrupt[s] retailers' ability to curate the transaction and shopping experience," Dkt. 43.1 at 5. Buy for Me does exactly that to merchants whose products it lists off their websites without their consent. Thus, Amazon's unclean hands bar its requested injunction.

---

dismiss. *Id*. Perplexity, by contrast, submitted detailed argument and evidence concerning unclean hands. *See* 1-SER-30-39.

[14] Amazon's reliance on *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987), is inapposite. *See* AB57 n.18. The Court there rejected the unclean hands defense because the plaintiff had not made material misstatements, not because the alleged misconduct was insufficiently related to the subject matter of the claim. *Id*. Amazon, by contrast, has engaged in inequitable conduct through the use of agentic AI, the same technology it seeks to enjoin here.

28

### III. AMAZON CANNOT JUSTIFY THE DISTRICT COURT'S FAILURE TO REQUIRE A BOND

Finally, despite Amazon's incorrect assertions otherwise, AB57-60, the Federal Rules of Civil Procedure are clear that a court ***must*** order bond where a defendant faces harm during the pendency of an injunction, Fed. R. Civ. P. 65(c). The district court violated this rule in failing to order Amazon to post a bond. The court plainly acknowledged, at the hearing and in its Order, that Perplexity faces harm from the injunction. 1-ER-7 (expressing doubt as to how to calculate the "loss limited to Comet's access to Amazon's password-protected customer accounts"); 2-ER-142:18-21 ("I recognize though that if—if I am wrong, that Perplexity at the end of the day will have lost substantially some money[.]"). If Perplexity's Assistant cannot operate effectively on Amazon, the world's largest online retailer, Perplexity is all but certain to lose customers, many of whom will be unlikely to return after the injunction is lifted. OB49-50. While the district court enjoyed broad discretion in setting the appropriate amount of bond, it could not find that Perplexity would face harm from an improper injunction and then refuse to set a bond. Fed. R. Civ. P. 65(c). This abuse of discretion independently mandates a remand at least for the determination of an appropriate bond.

## **CONCLUSION**

The Court should reverse the preliminary injunction.

DATED:  May 6, 2026          QUINN EMANUEL URQUHART &
                             SULLIVAN, LLP


By ____/s/ John B. Quinn_____
           John B. Quinn
     Attorney for Defendant–Appellant

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-1444

I am the attorney or self-represented party.

**This brief contains** 6,991 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ John B. Quinn    **Date** May, 6, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                    *Rev. 12/01/22*